United States District Court
Eastern District of New York

----------------------------------X

UNITED STATES OF AMERICA,

    - against -                      **Memorandum and Order**

JOEL DAVID FORNEY,               No. 24-CR-146 (KAM)
    also known as "Sirbar,"

           Defendant.

----------------------------------X

**Kiyo A. Matsumoto, United States District Judge:**

On July 15, 2025, a grand jury sitting in the Eastern District of New York returned a five-count superseding indictment[1] (ECF No. 101-1, the "Superseding Indictment") charging Joel David Forney ("Forney"), also known as "Sirbar," with **Count One**, Sex Trafficking of Jane Doe-1 in or about and between April 2016 and February 2017 in violation of 18 U.S.C §§ 1591(a)(1), 1591(a)(2), and 1591(b)(1); **Count Two**, Mann Act Transportation of Jane Doe-1 in or about and between April 2016 and July 2016 in violation of 18 U.S.C. § 2421(a); **Count Three**, Mann Act Interstate Prostitution of Jane Doe-1 in or about and between April 2016 and July 2016 in violation of 18 U.S.C. § 2422(a); **Count Four**, Sex Trafficking of Jane Doe-2

---

[1] On July 31, 2025, the government moved to correct a typographical error in Count Four of the Superseding Indictment by trial indictment. (*See* ECF No. 101, Govt. Letter.) On August 1, 2025, Defendant responded that he had no objection to the government's motion. (*See* ECF No. 102.) Thereafter, the Court granted the government's motion to correct the typographical error in Count Four and proceed by trial indictment. (*See* ECF Dkt. Entry dated Aug. 1, 2025.) Accordingly, references to the Superseding Indictment herein refer to the corrected Superseding Indictment available at ECF No. 101-1.

in or about and between May 2017 and September 2017 in violation of 18 U.S.C. §§ 1591(a)(1), 1591(a)(2), and 1591(b)(1); **Count Five**, Mann Act Coercion and Enticement of Jane Doe-3 in or about and between June 2014 and December 2014 in violation of 18 U.S.C. § 2422(b).  (ECF No. 101-1, Superseding Indictment ¶¶ 1-5.)

Pending before the Court is Defendant's motion to dismiss Counts Two and Three of the Superseding Indictment[2] and Defendant's motion to preclude any reference to "rape."  (*See* ECF No. 86, Def. Mot. to Dismiss; ECF No. 92, Govt. Opp.; ECF No. 93, Def. Reply; ECF No. 74, Def. Opp.)

Also before the Court are the government's **(I)** pre-trial motions *in limine* to (*A*) admit evidence of certain acts not detailed in the Superseding Indictment; (*B*) preclude evidence and argument regarding certain witnesses' involvement in other sexual behavior pursuant to Federal Rule of Evidence ("Rule") 412; (*C*) restrict the use of victims' personal identifying information; (*D*) admit an audio recording recovered from Defendant's cell phone; (*E*) admit evidence of certain out-of-court statements; (*F*) permit the government to authenticate by certification evidence extracted from certain cell phones; and (*G*) preclude evidence and argument regarding possible punishment or collateral consequences, and **(II)**

---

[2] On July 7, 2025, Defendant filed a motion to dismiss Count Seven of the April 11, 2024 Indictment.  (ECF No. 70, Def. Mot.)  On July 15, 2025, the government charged Defendant in a Superseding Indictment.  (ECF No. 77, Superseding Indictment.)  Accordingly, Defendant's July 7 Motion to Dismiss Count Seven is denied as MOOT.

a motion in limine seeking preclusion of cross-examination of certain subjects regarding certain witnesses. (*See* ECF No. 80, Govt. Mot. in Limine; ECF No. 78, Govt. Mot. to Limit Cross; ECF No. 76, Govt. Supp. Mot. in Limine; ECF No. 74, Def. Opp.; ECF No. 91, Def. Supp. Opp.; ECF No. 81, Govt. Reply.)

For the reasons set forth below, Defendant's motion to dismiss Counts Two and Three of the Superseding Indictment is respectfully **DENIED**; Defendant's motion to preclude any reference to "rape" is respectfully **DENIED**; the government's motions *in limine* are **GRANTED** and the Court reserves ruling on the admissibility of Jane Doe-4's statements to Jane Doe-1 on Rule 801(d)(2) grounds; and the government's motion to preclude cross-examination as to certain witnesses is **GRANTED**.

## Background

### I. The Charges Involving Jane Does-1 and 2 (Counts One through Four)

According to the Superseding Indictment and the government's motions, between April 2016 and September 2017, Defendant engaged in a "coercive scheme, using physical violence, threats of force, sexual assault, and fraud" to compel Jane Does-1 and 2 to "engage in commercial sex acts for his financial benefit on the Penn Track"—an "open-air sex market along a stretch of Pennsylvania Avenue in Brooklyn, New York," also referred to as the "Brooklyn

Track" or the "Track." (ECF No. 80 at 10[3]; ECF No. 101-1 ¶¶ 1-4.) According to the government, Defendant "required the women he trafficked to solicit customers and engage in commercial sex acts with those customers in cars, commonly referred to as 'car dates,' or in nearby hotels, and then collected the proceeds from the women." (ECF No. 80 at 11.) Defendant also required Jane Does-1 and 2 to meet a "quota" and "punished them if they failed to make him enough money." (ECF No. 80 at 11.)

The government alleges that Defendant "demanded obedience and loyalty" from Jane Does-1 and 2 and used "violence and threats of violence" when he believed they disrespected him or were not making enough money for him. (ECF No. 80 at 11.) He took the money Jane Does-1 and 2 earned from their commercial sex acts, requiring them to "ask the [D]efendant to buy them food and basic necessities," and only allowed them to use cellphones he provided them and to which he controlled access, "thereby isolating them from their loved ones and making it difficult for them to leave him." (ECF NO. 80 at 11-12.)

The government further alleges that the Defendant transported Jane Doe-1 to and from "various states with the intent that [she] engage in prostitution." (ECF No. 80 at 12.) Specifically, in March 2016, Jane Doe-4, another victim of the Defendant, contacted

---

[3] Citations to page numbers refer to numbers provided by the Court's CM/ECF system.

Jane Doe-1 while she was living in Wisconsin and "offered her a
web design job in New York working for the [D]efendant." (ECF No.
80 at 12.) Thereafter, Defendant "interviewed" Jane Doe-1 over
the phone and, in June 2016, bought her a train ticket to travel
from Wisconsin to New York. (ECF NO. 80 at 12.) The government
alleges that after Jane Doe-1 arrived in New York, Defendant took
her to a hotel in Long Island where he "raped her . . . [and] took
photographs" of her, which he posted as advertisements on
Backpage.com ("Backpage"), "a classified advertising website often
used for prostitution." (ECF No. 80 at 13.) Defendant also
transported Jane Does-1 and 4 to hotels in numerous states to
engage in prostitution and "regularly subjected Jane Doe-1 to
verbal threats and physical violence, including sexual assault, if
she did not comply with his demands to engage in commercial sex
acts." (ECF No. 80 at 13.)

Jane Does-1 and 2 eventually left the Defendant. (ECF No. 80
at 12.) Jane Doe-1 fled from a hotel room in February 2017 when
the Defendant was late to meet her to collect her earnings from
the day, and Jane Doe-2 left the Defendant in or around the fall
of 2017 after he "hit her for attempting to work for another pimp
on the Penn Track." (ECF No. 80 at 12.)

## II. The Charges Involving Jane Doe-3 (Count Five)

The government further alleges that in or about June 2014 and
December 2014, the Defendant, who was 31 years old at the time,

"sexually abused a minor female victim, Jane Doe-3, who was then approximately fourteen or fifteen years old." (ECF No. 80 at 13; ECF No. 101-1 ¶ 5.) Defendant met Jane Doe-3 in or around June 2014 when he saw her walking on the street and sought her contact information. (ECF No. 80 at 13.) Thereafter, Defendant communicated with Jane Doe-3 through a messaging platform known as "Google Hangouts," after which they met in person. (ECF No. 80 at 13.) Although, as a minor, Jane Doe-3 could not consent, the government alleges that Defendant brought her "to his home and had sex with her in his basement" and continued to communicate with her, "including inviting her to "'come get this money,' which Jane Doe-3 understood to be an offer to pay her for sex." (ECF No. 80 at 14.)

## Legal Standard

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions *in limine*." *Highland Cap. Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176 (S.D.N.Y. 2008) (citing *Luce v. United States*, 469 U.S. 38, 41 n.4 (1984)). "The purpose of a motion *in limine* is to allow the trial court to rule in advance of trial on the admissibility of certain forecasted evidence." *United States v. Kuo Chen*, No. 10-cr-671 (KAM), 2011 WL 197585, at *1 (E.D.N.Y. Jan. 20, 2011) (citing *Luce*, 469 U.S. at 40 n.2.) To the extent possible, ruling on motions *in limine* in advance of trial, after the parties have been fully

heard, avoids disruptive sidebars, delays, and distractions during the trial. *See Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) ("The purpose of an *in limine* motion is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.") (citation omitted).

In considering a motion *in limine*, a trial court should only exclude evidence when it is "clearly inadmissible on all potential grounds." *United States v. Paredes*, 176 F. Supp. 2d 192, 193 (S.D.N.Y. 2001) (citation omitted). Where appropriate, "[a] court considering a motion *in limine* may reserve judgment until trial so that the motion is placed in the appropriate factual context." *See United States v. Ceballo*, No. 13-cr-308 (KAM), 2014 WL 4980554, at *1 (E.D.N.Y. Oct. 6, 2014) (citations omitted). A district court's ruling on an *in limine* motion constitutes a preliminary determination in preparation for trial, but the district court's ruling "is subject to change [as] the case unfolds" and the district court is free, "in the exercise of [its] sound judicial discretion, to alter a previous *in limine* ruling." *Luce*, 469 U.S. at 41-42 ("The [*in limine*] ruling is subject to change when the case unfolds, particularly if the actual testimony differs from what was contained in the [movant's] proffer. Indeed[,] even if nothing unexpected happens at trial, the district judge is free,

in the exercise of sound judicial discretion, to alter a previous
*in limine* ruling.").

## Discussion

I. **Defendant's Motion to Dismiss Counts Two and Three of the Superseding Indictment**

Defendant moves to dismiss Counts Two and Three of the
Superseding Indictment as multiplicitous, arguing that they charge
the same offense in more than one count.[4]  (*See generally* ECF No.
86, Def. Mot. to Dismiss.)  The government opposes Defendant's
motion, arguing that the counts are not multiplicitous, and that
Defendant's arguments are "premature at the pretrial stage because
the Double Jeopardy Clause protects a defendant from being
*sentenced* multiple times for the same crime, not *prosecuted*
multiple times."  (ECF No. 92 at 5–8.)  For the reasons set forth
below, the Court finds that Counts Two and Three are not
multiplicitous and Defendant's motion is respectfully **DENIED**.

A. **Legal Standard**

A party may raise by pre-trial motion any "defense, objection,
or request that the court can determine without a trial on the

---

[4] Defendant also moved to dismiss Counts Two and Three of the Superseding
Indictment as duplicative, arguing that they "charge two distinct crimes in a
single count of the indictment." (*See generally* ECF No. 86, Def. Mot. to
Dismiss.)  In response, the government argues that any concerns about
duplicative charges could be "cured with the use of a special verdict form and
appropriate unanimity instructions to the jury." (ECF No. 92 at 4.)  In reply,
Defendant indicates that he has no objection to the government's proposed
solution, but "reserves the right to make specific objections to the
government's proposed verdict form and to the specific language of any charge
regarding unanimity." (ECF No. 93 at 4.)  Accordingly, in light of Defendant's
position in his reply brief, Defendant's motion to dismiss Counts Two and Three
of the Superseding Indictment as duplicative is denied as **MOOT**.

merits." Fed. R. Crim. P. 12(b)(1). Such motions include motions alleging a "defect in the indictment." Fed. R. Crim. P. 12(b)(3)(B).

The Fifth Amendment's Double Jeopardy Clause provides that "[n]o person shall . . . be subject for the same offence to be twice put in jeopardy of life or limb[.]" U.S. Const. Amend. V. Pursuant to *Blockburger v. United States*, "where the same act or transaction constitutes a violation of two distinct statutory provisions, the test to be applied to determine whether there are two offenses or only one, is whether each provision requires proof of a fact which the other does not." 284 U.S. 299, 304 (1932) (citing *Gavieres v. United States*, 220 U.S. 338, 342 (1911)). "[T]he critical double jeopardy inquiry[, though,] is not factual, *i.e.*, whether the same conduct is at issue in charges brought under different statutes, but legal, *i.e.*, 'whether the 'offense'—in the legal sense, as defined by Congress-complained of in one count is the same as that charged in another.'" *United States v. Basciano*, 599 F.3d 184, 198 (2d Cir. 2010) (quoting *United States v. Chacko*, 169 F.3d 140, 146 (2d Cir. 1999)). "Multiple counts based on identical facts, but different elements of law, will not violate the double jeopardy clause." *United States v. Walker*, 314 F. Supp. 3d 400, 408 (E.D.N.Y. 2018) (citing *Gavieres*, 220 U.S. at 342).

**B.    Discussion**

Count Two of the Superseding Indictment charges Defendant with Mann Act Transportation of Jane Doe-1 in or about and between April 2016 and July 2016 in violation of 18 U.S.C § 2421(a).  (ECF No. 101-1 ¶ 2 (charging that Defendant together with others, "did *knowingly and intentionally transport an individual*, to wit: Jane Doe-1, in interstate commerce, with [the] intent that such individual engage[s] in prostitution") (emphasis added).)  Count Three charges Defendant with Mann Act Interstate Prostitution of Jane Doe-1 in or about and between April 2016 and July 2016 in violation of 18 U.S.C. § 2422(a).  (ECF No. 101-1 ¶ 3 (charging that Defendant together with others, "did *knowingly and intentionally persuade, induce, entice and coerce an individual*, to wit: Jane Doe-1, to travel in interstate commerce to engage in prostitution.") (emphasis added).)

Defendant relies on *Bell v. United States*, 349 U.S. 81 (1955) to argue that "two Mann Act charges cannot be based on a single transaction" because the Supreme Court has held that "transportation of two women across state lines for the purposes of prostitution constituted a single offense under the Mann Act where the defendant transported the women in one car in a single trip."  (ECF No. 86 at 5.)  *Bell* is inapposite, though, because, as Defendant accurately points out, "Section 2421(a) requires proof of (1) knowing transportation of an individual in interstate

10

commerce; (2) with intent that such individual engage in prostitution," while "Section 2242(a) requires proof of: (1) knowing[ly] persuad[ing], induc[ing], entic[ing], or coerc[ing] [an] individual to travel in interstate commerce; (2) to engage in prostitution." (ECF No. 86 at 6 (citing 18 U.S.C. §§ 2421(a), 2422(a)).)

Accordingly, to determine whether Counts Two and Three are multiplicitous, the question the Court must answer is "whether one can transport another individual in interstate commerce without having persuaded, induced, enticed or coerced that individual to be transported." *United States v. Griffith*, No. 99-cr-786 (HB), 2000 WL 1253265, at *4 (S.D.N.Y. Sept. 5, 2000), *aff'd* 284 F.3d 338 (2d Cir. 2002); *Basciano*, 599 F.3d at 198 (noting the question is "whether the 'offense'—in the legal sense, as defined by Congress-complained of in one count is the same as that charged in another").

The Second Circuit addressed this question in *United States v. Saledonis*, finding 18 U.S.C. § 398(2)—known today as 18 U.S.C. § 2241(a)—and 18 U.S.C. § 399(3)—known today as 18 U.S.C. § 2242(a)—are "two distinct crimes set forth in the statute" because one "makes it a felony to obtain or aid transportation for immoral purposes," while the other "makes it a separate offense to *induce* a [person] to go in interstate commerce . . . for immoral purposes." 93 F.2d 302, 303 (1937) (emphasis added). Although

11

the Second Circuit has not addressed this question in the context of Sections 2241(a) and 2242(a) since *Saledonis*, each circuit court to have considered this issue has reached the same conclusion. *See, e.g. United States v. Taitano,* 442 F.2d 467, 469 (9th Cir.), *cert. denied*, 404 U.S. 852 (1971) (finding §§ 2421 and 2422 are "separate and distinct") (citation omitted); *Batsell v. United States,* 403 F.2d 395, 400 (8th Cir. 1968), *cert. denied*, 393 U.S. 1094 (1969) (same); *Nunnally v. United States,* 291 F.2d 205, 206 (5th Cir. 1961) ("[t]he offense of causing transportation of a woman under § 2421 and the offense of inducing a woman to go in interstate commerce for immoral purposes under § 2422 constitute separate crimes.").

Indeed, "it is hypothetically possible that a transportee herself could have persuaded, induced, enticed or coerced the transporter to do the driving. In that scenario, there would in theory have been no form of persuasion on the part of the transporter." *Griffith*, 2000 WL 1253265, at *4. Thus, district courts that have considered this issue have also concluded "[t]hat persuasion and transportation involve proof of different facts is hardly contentious." *Id.; see also United States v. Chappell*, 292 F. Supp. 3d 916, 928 (D. Minn. 2017) (finding the "offenses proscribed by [18 U.S.C.] § 2421 and [18 U.S.C.] § 2422 [to be] 'separate and distinct'") (quoting *Batsell v. United States*, 403 F.2d 395, 400 (8th Cir. 1968) (Even though it must be conceded

12

that the evidence offered by the government would fully have justified a jury finding of guilty under both § 2421 and § 2422, the offenses proscribed by these sections are separate and distinct.")) (citing *La Page v. United States*, 146 F.2d 536, 538–39 (8th Cir. 1945)).

Accordingly, based on the foregoing authority, the Court finds that the act of knowingly transporting under § 2421 and the act of "persuading, inducing, enticing, and coercing to travel" under § 2422 are not multiplicitous because they are "separate and distinct" acts that are based on "different elements of law." *Batsell*, 403 F.2d at 400; *Walker*, 314 F. Supp. 3d at 408. Defendant's motion to dismiss Counts Two and Three as multiplicitous is, therefore, **DENIED**.

## II. Defendant's Motion to Preclude Reference to "Rape"

Count Five of the Superseding Indictment charges Defendant with Mann Act Coercion and Enticement of Jane Doe-3. (ECF No. 101-1 ¶ 5.) Specifically, Count Five states,

> In or about and between June 2014 and December 2014, both dates being approximate and inclusive, within the Eastern District of New York and elsewhere, the defendant Joel David Forney, also known as 'Sirbar,' using one or more facilities and means of interstate and foreign commerce, to wit: the Internet and mobile Internet applications, including Google Hangouts, did knowingly, and intentionally persuade, induce, entice and coerce an individual who had not yet attained the age of 18 years, to wit: Jane Doe 3, an individual whose identity is known to the Grand Jury, to engage in sexual activity for which a person can be charged with a criminal offense, to wit: a violation of New

13

> York Penal Law Section 130.25(2)[5] (*rape in the third degree*).

(ECF No. 101-1 ¶ 5 (emphasis added).)

Defendant moves to preclude any reference to the sexual activity alleged in Count Five as "rape," arguing that "the term generally references forcible conduct and thus is unnecessarily inflammatory." (ECF No. 74 at 4.) Defendant cites no legal authority, and indeed this Court has found none, in support of this argument. The government opposes Defendant's motion, arguing that the "term rape is appropriate [to describe Defendant's non-consensual sexual encounters with both Jane Doe-1[6] and Jane Doe-3] because it is central to the case and charges that will be put before the jury." (ECF No. 81 at 4 (citing *Ahmed*, 94 F. Supp. 3d at 435-36 ("finding no basis to preclude the government from using words central to the case")).)

Where, as here, "the language objected to[, rape,] . . . constitute[s] the 'common name' for the crime charged, 'there is no rule of evidence or ethics that forbids the prosecutor from

---

[5] Citations to New York Penal Law Section 130.25(2) refer to the version of New York Penal Law Section 130.25 in effect during the time of the conduct charged in Count Five. As set forth in the government's letter dated July 31, 2025, the government charges Mr. Forney under the version of New York Penal Law Section 130.25 in effect from February 1, 2001 to August 31, 2024, which provides that "a person is guilty of rape in the third degree when, being twenty-one years old or more, he or she engages in sexual intercourse with another person less than seventeen years old." (ECF No. 101 at 1-2); N.Y. Penal L. § 130.25(2) (effective Feb. 1, 2001 to Aug. 31, 2024). Defendant has no objection. (*See* ECF No. 102, Def. Letter.)

[6] The government proffers that Jane Doe-1 will testify that the defendant had sex with her against her will after she traveled from Wisconsin to New York City to meet him for an alleged job. (ECF No. 80 at 12-13.)

14

referring to the crime by its common name . . . [and t]here is no rule requiring the prosecutor to use a euphemism for it or preface it by the word alleged.'" *United States v. Malka*, 602 F. Supp. 3d 510, 553 (S.D.N.Y. 2022) (citing *United States v. Rude*, 88 F.3d 1538, 1548 (9th Cir. 1996)).  Indeed, "[t]he government is not barred from using rhetorical devices during the trial," *United States v. Biasucci*, 786 F.2d 504, 513 (2d Cir. 1986), particularly where the language is "consistent with the trial evidence." *United States v. Salameh*, 152 F.3d 88, 135 (2d Cir. 1998).

Moreover, as to Count Five, the term "rape" "at least must be used in [the Court's] instructions to the jury describing the crimes with which [Defendant is] charged and the elements of those crimes." *Malka*, 602 F. Supp. 3d at 553; *see also Guam v. Torre*, 68 F.3d 1177, 1180 (9th Cir. 1995) (holding that no objection to prosecutor's use of terms "rape" and "raped" would have been sustained where defendant was being tried for three counts of first-degree criminal sexual conduct, two counts of second-degree criminal sexual conduct and one count of second-degree kidnapping).  Here, Count Five of the Superseding Indictment references New York Penal Law Section 130.25(2) pertaining to rape in the third degree and the Court will instruct the jury as to the elements and meaning of the terms used in Section 130.25(2).

Indeed, "[w]hen courts have ruled to preclude parties from using allegedly inflammatory terms, those terms have generally

been extraneous or irrelevant to the non-moving party's core allegations." *United States v. Full Play Group, S.A.*, No. 15-cr- (PKC) (ECF Dkt. Order dated Jan. 4, 2023) (collecting cases). Accordingly, Defendant's motion to preclude the government from using the term "rape" is **DENIED**.

## III. Government's Motions in Limine

As noted above, the government moves *in limine* to (*A*) admit evidence of certain acts and circumstances not detailed in the Superseding Indictment; (*B*) preclude evidence and argument regarding certain witnesses' involvement in other sexual behavior pursuant to Federal Rule of Evidence ("Rule") 412; (*C*) restrict the use of victims' personal identifying information; (*D*) admit an audio recording recovered from Defendant's cell phone; (*E*) admit evidence of certain out-of-court statements; (*F*) permit the government to authenticate evidence extracted from certain cell phones; and (*G*) preclude evidence and argument regarding possible punishment or collateral consequences. (*See* ECF No. 80, Govt. Mot. in Limine; ECF No. 76, Govt. Supp. Mot. in Limine.) The Court shall address each motion in turn.

### A.   Evidence of Sex Trafficking and Related Violence on the Penn Track

First, the government seeks to admit evidence and testimony regarding the sex trafficking of women on the Penn Track, including the "rules" governing women working on the Penn Track, Defendant's

16

and other pimps' use of "violence, threats, and other coercive means to enforce these rules," Defendant's activities on the Penn Track and interactions with other pimps.  (ECF No. 80 at 17-27.) Second, the government seeks to admit Defendant's use of "coercive and violent tactics" against women not named in the Superseding Indictment.  (ECF No. 80 at 17-27.)

The government argues that the proffered evidence regarding the rules and enforcement of rules by traffickers at the Penn Track, and the use of force, threats, and violence by the Defendant against a woman who worked there, but is not listed as a victim in the Superseding Indictment is admissible against Defendant as direct evidence of the "charged offense of sex trafficking by force, fraud, or coercion."  (ECF No. 80 at 20.)  Alternatively, the government argues that the evidence is admissible under Rule 404(b) for the "non-propensity purpose of showing the defendant's knowledge, intent, common scheme or plan, and modus operandi." (ECF No. 80 at 24.)  Defendant opposes the motion, arguing the proffered evidence is not "inextricably intertwined" with the charges in the Superseding Indictment and is impermissible propensity evidence.  (ECF No. 74 at 1-3; ECF No. 91 at 1.)

For the reasons set forth below, the Court finds the proffered evidence is relevant and admissible as direct evidence of the charged offenses, and its probative value is not substantially

17

outweighed by the risk of unfair prejudice.[7]    The government's motion is, therefore, **GRANTED**.

### 1.    Legal Standard

Direct evidence of the crimes charged in the indictment is considered relevant and admissible without reference to Rule 404(b). *See, e.g., United States v. Towne*, 870 F.2d 880, 886 (2d Cir. 1989), *cert. denied*, 490 U.S. 1101 (1989).  "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency."  *United States v. Kahale*, 789 F. Supp. 2d 359, 381 (E.D.N.Y. 2009), *aff'd sub nom., United States v. Graham*, 477 Fed. App'x 818 (2d Cir. 2012) (citation omitted).

---

[7] Because the Court finds that the proffered evidence is admissible as relevant and direct evidence, the Court need not reach the Parties' arguments under Fed. R. Evid. 404(b).  Even so, the proffered evidence would also be admissible under Rule 404(b)(2).

Under Rule 404(b), evidence of "any other crime, wrong, or act is not admissible to prove a person's character," but may be admitted "to prove a defendant's intent or knowledge when those elements are in dispute."  *United States v. Priolo*, No. 21-cr-566 (NJC), 2025 WL 679413, at *13 (E.D.N.Y. Mar. 4, 2025) (citing *United States v. Graham*, 51 F.4th 67, 82 (2d Cir. 2022)); Fed. R. Evid. 404(b).  Notably, the Second Circuit has adopted an "inclusionary approach to evaluating Rule 404(b) evidence."  *United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003).  Here, the Court finds that evidence of the Penn Track "rules," Defendant's interactions with other traffickers and prostitutes, and Defendant's interactions with other victims, and his activities on the Penn Track is admissible to show that Defendant knew of and planned for the trafficking activity, intended to participate in sex trafficking, and did not participate in sex trafficking by mistake.  *See United States v. Hamlett*, No. 18-cr-24 (VAB), 2018 WL 4854627, at *2 (D. Conn. Oct. 5, 2018) (finding that the evidence was admissible under Rule 404(b)(2) because it "illustrat[ed] [defendant's] planning and preparation for commercial sex acts of the complainants, including advertising their services, knowledge of client appointments to meet with them, facilitating their commercial sex acts, and absence of a mistake in promoting their prostitution.").

Moreover, it is well settled in the Second Circuit that "evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial." *United States v. Carboni*, 204 F.3d 39, 44 (2d Cir. 2000) (quoting *United States v. Gonzalez*, 110 F.3d 936, 942 (2d Cir. 1997)). "Background evidence may be admitted to show, for example, the circumstances surrounding the events or to furnish an explanation of the understanding or intent with which certain acts were performed." *Gonzalez*, 110 F.3d at 941 (quoting *United States v. Coonan*, 938 F.2d 1553, 1561 (2d Cir. 1991)).

In addition to considerations of relevance, any evidence that the parties seek to offer or exclude in their motions is subject to the Court's balancing of its probative and prejudicial value, as provided in Rule 403. Rule 403 permits the exclusion of evidence, even if relevant, "if its probative value is substantially outweighed by a danger of . . . unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Courts have broad discretion in making decisions under Rule 403's probative-prejudice balancing analysis. *See United States v. Abu-Jihaad*, 630 F.3d 102, 131 (2d Cir. 2010) ("We

19

review a district court's evidentiary rulings deferentially, mindful of its superior position to assess relevancy and to weigh the probative value of evidence against its potential for unfair prejudice.") (citing *United States v. Royer*, 549 F.3d 886, 901 (2d Cir. 2008)); *see also United States v. Dwyer*, 539 F.2d 924, 927 (2d Cir. 1976) ("In the balancing of probative value against unfair prejudice required by Rule 403, the trial judge has wide discretion[.]") (citation omitted). Under Rule 403, courts make "'a conscientious assessment of whether unfair prejudice substantially outweighs probative value' with regard to each piece of proffered evidence." *United States v. Pugh*, 162 F. Supp. 3d 97, 103 (E.D.N.Y. 2016) (quoting *United States v. Al-Moayad*, 545 F.3d 139, 160 (2d Cir. 2008)).

### 2. Discussion

#### a. Evidence of the "Rules" of and Defendant's Conduct on the Penn Track

As set forth above, the government anticipates eliciting testimony about the "rules" defendant and "other traffickers required women working on the [Penn] Track to follow," as well as testimony that defendant and "other traffickers used violence, threats, and other coercive means to enforce those rules, often working together to compel the women working on the [Penn] Track to continue engaging in commercial sex acts for the traffickers' financial benefit." (ECF No. 80 at 17.) The government also

anticipates eliciting witness testimony and introducing evidence regarding Defendant's "participation in the business of sex trafficking on the Penn Track," including testimony from Jane Doe-2 that she first met Defendant when he and several other pimps caught her in a circle "in an effort to force her to 'choose up,' or look one of them in the eye and, as a result, obligate herself to that pimp," an event also know as a "pimp circle." (ECF No. 80 at 18.)  As well as evidence from Defendant's Instagram account regarding the Penn Track and his activities on the Penn Track, for example a video of the defendant celebrating "'P day,' or another pimp's birthday." (ECF No. 80 at 18.)

Defendant argues that this evidence is not "inextricably intertwined" with the accusations in the indictment and is "nothing more than evidence of Defendant's] propensity to commit the charged crimes." (ECF No. 74 at 2.)  The government proffers that this evidence "provides necessary context for the [D]efendant's criminal conduct as an understanding of the [Penn] Track and its workings . . . [and] helps explain the relationship between the [D]efendant and his victims[, . . . including] how he used the 'rules' of the Track, and [the] imposition of violence if they broke these rules, to control his victims." (ECF No. 80 at 21 (citing *United States v. Rivera*, No. 13-cr-149 (KAM), 2015 WL 1875658, at *7 (E.D.N.Y. Apr. 22, 2015), *aff'd sub nom. United States v. Garrett*, No. 17-59, 2022 WL 2979588 (2d Cir. July 28,

2022)).)  For the reasons set forth below, this Court agrees with the government.

The proffered evidence satisfies the *Carboni* standard for direct evidence because it is relevant "[b]ackground evidence" that provides background and context to the charged offenses, and demonstrates the "circumstances surrounding the events [charged in the Superseding Indictment]." *Gonzalez*, 110 F.3d at 941 (quoting *Coonan*, 938 F.2d at 1561); *Carboni*, 204 F.3d at 44 ("evidence of uncharged criminal activity is not considered other crimes evidence under Fed. R. Evid. 404(b) if it arose out of the same transaction or series of transactions as the charged offense, if it is inextricably intertwined with the evidence regarding the charged offense, or if it is necessary to complete the story of the crime on trial.").

Counts One and Four charge Defendant with the sex trafficking of Jane Does-1 and 2 respectively by "force, fraud, or coercion" in violation of 18 U.S.C. §§ 1591(a)(1), (a)(2), and (b)(1).  Thus, "to prove its sex trafficking charges in this case, the [g]overnment must prove, among other things, that the Defendant knew (or recklessly disregarded) 'that means of force, threats of force, fraud, coercion . . . or any combination of such means [would] be used to cause' the victims 'to engage in a commercial sex act.'" *United States v. Thompson*, 178 F. Supp. 3d 86, 95 (W.D.N.Y. 2016) (citing 18 U.S.C. §§ 1591(a), 1509(e)(2)

(definition of "coercion")).

Accordingly, the proffered evidence regarding the "rules" of the Penn Track, the Defendant's enforcement of those "rules," and his conduct on the Penn Track is "inextricably intertwined" with the charged offenses and is direct relevant evidence that provides context and is "necessary to complete the story of the crime on trial." *Carboni*, 204 F.3d at 44 (quoting *Gonzalez*, 110 F.3d at 942). Moreover, even if the proffered evidence does not directly establish an element of the offenses, this evidence "adds context and dimension to the government's proof of the charges" and is therefore relevant and admissible as direct evidence of the charged offenses. *Gonzalez*, 110 F.3d at 941.

Indeed, admission of "this type of background and relationship-establishing evidence has been upheld . . . in the Second Circuit." *United States v. Overton*, No. 15-cr-92 (WMS), 2017 WL 6347084, at *5 (W.D.N.Y. Dec. 13, 2017) (citing *United States v. Robinson*, 702 F.3d 22, 26 (2d Cir. 2012) (finding that evidence of the defendant's involvement with other uncharged prostituted women was directly admissible to "complete the story" of the crimes charged and establish the relationship between the defendant and the victim)).

Turning to the question of balancing the probative value of the proffered evidence against the risk of unfair prejudice under Rule 403, it is well settled in the Second Circuit that relevant

evidence will not be precluded by Rule 403 where "the conduct is not 'any more sensational or disturbing' than the charged crime." *United States v. Rosemond*, 958 F.3d 111, 125 (2d Cir. 2020) (quoting *United States v. Lyle*, 919 F.3d 716, 737 (2d Cir. 2019)). Evidence of the Penn Track "rules," Defendant's adherence to them, and his conduct on the Penn Track would be no more inflammatory than the sex trafficking charges already at issue. Accordingly, the Court finds the proffered evidence to be relevant and admissible as direct evidence under Rule 402, and its probative value is not substantially outweighed by the risk of unfair prejudice under Rule 403. The government's motion is, therefore, **GRANTED**.

> **b.  Evidence of Defendant's use of Coercive and Violent Tactics Against Women other than Jane Does-1 and 2**

Evidence of Defendant's use of coercive and violent tactics against women other than Jane Does-1 and 2 is also direct evidence of the charged offenses. The government anticipates introducing evidence of Defendant's relationship with and threats against Jane Doe-4[8], who the government alleges "worked in prostitution for the defendant during the period charged in the indictment." (ECF No.

---

[8] The government indicates that it does not intend to call Jane Doe-4 as a witness at trial. (ECF No. 80 at 12 n.4.) The government describes Jane Doe-4 as "a sex worker who is both victimized by a trafficker and assists in their criminal activity." (*Id.*) For example, as discussed in Section III(E)(3), *infra*, Jane Doe-4 helped Defendant recruit Jane Doe-1 to work for Defendant, and Jane Does-1 and 2 also observed the Defendant threaten Jane Doe-4 with physical violence on numerous occasions. (ECF No. 80 at 12 n.4, 18.)

80 at 18.)   Specifically, the government expects to elicit testimony from Jane Does-1 and 2 that they observed Jane Doe-4 "engage in commercial sex acts for the defendant" and that Jane Doe-1 "observed [Defendant] verbally threaten [Jane Doe-4] with violence" on numerous occasions.   (ECF No. 80 at 18.)   The government further anticipates eliciting testimony that Defendant "talked or bragged about being violent with other women on the Penn Track."   (ECF No. 80 at 18.)   For example, Jane Doe-1 is expected to testify that Defendant "showed her a photograph of a dismembered woman on his cellphone while stating in substance, 'this is what happens to bitches who leave their pimps.'"   (ECF No. 80 at 18.)

The government also intends to elicit testimony from Jane Doe-2 "that she observed the defendant physically assault [another victim, Victim 2], causing [Jane Doe-4] to fear similar harm if she did not engage in commercial sex for his benefit."   (ECF No. 76 at 1.)   The government argues that this testimony is direct evidence of sex trafficking of Jane Doe-2 because Defendant's acts "contributed to the coercive environment the defendant used to compel Jane Doe-2 to perform prostitution for his financial gain." (ECF No. 76 at 1.)   Defendant argues that the proffered evidence is not necessary to prove the charges, that the photograph is inflammatory, and that Victim 2 did not work for Defendant or fear Defendant, although she acknowledges that Defendant punched her

"accidentally."  (ECF No. 91 at 1.)

As noted above, Defendant is charged with sex trafficking
Jane Does-1 and 2 through "force, fraud, or coercion."  18 U.S.C.
§ 1591; (Superseding Indictment, Counts 1 and 2.)  Accordingly,
the proffered testimony from Jane Does-1 and 2 is also
"inextricably intertwined with the evidence regarding the charged
offense" and direct evidence of sex trafficking.  *Carboni*, 204
F.3d at 44 (quoting *Gonzalez*, 110 F.3d at 942).  Indeed, courts in
this Circuit have held that violence and threats of violence by a
defendant "can create 'a climate of fear that [is] sufficient to
cause [the victim] to perform labor or services against her will."
*United States v. Kelly*, No. 07-cr-374 (SJ), 2008 WL 5068820, at *6
(E.D.N.Y. July 10, 2008) (citing *United States v. Marcus*, 487 F.
Supp. 2d 289, 310 (E.D.N.Y. 2007)) (collecting cases).[9]

Moreover, weighing the probative-prejudicial value of the
proffered evidence, the Court further finds that the evidence is
not precluded by Rule 403 because it does not demonstrate conduct
that is "'any more sensational or disturbing' than the charged
crime."  *Rosemond*, 958 F.3d at 125 (quoting *Lyle*, 919 F.3d at 737).
As the government points out, it does not seek to introduce a

---

[9] The Court notes that this evidence is also admissible under Rule 404(b) as
evidence of intent, preparation, plan, absence of mistake, or lack of accident.
*See United States v. LaFlam*, 369 F.3d 153, 156 (2d Cir. 2004) (noting that under
the Second Circuit's "inclusionary approach," other-act evidence may be admitted
for any purpose other than to show a defendant's criminal propensity) (quoting
*United States v. Edwards*, 342 F.3d 168, 176 (2d Cir. 2003)).

photograph of a dismembered body, but instead seeks to present Jane Doe-1's testimony regarding the perceived threat in Defendant's display of the photograph. (ECF No. 81 at 2.) Moreover, testimony that Defendant was observed physically assaulting other women is relevant to, and direct evidence of, the charged conduct and the probative value is not outweighed by a substantial risk of unfair prejudice. Accordingly, evidence of Defendant's use of coercive and violent tactics against women other than Jane Does-1 and 2 is both relevant and admissible, and the government's motion is **GRANTED.**

**B.   Evidence of Witnesses' Involvement in Other Sexual Behavior**

Next, the government moves to preclude Defendant from eliciting evidence "regarding other sexual behavior of the victims, and relatedly, from arguing that such behaviors constitute evidence that the defendant did not use force, fraud, or coercion to engage them in prostitution." (ECF No. 80 at 27.) Specifically, the government proffers that Jane Doe-2 has provided information about engaging in prostitution "both independently and under the control of others" apart from her alleged victimization by the Defendant. (ECF No. 80 at 27.) Defendant does not oppose the government's motion at this time, but "reserve[s] the right to seek further rulings form the Court as issues arise that may

implicate [Rule] 412(b)(1)(C)."[10]   (ECF No. 74 at 3); Fed. R. Evid. 412(b)(1)(C) ("evidence whose exclusion would violate the defendant's constitutional rights" is an exception to Rule 412(a) in criminal cases).

Rule 412 forbids the admission of "evidence offered to prove that a victim engaged in other sexual behavior" or "evidence offered to prove a victim's sexual predisposition" in "a civil or criminal proceeding involving alleged sexual misconduct." Fed. R. Evid. 412(a).  This rule "aims to safeguard the alleged victim against the invasion of privacy, potential embarrassment and sexual stereotyping that is associated with public disclosure of intimate sexual details" and to "encourage[ ] victims of sexual misconduct to institute and to participate in legal proceedings against alleged offenders."  Fed. R. Evid. 412 advisory committee notes to 1994 amendments.  Moreover, the Second Circuit has upheld the application of Rule 412 in cases of sex trafficking and interstate prostitution.  *See, e.g.*, *United States v. Alvarez*, 601 F. App'x 16, 18 (2d Cir. 2015) (summary order) (applying Rule 412

---

[10] The Court notes that should a party seek to offer evidence under Rule 412(b), they must "file a motion that specifically describes the evidence and states the purpose for which it is to be offered; do so at least 14 days before trial unless the court, for good cause, sets a different time; serve the motion on all parties; and notify the victim or, when appropriate, the victim's guardian or representative." Fed. R. Evid. 412 (c)(1)(A)-(D).  Before admitting evidence under Rule 412(c), a court "must conduct an in-camera hearing and give the victim and parties a right to attend and be heard." Fed. R. Evid. 412(c)(2) (emphasis added).

Despite receiving all 18 U.S.C. § 3500 materials on July 28, 2025, Defendant has not made any motions pursuant to Rule 412(b)(1)(C).

where defendant was charged with counts of interstate prostitution pursuant to 18 U.S.C. § 2422(a) and sex trafficking pursuant to 18 U.S.C. § 1591).

Here, the government alleges that Defendant used force, threats of force, fraud or coercion against the victims to cause them to perform sex acts against their will. The witnesses' "[p]rior sexual conduct for money or pleasure [is] irrelevant to whether the victims' sexual activities [at issue in this case] were the result of coercion." *United States v. Rivera*, 799 F.3d 180, 185 (2d Cir. 2015); *see also United States v. Roy*, 781 F.3d 416, 420–21 (8th Cir. 2015) (excluding evidence of victim's prior prostitution as irrelevant to defendant's charged conduct); *United States v. Valenzuela*, 495 F. App'x 817, 819-20 (9th Cir. 2012) (per curiam) ("Appellants cannot show the relevance of questions about prior prostitution to either Appellants' knowledge of the use of force, fraud, or coercion, or the victims' consent to work in prostitution."); *United States v. Cephus*, 684 F.3d 703, 708 (7th Cir. 2012) ("They wanted to suggest that having already been a prostitute she would not have been deceived by [the defendant] and therefore her testimony that she was coerced into working for him – an element of one of the charged offenses when the prostitute is not a minor, 18 U.S.C. § 1591(a) – should be disbelieved. But the testimony sought to be elicited by the cross-examination would have been irrelevant."). Indeed, the Second Circuit is clear that

29

the fact that some of the victims may have been previously engaged as prostitutes either voluntarily or under the control of others, "does not suggest that [Defendant] did not later threaten them with violence . . . in order to coerce them into commercial sex." *Rivera*, 799 F.3d at 186.

The government plans to admit a "limited explanation of Jane Doe-2's prior engagement in prostitution-related activity, to put her testimony into context, provide information regarding [her] personal history, and explain how [she] came to meet the [D]efendant." (ECF No. 80 at 27.) Defendant does not oppose the government's motion.

Rule 412 "does not exclude evidence of sexual conduct 'included in,' 'intrinsic to,' and 'inextricably intertwined' with that charged in an indictment[,]" for example, evidence that might establish the relationship between the witness and Defendant. *United States v. Frey*, No. 19-cr-537 (DRH) (SIL), 2022 WL 2359665, at *5 (E.D.N.Y. June 30, 2022) (quoting *United States v. Ray*, No. 20-cr-110 (LJL), 2022 WL 729861, at *1 (S.D.N.Y. Mar. 10, 2022)) (noting such evidence is "at a minimum, 'inextricably intertwined' with the sexual behavior charged in the Indictment"). Thus, the government may elicit *limited* testimony establishing that Jane Doe-2 was a prostitute and that she met Defendant in that capacity to provide a "necessary backdrop to understanding how [Jane Doe-2] met [the Defendant]." *Frey*, 2022 WL 2359665, at *5; *Ray*, 2022

30

WL 729861, at *1 (citing Fed. R. Evid. 412 advisory committee notes to 1994 amendments ("The word 'other' is used to suggest some flexibility in admitting evidence 'intrinsic' to the alleged sexual misconduct")).

The Court is unpersuaded, however, that any further evidence of a witness's—including Jane Doe-2's—prior sexual history, unrelated to the Defendant, will have probative value that outweighs the substantial risk of unfair prejudice that it poses. Accordingly, the Court finds that, except for the limited purpose of establishing how Jane Doe-2 and the Defendant met, evidence of a witness's prior sexual history is inadmissible pursuant to Rules 412 and 403 and the government's motion to preclude such evidence is **GRANTED.**

### C.  Use of Victims' Personal Information

The government moves to limit the use of the victims' personal information in open court.  (ECF No. 80 at 33-36.)  Specifically, the government moves to allow Jane Does-1, 2, and 3 to testify using their true first name and last initial only, "limit their testimony about each other to first names only," and to prohibit Defendant from "elicit[ing] other personal identify[ing] information about them such as current addresses and contact information."  (ECF No. 80 at 33.)

Defendant acknowledges that he will not "elicit irrelevant testimony from the alleged victims about their current home

31

addresses or contact information," but argues, without support, that "allowing the government to conceal the identifies of [Jane Does-1, 2, and 3] would bolster the credibility of their claims and undermine Mr. Forney's presumption of innocence" and Defendant's Sixth Amendment right "to be confronted with the witnesses against him." (ECF No. 74 at 3 (citing U.S. Const. Am. VI.)

The Confrontation Clause of the Sixth Amendment provides that "in all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him." *Davis v. Washington*, 547 U.S. 813, 821 (2006) (citing *Crawford v. Washington*, 541 U.S. 36, 53–54 (2004)). Defendant's ability to cross-examine and confront the witnesses identified by their first name will not be impaired because, as the government correctly points out, this right is not absolute and "trial judges retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on such cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant." *Delaware v. Van Arsdall*, 475 U.S. 673, 679 (1986); *Fuller v. Gorczyk*, 273 F.3d 212, 219–20 (2d Cir. 2001) (same).

Here, the government argues that requiring Jane Does-1, 2, and 3 to testify using their full names would "cause needless

anxiety and social stigma" and that limited use of their true first names would "protect the victims' safety and well-being, avoid harassment of them, and prevent undue embarrassment and other adverse consequences." (ECF No. 80 at 35.) Indeed, the government advises the Court that "all but one of the victims have left New York and all four are trying to rebuild their lives. To expose them now, after they have made great strides to distance themselves from their past, would cause serious distress." (ECF No. 80 at 35.)

The Court agrees that victims of sex trafficking should not be forced to reveal their full names and finds that "requiring victims to provide their names in public 'could chill their willingness to testify, for fear of having their personal histories publicized.'" *United States v. Raniere*, No. 20-cr-3520 (L), 2022 WL 17544087, at *7 (2d Cir. Dec. 9, 2022) (affirming district court's decision to allow victims to testify using only their first names). Moreover, Defendant has "failed to present a particularized need for the witnesses' last names to be disclosed, since he already [knows] the identity of the individuals and . . . [has articulated] no reason why disclosing last names would help the jury assess the witnesses' credibility." *Raniere*, 2022 WL 17544087, at *7.

Indeed, any concern "that the withholding of the witnesses' last names [could] bolster[ ] their credibility by

effectively endorsing their status as victims," can be addressed with an "appropriate jury instruction." *Raniere*, 2022 WL 17544087, at *7 n.5 (affirming the district court's instruction that the jury should "not make any inferences as to the defendant's guilt or non-guilt from the fact that certain last names are being withheld from [the jury] and the public"). For example, the Court may, if the Parties so request, instruct the jury that certain witnesses will use only their first names to protect their privacy and that the jury should draw no inferences from the use of the first names against the Defendant because the Defendant is presumed innocent.

Although Defendant cites to *United States v. Scott*, as an example of a trial "involving testimony of individuals allegedly involved in sex trafficking without measures being taken to conceal the identities of any witnesses," *Scott* is inapposite as the Court granted the government's motion to permit a civilian witness to testify using only her first name and to limit inquiry into her place of residence due to legitimate safety concerns. No. 24-cr-158 (KAM) (EDNY) (ECF Dkt. Order dated May 13, 2025.) Here, where the government has made a reasonable showing that Jane Does-1, 2, and 3 could face harassment, "undue embarrassment," and "needless anxiety" should they have to testify using their full names, the Court finds that permitting the alleged victims to testify under only their first names and last initial is appropriate and within

34

the Court's discretion.  (ECF No. 80 at 35–36.)  The government's
motion to limit the use of the alleged victims' personal
information in open court is, therefore, **GRANTED.**

### D.   Defendants' Recording

The government next moves to admit a recording dated July
2016 obtained from Defendant's phone in which he "raps about his
life as a pimp, specifically referencing his conduct on the Penn
Track" (the "July 2016 Recording").  (ECF No. 80 at 37–42.)
Defendant does not oppose the government's motion.

"Federal courts across the country, including those in this
circuit, have found rap lyrics or videos to be relevant evidence
in criminal trials based on the content of the evidence and the
issues in the case."  *United States v. Herron*, No. 10-cr-0615
(NGG), 2014 WL 1871909, at *3 (E.D.N.Y. May 8, 2014), *aff'd*, 762
F. App'x 25 (2d Cir. 2019) (collecting cases).  Indeed, the Second
Circuit instructs that "[r]ap lyrics . . . are properly admitted
. . . where they are relevant and their probative value is not
substantially     outweighed     by     the     danger     of     unfair
prejudice."  *United States v. Pierce*, 785 F.3d 832, 841 (2d Cir.
2015) (citing *United States v. Moore*, 639 F.3d 443, 447-48 (8th
Cir. 2011)).

When evaluating whether songs or song lyrics by a Defendant
on trial are relevant and admissible, courts in the Second Circuit
consider whether there is a "specific factual nexus between the

35

content of rap music and the crimes alleged." *United States v. Jordan*, 714 F. Supp. 3d 158, 164 (E.D.N.Y. 2024) (finding rap lyrics inadmissible where the court found there was insufficient "nexus to the criminal conduct alleged in [the] case"). "To be relevant, evidence need only tend to prove the government's case, and evidence that adds context and dimension to the government's proof of the charges can have that tendency." *Kahale*, 789 F. Supp. 2d at 381 (citation omitted). Nevertheless, "circuit courts have admonished trial judges against admitting rap videos or lyrics with merely a tenuous connection to the defendant or issues in the case." *Herron*, 2014 WL 1871909, at *4 (collecting cases).

The Court has reviewed the July 16 Recording by the Defendant and the transcript of the recording provided by the government. (*See* ECF No. 71-1, Ex. A, Audio of the July 16 Recording; ECF No. 80 at 14-15; ECF No. 76, Updated Transcript of the July 16 Recording.) In the July 2016 Recording, Defendant refers to the "Blade," which the government anticipates victim witnesses will testify is another word for "the Track," or another name for the Penn Track. (ECF No. 80 at 10, 14.) Specifically, the lyrics state, "when I get you out, straight to the Track," which is directly related to anticipated testimony from victims that the Defendant "demanded victims return to the Penn Track" to engage in prostitution and work for him. (ECF No. 80 at 39.) The July 16 Recording also references "know[ing] the rules," which the

government argues is consistent with the "rules" of the Penn Track described above, and "talking to the pimp she looks down," which supports anticipated victim testimony about the power dynamics between the Defendant and Jane Does-1 and 2.  (ECF No. 80 at 39.) The Defendant also refers to himself as "Sir Bar," which the government anticipates victim witnesses will testify was Defendant's nickname, and "Pimp of the year." (ECF No. 80 at 38.) Accordingly, the Court finds that the proffered lyrics are not merely "generic references to violence that can be found in many rap songs," *Jordan*, 714 F. Supp. 3d at 166, and are instead specific and "relevant to the issues presented in this case," specifically the sex trafficking charged in Counts One and Four of the Superseding Indictment.  *United States v. Carpenter*, 37 F. Supp. 3d 74, 77 (E.D.N.Y. 2019).

Turning to the question of potential prejudice, the probative value of the proffered lyrics is not substantially outweighed by a danger of unfair prejudice because they do not involve conduct "any more sensational or disturbing" than the charged crimes, which include sex trafficking and Mann Act Coercion and Enticement of a minor. *United States v. Pitre*, 960 F. 2d 1112, 1120 (2d Cir. 1992) (quoting *United States v. Roland-Zapata*, 916 F.2d 795, 804 (2d Cir. 1990)).  Accordingly, for the reasons set forth above, the Court finds that the proffered lyrics are relevant and admissible under Rules 401 and 403 and the government's motion to admit the

July 16 Recording is **GRANTED.**

### E.    Out-of-Court Statements

The government also moves to admit the following categories of out-of-court statements:

> 1. Defendant's statements to alleged victims including, "[s]tatements the [D]efendant made to victims and witnesses, posted through his Instagram account, or in the [July 16] Recording on his cellphone"; and text messages between Defendant and Jane Does-1 and 3;
>
> 2. Statements Jane Does-1 and 4 made to law enforcement in July 2016 (the "July 2016 Statements"); and
>
> 3. Statements Jane Doe-4 made to Jane Doe-1 about her relationship with Defendant, "describing him as a 'pimp,' and directing them to engage in commercial sex acts for his financial benefit."

(ECF No. 80 at 42.)  Defendant opposes the government's motion to admit the third category of out-of-court statements proffered by the government—certain statements Jane Doe-4[11] made to Jane Doe-1 about her relationship with the Defendant.  (ECF No. 74 at 4.)

### 1.    Defendant's statements to alleged victims

The Federal Rules of Evidence generally exclude as hearsay any statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.  *See* Fed. R. Evid. 801(c); *United*

---

[11] Defendant's response, submitted before the government filed the Superseding Indictment changing the references to the Jane Does, refers to Jane Doe-4 as Jane Doe-5.  (*See* ECF No. 75, Govt. Letter (noting government's intention to supersede the Indictment and the revised designations for the Jane Does.) Accordingly, in light of the Superseding Indictment and the government's revised motions in limine (*see* ECF Nos. 78, 80), the Court shall refer to Jane Doe-5 as Jane Doe-4.

*States v. Marin*, 669 F.2d 73, 84 (2d Cir. 1982) ("In general, hearsay statements are not admissible at trial.") (citing Fed. R. Evid. 802). A party's own statement, however, is not hearsay when offered by the party's opponent against the party. Fed. R. Evid. 801(d)(2)(A).

The government argues that the Defendant's statements made to the alleged victims are "admissible non-hearsay statements of a party opponent relevant to the scheme the [D]efendant used to coerce his victims to engage in commercial sex acts pursuant to Rule 804(d)(2)." (ECF No. 80 at 45.) As stated in Rule 801(d)(2), statements "offered against an opposing party" are "not hearsay." Fed. R. Evid. 802(d)(2). Here, where the government intends to offer Defendant's statements to victims not named in the indictment against him, they are clearly admissible as relevant, opposing party statements under Rule 801(d)(2). Likewise, statements from Defendant to Jane Does-1 and 3 are also undoubtedly relevant to the charged offenses and admissible under Rule 801(d)(2). The Court further finds in its discretion that, under Rule 403, the probative value of this evidence is not substantially outweighed by the risk of unfair prejudice. The government's motion to admit statements the Defendant made to the alleged victims is, therefore, **GRANTED**.

### 2.    Statements by Jane Does-1 and 4 to law enforcement (the "July 2016 Statements")

The government also moves to admit statements Jane Does-1 and 4 made to law enforcement in July 2016 for their effect on the listener. (ECF No. 80 at 45.) Specifically, the government submits that Jane Does-1 and 4 identified the Defendant through a photograph and informed officers that "he drove them to Connecticut and posted advertisements for them on prostitution websites." (ECF No. 80 at 45.) The government anticipates the officers will testify that after Jane Does-1 and 4 identified the Defendant and spoke to the law enforcement officers, the officer later stopped the Defendant when they observed him in the presence of Jane Does-1 and 4 "as a direct result of the statements Jane Does-1 and 4 made after their arrest." (ECF No. 80 at 45–46.)

Hearsay is defined as a declarant's out-of-court statement "offer[ed] in evidence to prove the truth of the matter asserted in the statement" and is only admissible if it falls within an enumerated exception. Fed. R. Evid. 801(c), 802. Despite this, "[i]f the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay." Fed. R. Evid. 801(c) advisory committee's note. Indeed, "a statement offered to show its effect on the listener is not hearsay." *United States v. Dupree*, 706 F.3d 131, 136 (2d Cir. 2013).

40

Here, as noted above, the government intends to offer Jane Does-1 and 4's statements for their effect on the listener, not for their truth.  Accordingly, the statements "may be introduced as non-hearsay statements" and the government's motion to admit the July 2016 Statements is **GRANTED**.  *United States v. Bouterse*, 765 F. App'x 463, 468 (2d Cir. 2019) (citing *United States v. Paulino*, 445 F.3d 211, 217-18 (2d Cir. 2006); *United States v. Barone*, 913 F.2d 46, 49 (2d Cir. 1990)).

**3.    Statements between Jane Doe-4 made to Jane Doe-1**

Finally, the government seeks to admit statements Jane Doe-4 made to Jane Doe-1 during the period charged in the Superseding Indictment.  (ECF 80 at 46.)  Specifically, the government expects Jane Doe-1 to testify that Jane Doe-4 "fraudulently recruited her on behalf of the defendant by offering her legitimate employment in New York."  (ECF No. 80 at 46.)  Once Jane Doe-1 arrived in New York, Jane Doe-4 "instructed Jane Doe-1 to engage in commercial sex acts for the defendant's financial benefit when the defendant was not present."  (ECF No. 80 at 46.)  Additionally, the government expects Jane Doe-1 to testify that Jane Doe-4 stated that she was in a romantic relationship with the Defendant and that Jane Doe-4 "belittled or verbally assaulted Jane Doe-1 whenever [Jane Doe-4] suspected the [D]efendant was interested in Jane Doe-1."  (ECF No. 80 at 46.)  Finally, Jane Doe-1 will further testify that "on one occasion, she heard Jane Doe-4 tell the

41

[D]efendant when Jane Doe-1 refused to see a sex buyer, resulting in the defendant assaulting Jane Doe-1." (ECF No. 80 at 46.)

The government submits that these, and similar, statements are admissible as non-hearsay because they are "not offered for their truth, but rather, for their effect on the respective listener" and "are commands generally not constituting hearsay." (ECF No. 80 at 46.) In the alternative, the government argues that they are admissible for their truth as "statements of a co-conspirator made during the existence and in furtherance of the defendant and Jane Doe-4's conspiracy to compel Jane Doe-1 to engage in commercial sex acts." (ECF No. 80 at 46.)

Defendant opposes the government's motion, arguing first, without citation to any legal authority, that Jane Doe-4's statements cannot be used to "support the element of force or coercion as a violation of [Defendant's] Sixth Amendment right to confront the witnesses against him"; and second, that Jane Doe-4's statements are not admissible under Rule 801(d)(2)(E) as co-conspirator statements because the government has not proved the existence of a conspiracy between Jane Doe-4 and the Defendant. (ECF No. 74 at 4.)

*First*, as set forth above, "a statement offered to show its effect on the listener is not hearsay." *Dupree*, 706 F.3d at 136 (citing Fed. R. Evid. 801(c) advisory committee's note). Accordingly, where Jane Doe-4's statements are not offered for

42

their truth and are instead offered for their effect on the listener, Jane Doe-1, they are admissible. Fed. R. Evid. 801(c) advisory committee's note ("If the significance of an offered statement lies solely in the fact that it was made, no issue is raised as to the truth of anything asserted, and the statement is not hearsay."). Moreover, "because the statements [are] not admitted for their truth, the Sixth Amendment's Confrontation Clause is not implicated." *Bouterse*, 765 F. App'x at 468 (citing *Paulino*, 445 F.3d at 217–18).

*Second*, should the government seek to admit Jane Doe-4's statements for their truth under Rule 801(d)(2), a party's co-conspirator's statements made during and in furtherance of the conspiracy are not hearsay when offered by the party's opponent against the party. Fed. R. Evid. 801(d)(2)(E). Although there is no charged conspiracy in this case, "a co-conspirator statement is admissible if it was made pursuant to any conspiracy, whether charged or uncharged." *United States v. Wedd*, 993 F.3d 104, 117 n.6 (2d Cir. 2021) (citing *United States v. Maldonado-Rivera*, 922 F.2d 934, 962 (2d Cir. 1990) ("Though . . . Fed. R. Evid. 801(d)(2)(E) requires proof that both the declarant and the party against whom a declaration is offered be members of the same conspiracy, it does not require that the conspiracy be one charged in the indictment." (citation omitted)). A co-conspirator's statements, however, would only be admissible under Rule

43

801(d)(2)(E) as statements of co-conspirators if the government can prove by "a preponderance of the evidence . . . that a conspiracy existed, that the defendant and declarant were members, and that the statements were made during the course of and in furtherance of the conspiracy." *United States v. Tracy*, 12 F.3d 1186, 1199 (2d Cir. 1993).

Assuming, without finding, that Defendant was engaged in a conspiracy with Jane Doe-4, all of Jane Doe-4's statements would thus be admissible as statements of a party opponent when offered against Defendant, assuming again that the statements are relevant and not unduly prejudicial. *See* Fed. R. Evid. 801(d)(2); Fed. R. Evid. 403. At trial, if the government can show the existence of a conspiracy between the Defendant and Jane Doe-4 by a preponderance of the evidence, Jane Doe-4's statements to Jane Doe-1 to entice or recruit her to work in prostitution for Defendant would be admissible under Rule 801(d)(2). Accordingly, the Court will **RESERVE RULING** on the government's motion to admit Jane Doe-4's statement on Rule 801(d)(2) grounds without prejudice to renew at trial, and the government's motion to admit Jane Doe-4's statements to Jane Doe-1 for their effect on the listener is **GRANTED**.

## F.   Cell Phone Authentication through Certification

The government moves to authenticate evidence extracted from "lawfully seized cellular telephones" obtained from the Defendant

and Jane Doe-1 through a record certification pursuant to Rules 902(13) and 902(14). (ECF No. 80 at 46-48.) Defendant does not oppose the government's motion.

Although an exhibit's proponent generally must "authenticate" the exhibit by "produc[ing] evidence sufficient to support a finding that the item is what the proponent claims it is," Fed. R. Evid. 901(a), Rule 902 provides that certain exhibits are "self-authenticating" and "require no extrinsic evidence of authenticity in order to be admitted." Fed. R. Evid. 902. "[A] record generated by an electronic process or system that produces an accurate result, as shown by a certification of a qualified person that complies with the certification requirements of Rule 901(11) or (12)" is self-authenticating. Fed. R. Evid. 902(13). Moreover, "data copied from an electronic device, storage medium, or file, if authenticated by a process of digital identification, as shown by a certification of a qualified person that complies with the certification requirements of Rule 902(11) or (12)" is also self-authenticating. Fed. R. Evid. 902(14). Under Rule 902(11), the proponent must give "reasonable written notice" and "make the record and certification available for inspection" so that the adverse party "has a fair opportunity to challenge them." Fed. R. Evid. 902(11).

Data extracted from a cellular telephone may be self-authenticated under Rule 902(14). *See United States v. Dunnican*,

961 F.3d 859, 871–72 (6th Cir. 2020); *United States v. Carter*, No. 21-cr-681 (NSR), 2024 WL 268248, at *3 (S.D.N.Y. Jan. 24, 2024) (finding decrypted iCloud data self-authenticating under Rule 902(14)). Moreover, a certificate of authentication is not "testimonial" and could, therefore, be admitted in a criminal trial absent live testimony without implicating the Confrontation Clause. *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 322-23 (2009) ("[a] clerk could by affidavit *authenticate* or provide a copy of an otherwise admissible record" without implicating the Confrontation Clause); *United States v. Gonzalez*, No. 23-cr-6561, 2025 WL 2025147, at *7 (2d Cir. July 21, 2025) (quoting *Bullcoming v. New Mexico*, 564 U.S. 647, 673 (2011)) ("because the raw cellphone extraction reports contained 'only machine-generated results,' they were not the statements of anyone" and did not implicate the Confrontation Clause).

Accordingly, provided that the government submits an appropriate certification from a qualified person, the extraction of Defendant's and Jane Doe-1's cellular telephones may be authenticated without live testimony. The government's motion to authenticate evidence extracted from Jane Doe-1's and Defendants cell phone through a record certification is, therefore, **GRANTED**.

## G. Evidence or Argument Concerning Punishment and Collateral Consequences.

The government moves to preclude at trial any discussion of

the possible punishments or collateral consequences of conviction. (ECF No. 80 at 49–52.)  The government argues that the introduction of any such information "could only serve to confuse the jury, invite the jury to consider irrelevant information, and potentially ignore the Court's instructions due to sympathy for the defendant."  (ECF No. 80 at 51.)  Defendant does not oppose the government's motion.

It is axiomatic that "juries are not to consider the consequences of their verdicts" and must undertake their duties as triers of fact without regard for the sentences that may be imposed by the Court following a determination of guilt. *Shannon v. United States*, 512 U.S. 573, 579 (1994) ("The principle that juries are not to consider the consequences of their verdicts is a reflection of the basic division of labor between the judge as sentencer and the jury as trier of fact.")  The government's motion *in limine* to preclude evidence and argument regarding collateral consequences and punishment associated with a potential conviction is therefore **GRANTED**.

IV. **Government's Motion to Preclude Cross-Examination**

The government also moves to preclude cross-examination of two potential civilian witnesses and two law enforcement witnesses regarding prior arrests, convictions, civilian lawsuits, and administrative findings that the government disclosed to Defendant pursuant to its obligations under *Giglio v. United States*, 405

47

U.S. 150 (1972).[12]  (*See* ECF No. 78, Govt. Mem.)  The government contends that the disclosed information does not bear on the honesty or credibility of those witnesses and is not probative of truthfulness.  (*Id.*)  Defendant does not oppose the government's motion.  For the reasons set forth below, the government's motion to preclude cross-examination as to the identified civilian and law enforcement witnesses is **GRANTED**.

### A.    Background

*First*, the government identified prior convictions for the following civilian witnesses:

- Jane Doe-1: a 2015 conviction for possession of THC, a marijuana derivative; and a 2021 conviction for drug trafficking[13] (ECF No. 78 at 5);

- Jane Doe-2: a 2019 conviction for using a motor vehicle without authority but without intent to steal; a 2023 conviction for possession of a controlled substance; a 2023 conviction for possession of a taser, possession of a controlled substance, and larceny (ECF No. 78 at 5-6).

*Second*, the government identified prior arrests that did not

---

[12] The government also moves to file its motion under seal to protect the potential witnesses' privacy interests.  (ECF No. 78 at 9.)  The Court finds that the interest in safeguarding the privacy of potential witnesses outweighs the publics' qualified right to access judicial documents.  *United States v. Amodeo*, 71 F.3d 1044, 1050-51 (2d Cir. 1995) (privacy interests of third parties may be compelling reason justifying sealing).  Accordingly, the government's motion to seal the portion of the government's motion regarding the two potential civilian witnesses and two potential law enforcement witnesses is **GRANTED**.

[13] The government also discloses that Jane Doe-1 was arrested on or about July 14, 2016 by the Groton Police Department for prostitution and on or about September 20, 2016 by the Philadelphia Police Department for prostitution, but does not move to preclude cross-examination as to these arrests.  (ECF No. 78 at 5.)

result in convictions for Jane Doe-2, including a 2020 bench warrant in connection with the offense of receipt of stolen property; 2018 and 2019 arrests for sexual solicitation; a 2019 arrest for failure to appear in court; a 2020 arrest for receiving stolen property and operating a motor vehicle without a license; and a 2021 arrest for a weapons offense, traffic offense, and an offense related to the possession or sale of a taser. (ECF NO. 78 at 5-6.)

*Third*, the government identified one civil lawsuit against a law enforcement witness, Officer BN[14], related to the search of a car stop in which Officer BN participated. (ECF NO. 78 at 7.) This lawsuit was resolved in favor of Officer BN and the case was closed. (ECF No. 78 at 7.) The government is not aware of any adverse credibility findings as to Officer BN in connection with this lawsuit. (ECF NO. 78 at 7.)

*Fourth*, the government identified one substantiated Civilian Complaint Review Board ("CCRB") allegation involving Officer RF in which the CCRB determined Officer RF abused his authority when he frisked the complainant and failed to prepare a report. (ECF No. 78 at 8.) The government also identifies three unsubstantiated investigations of Officer RF by the Internal Affairs Bureau ("IAB") including a 2007 unsubstantiated allegation pertaining to the use

---

[14] The Court identifies the witnesses by their initials only.

of unnecessary force; a 2008 unsubstantiated allegation pertaining to the use of unnecessary force and failure to notify the IAB; and a 2019 unsubstantiated allegation pertaining to a car stop involving Officer RF.  (ECF NO. 78 at 8.)

## B.    Legal Standard

"A district court is afforded broad discretion in controlling the extent and scope of cross-examination."  *United States v. Daniels*, 566 F. Supp. 3d 191, 193–94 (E.D.N.Y 2021) (quoting *United States v. Wilkerson*, 361 F.3d 717, 745 (2d Cir. 2004)).  Rule 608(b) governs the admission of "evidence of specific acts . . . to attack the witness's character for truthfulness[.]"  *Id.* at 194 (citing *United States v. Peterson*, 808 F.2d 969, 973–74 (2d Cir. 1987)).  The same rule permits a court, "in its discretion, [to] allow inquiry into specific instances of the conduct of a witness on cross-examination, but only if those acts are 'probative of truthfulness or untruthfulness.'"  *Id.* (citing Fed. R. Ev. 608(b)).

"In addition to determining whether, on cross-examination, a particular prior act is probative of truthfulness and therefore permissible under Rule 608(b), the court still must be guided by [Rules] 611 and 403 in deciding whether to exercise its discretion to allow cross-examination pursuant to Rule 608(b)."  *Id.*  (quoting *United States v. Brown*, No. 07-cr-874 (KAM), 2009 WL 497606, at *4 (E.D.N.Y. Feb. 26, 2009)).  Indeed, even where a "prior act does concern the witness's character for truthfulness under Rule

50

608(b), its probative value must not be substantially outweighed by its unfairly prejudicial effect under Rule 403." *United States v. Devery*, 935 F. Supp. 393, 407-08 (S.D.N.Y. 1996).

C. **Discussion**

1. **Cross-Examination Regarding Prior Convictions**

As noted above, the government moves to preclude cross-examination of Jane Doe-1 regarding a 2015 conviction for possession of THC and a 2021 conviction for drug trafficking. (ECF No. 78 at 5.) The government also moves to preclude cross-examination of Jane Doe-2 regarding a 2019 conviction for using a motor vehicle without authority but without intent to steal and 2023 convictions for possession of a controlled substance, possession of a taser, and larceny. (ECF No. 78 at 5-6.) Defendant does not oppose the government's motions.

Evidence of a witness's prior criminal conviction is admissible for impeachment purposes within certain limits. For convictions that are less than ten years old, the court must consider "(1) the conviction's impeachment value, (2) the amount of time that passed between the prior conviction and the trial date, (3) the similarity of the past crime to the charged crime, (4) the importance of the defendant's testimony, and (5) the importance of the witness's credibility to the trial." *United States v. Otufale*, 740 F. Supp. 3d 233, 245 (E.D.N.Y. 2024) (citing *United States v. Hayes*, 553 F.2d 824, 828 (2d Cir. 1977)).

Although all of these factors are relevant, "[p]rime among them is [the first factor, *i.e.*,] whether the crime, by its nature, is probative of a lack of *veracity*." *United States v. Ortiz*, 553 F.2d 782, 784 (2d Cir. 1977) (emphasis added).

In the Second Circuit, a witness's conviction for possession of a controlled substance is not probative of credibility or truthfulness. *See United States v. Whitley*, No. 04-cr-1381 (RCC), 2005 WL 2105535, at *3 n.2 (S.D.N.Y. Aug. 31, 2005) (finding a prior conviction for narcotics possession to have "little probative value on the matter of truthfulness" and "evidence of the prior conviction for narcotics possession is not admissible under Rules 609 and 403.") (citation omitted); *United States v. Puco*, 453 F.2d 539, 543 (2d Cir. 1971) ("[A] narcotics conviction has little necessary bearing on the veracity of the accused as a witness."). Thus, the Court finds that Jane Doe-1's 2015 conviction for possession of THC and 2022 conviction for drug trafficking, and Jane Doe-2's 2023 convictions for possession of a controlled substance have no bearing on the witnesses' truthfulness or veracity and are inadmissible under Rule 609(a).

Moreover, "[i]t is generally held that crimes of theft are not probative of truthfulness." *Shakur v. United States*, 32 F. Supp. 2d 651, 671 (S.D.N.Y. 1999) (citation omitted); *United States v. Estrada*, 430 F.3d 606, 614 (2d Cir. 2005) (affirming district court's determination that larceny convictions "did not involve

falsity or deceit such as to fall within the ambit of Rule 609(a)92")") (citing *Hayes*, 553 F.2d at 827).  The same is true for convictions involving possession of a weapon.  *United States v. Brown*, 606 F. Supp. 2d 306, 315 (E.D.N.Y. 2009) (finding the "minimal probative value of a prior conviction for gun possession is far outweighed by its potential for unfair prejudice") (citations omitted).  Accordingly, the Court finds that Jane Doe-2's 2019 conviction for unauthorized use of a vehicle and 2023 convictions for possession of a taser and larceny also have no bearing on the witness's credibility or truthfulness and are inadmissible under Rule 609(a).  The government's motion to preclude cross-examination of Jane Does-1 and 2 regarding their prior convictions is, therefore, **GRANTED**.

### 2.    Cross-Examination Regarding Prior Arrests

The government has also moved to preclude cross-examination regarding the arrests of Jane Doe-2 that did not result in convictions.  Defendant does not oppose the motion.

Pursuant to Rule 608, extrinsic evidence "of prior malfeasance by a witness under cross-examination [is permitted] only under very limited circumstances that are probative of truthfulness."  *United States v. Ahmed*, 14-cr-277 (DLI), 2016 WL 3647686, at *3 (E.D.N.Y. July 1, 2016).  It is well settled that such limited circumstances do not include "unproven allegations."  *United States v. Dekattu*, No. 18-cr-474 (ARR), 2019 WL 885620, at

*1 (E.D.N.Y. Feb. 22, 2019) (quoting *Ahmed*, 2016 WL 3647686, at *3). It follows, therefore, that unproven allegations such as an "[a]rrest[,] without more does not, in law any more than in reason, impeach the integrity or impair the credibility of a witness. It happens to the innocent as well as the guilty. Only a conviction, therefore, may be inquired about to undermine the trustworthiness of a witness." *Michelson v. United States*, 335 U.S. 469, 482 (1948).

Moreover, Jane Doe-2's bench warrant and arrests for sexual solicitation, a weapons offense, an offense related to the possession or sale of a taser, and a traffic offense are not probative of truthfulness. *See United States v. Estrada*, 430 F.3d 606, 618 (2d Cir. 2005) (noting "crimes involving public morality, such as prostitution, may be less probative of veracity"); *Brown*, 606 F. Supp. 2d at 315 (finding the "minimal probative value of a prior conviction for gun possession is far outweighed by its potential for unfair prejudice"); *Palm Bay Int'l, Inc. v. Marchesi Di Barolo S.P.A.*, No. 09-cv-601 (ADS) (AKT), 2009 WL 3757054, at *10 (E.D.N.Y. Nov. 9, 2009) ("a conviction for a traffic incident does not fall under FRE 609 or even the broad parameters of Rule 26(b)(1)."). Accordingly, the Court **GRANTS** the government's motion to preclude cross-examination regarding the identified prior arrests.

###### 3. Cross-Examination of Law Enforcement Officers Regarding Incidents Underlying the Administrative Findings

The government moves to preclude cross-examination regarding a substantiated CCRB finding that Officer RF abused his authority when he frisked the complainant and engaged in other misconduct when he failed to prepare a report and unsubstantiated investigations into Officer RF. (ECF No. 78 at 8.) Defendant does not oppose the government's motion.

Generally, "[c]omplaints against officers are not probative of a law enforcement witness's truthfulness or untruthfulness unless the underlying conduct involves dishonesty." *Bryant v. Serebrenik*, No. 15-cv-3762 (ARR) (CLP), 2017 WL 713897, at *2 (E.D.N.Y. Feb. 23, 2017) (citing *United States v. Horsford*, 422 F. App'x 29, 30 (2d Cir. 2011) (summary order)). Courts may preclude cross-examination of prior, substantiated instances of officer misconduct where the underlying conduct is not probative of the officer's truthfulness or untruthfulness. *See, e.g.*, *Horsford*, 422 F. App'x at 30 (precluding cross-examination of CCRB complaint where "the underlying conduct involved no dishonesty"); *United States v. Barret*, No. 10-cr-809 (KAM), 2012 WL 194992, at *2 (E.D.N.Y. Jan. 23, 2012) (precluding cross-examination of several substantiated complaints that did "not involve conduct that bears on credibility").

Further, even where conduct may be initially probative, a

court must still weigh whether the probative value outweighs the danger of "unfair prejudice, confusing the issues, misleading the jury [or] wasting time." *Ahmed*, 2016 WL 3647686, at *2 (citing Fed. R. Evid. 403). In this vein, courts may also preclude cross-examination of unsubstantiated investigations. *See Jean-Laurent v. Hennessy*, 840 F. Supp. 2d 529, 556 (E.D.N.Y. 2011) (finding that "because the CCRB complaints were not substantiated . . . under Rule 403, the probative-prejudice balancing test weighs heavily in favor of excluding the evidence" and precluding plaintiffs "from presenting evidence of CCRB complaints against defendants that remain unsubstantiated").

Here, there is no evidence that the CCRB made an adverse credibility finding against Officer RF and, "[t]herefore, the report could not [be] probative of [Officer RF's] truthfulness or untruthfulness." *Horsford*, 422 F. App'x at 30 (citing Fed. R. Evid. 608(b)). Indeed, courts in this circuit have precluded cross-examination regarding substantiated CCRB complaints regarding a stop and frisk where there is "no information suggesting that the [officer] . . . was found by the CCRB to be incredible." *United States v. Polanco*, No. 10-cr-627 (RPP), 2011 WL 1795293, at *3 (S.D.N.Y. May 3, 2011).

Regarding any unsubstantiated investigations the government has identified, any probative value of the alleged conduct is outweighed by substantial prejudice, and Rule 403 appropriately

precludes cross-examination of the pending investigations. *See Jean-Laurent*, 840 F. Supp. 2d at 556.

Accordingly, the Court **GRANTS** the government's motion to preclude cross-examination regarding the substantiated and unsubstantiated administrative findings against Officer RF disclosed in its motion.

### 4. Cross-Examination of Law Enforcement Officers Regarding Incidents Underlying the Civil Lawsuit

Finally, the government moves to preclude cross-examination regarding a civil lawsuit against Officer BN, which has been resolved without any adverse credibility findings as to Officer BN. (ECF No. 78 at 7.) The Defendant does not oppose the government's motion.

It is well settled that civil lawsuits against government law enforcement witnesses that offer only unproven allegations or that have been resolved "lacking any adverse findings" are not "probative of the witness' truthfulness." *Ahmed*, 2016 WL 3647686, at *3; *see also United States v. Jackson*, No. 19-cr-356 (ARR), 2020 WL 6558215, at *3 (E.D.N.Y. Nov. 9, 2020) (finding that because "[a]ll of the civil lawsuits brought against the government's witnesses are either currently pending or have already ended in settlement without any admission of wrongdoing by the defendant or adverse credibility finding by the court," there was "no reason to believe that the underlying files are likely to

contain material that is relevant to the credibility of the witnesses").

Here, where the identified civil lawsuit was resolved without any adverse credibility findings as to Officer BN, it is plainly not "probative of the witness' truthfulness." *Ahmed*, 2016 WL 3647686, at \*3; *see also Jackson*, 2020 WL 6558215, at \*3. The government's motion to limit cross-examination regarding the identified civil lawsuit against officer BN is, therefore, **GRANTED**.

## Conclusion

For the reasons set forth above, Defendant's motion to dismiss Counts Two and Three of the Superseding Indictment is respectfully **DENIED**; Defendant's motion to preclude any reference to "rape" is respectfully **DENIED**; the government's motions *in limine* are **GRANTED** and the Court reserves ruling on the admissibility of Jane Doe-4's statements to Jane Doe-1 on Rule 801(d)(2) grounds; and the government's motion to preclude cross-examination as to certain witnesses is **GRANTED**.

**So ordered.**

Dated:    August 4, 2025
          Brooklyn, New York

_____
**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York