United States District Court
Eastern District of New York

----------------------------------X

UNITED STATES OF AMERICA,

    - against -                              **Memorandum and Order**

JOEL DAVID FORNEY,                           No. 24-CR-146 (KAM)
      also known as "Sirbar,"

          Defendant.

----------------------------------X

**KIYO A. MATSUMOTO, United States District Judge:**

On August 15, 2025, after a five-day trial, a jury found Joel David Forney ("Defendant" or "Forney") guilty of five counts of a superseding indictment charging him with two counts of sex trafficking in violation of 18 U.S.C. § 1591(a) (Counts One and Four), one count of Mann Act Transportation (Count Two), one count of Mann Act Interstate Prostitution (Count Three), and one count of Mann Act Coercion and Enticement (Count Five). Presently before the Court is Mr. Forney's motion pursuant to Federal Rule of Criminal Procedure ("Rule") 29 for a judgment of acquittal or, in the alternative, his Rule 33 motion for a new trial. (ECF No. 147, "Def. Mot.") For the reasons set forth below, Mr. Forney's motions are respectfully DENIED.

BACKGROUND

## I.   The Charges

On July 15, 2025, Mr. Forney was charged in a five-count

superseding indictment. (ECF No. 77.) On August 1, 2025, the Court granted the Government's motion to correct a typographical error and to proceed via a corrected trial indictment. (ECF No. 101 at 3.) Trial proceeded based on the corrected trial indictment. (ECF No. 104, the "Indictment.")[1]

The Indictment charges Mr. Forney with five counts: Count One charges Mr. Forney with Sex Trafficking of Jane Doe-1 (referred to at trial as "Jonnica C.") in or about and between April 2016 and February 2017 in violation of 18 U.S.C §§ 1591(a)(1), 1591(a)(2), and 1591(b); Count Two charges Mr. Forney with Mann Act Transportation of Jane Doe-1 (referred to at trial as "Jonnica C.") in or about and between April 2016 and July 2016 in violation of 18 U.S.C. § 2421(a); Count Three charges Mr. Forney with Mann Act Interstate Prostitution of Jane Doe-1 (referred to at trial as "Jonnica C.") in or about and between April 2016 and July 2016 in violation of 18 U.S.C. § 2422(a); Count Four charges Mr. Forney with Sex Trafficking of Jane Doe-2 (referred to at trial as Shyya H.) in or about and between May 2017 and September 2017 in violation of 18 U.S.C. §§ 1591(a)(1), 1591(a)(2), and 1591(b)(1); and Count Five charges Mr. Forney with Mann Act Coercion and Enticement of Jane Doe-3 (referred to at trial as "Melissa N.") in

---

[1] References to the Indictment hereafter refer to the corrected Superseding Indictment available at ECF No. 104.

or about and between June 2014 and December 2014 in violation of 18 U.S.C. § 2422(b).[2]

## II.  Mr. Forney's Trial and Jury Verdict

Jury selection for Mr. Forney's trial commenced on August 11, 2025. (Tr.[3] 2.)  After preliminary instructions by the Court and opening statements by both parties, the government presented its case-in-chief over the course of the next three days and rested on August 13, 2025. (*Id.* 2–45, 53-162, 164-333, 346-553.)

After the government rested, Mr. Forney moved for a judgment of acquittal pursuant to Rule 29. (*Id.* 555-56.) The Court ruled that there was sufficient evidence for the case to go to the jury. (*Id.* 556-57.)  After his initial Rule 29 motion, Mr. Forney presented a defense case over two days, testified on his own behalf, and rested on August 14,2025. (*Id.* 555-652, 681-751.) The Court held a charging conference with the parties outside the presence of the jury and Mr. Forney.(*Id.* 784-831.)  Mr. Forney was offered the right to be present at his charging conference but declined to be present.  (Tr. 784-85.)

O August 15, 2025, both parties presented their closing arguments to the jury, the Court charged the jury, and, following

---

[2] The remainder of this Memorandum and Order will refer to each Jane Doe by the first name and initial used to refer to that Jane Doe at trial.

[3] Citations to "Tr." refer to the transcript of Mr. Forney's trial in this action, which commenced on August 11, 2025 and concluded on August 15, 2025, when the jury returned a verdict of guilty on all counts.

its deliberations, the jury convicted Mr. Forney of Counts One through Five.  (*Id.* at 846–1057.)

## LEGAL STANDARD

### I.    Rule 29 Motion for a Judgment of Acquittal

In deciding a Rule 29 motion, a court should "avoid usurping the role of the jury," and cannot "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (alterations adopted) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)).  A court must consider the totality of the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. White*, 7 F.4th 90, 98 (2d Cir. 2021) (quoting *United States v. Aquart*, 912 F.3d 1, 17 (2d Cir. 2018)); *see United States v. Archer*, 977 F.3d 181, 188-89 (2d Cir. 2020) (A court must "defer to the jury's resolution of conflicting evidence[.]").  A court must also evaluate the evidence in a sufficiency challenge "in conjunction," rather than "piecemeal or in isolation." *United States v. Klein*, 913 F.3d 73, 78 (2d Cir. 2019).

Ultimately, a court may enter a judgment of acquittal "only if the evidence that the defendant committed the crime alleged is

4

'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'"  *Guadagna*, 183 F.3d at 130 (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)).  Thus, a defendant challenging his conviction on sufficiency grounds "faces a heavy burden, as the standard of review is exceedingly deferential to the jury's apparent determinations." *United States v. Davis*, No. 21-1486, 2023 WL 4582002, at *1 (2d Cir. July 18, 2023) (summary order) (alteration adopted) (quoting *United States v. Flores*, 945 F.3d 687, 710 (2d Cir. 2019)).

## II.  Rule 33 Motion for a New Trial

Rule 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires."  "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convicted.'"  *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (quoting *United States v. Ferguson*, 246 F.3d 129, 134 (2d Cir. 2001)); *see also United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020) ("In determining whether to grant a Rule 33 motion, the ultimate test is whether letting a guilty verdict stand would be a manifest injustice." (alteration adopted) (quoting *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005))); *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149,

159 (2d Cir. 2008) ("Generally, a motion for a new trial 'should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" (quoting *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003))).

Although the Second Circuit "generally allow[s] district courts greater deference to grant a new trial under Rule 33 than to grant a motion for acquittal under Rule 29, courts must nonetheless exercise Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Coté*, 544 F.3d 88, 101 (2d Cir. 2008) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)).

**DISCUSSION**

**I.    Rule 29: Count Three – Mann Act Interstate Prostitution of Jonnica C.**

Mr. Forney argues that this Court should overturn the jury's verdict as to Count Three, Mann Act Interstate Prostitution of Jonnica C. in violation of 18 U.S.C. § 2422(a) because the evidence does not establish that Jonnica C. traveled "under her own steam," without transportation assistance from Mr. Forney. (Def. Mot. at 4-7 (quoting *United States v. Purcell*, 967 F.3d 159 analysis on § 2421(a))). For the reasons set forth below, the Court finds abundant evidence supporting the jury's conviction of Mr. Forney as to Count Three.

**A.    Legal Standard**

Following a charging conference at which the parties were fully heard, the Court charged the jury that to find Mr. Forney guilty of Mann Act interstate prostitution of Jonnica C. in violation of 18 U.S.C. § 2422(a), the government must prove beyond a reasonable doubt: (1) that the defendant knowingly persuaded, induced, enticed, or coerced Jonnica C. to travel in interstate commerce; (2) that Jonnica C. traveled in interstate commerce; and (3) that the defendant acted with the intent that Jonnica C. would engage in prostitution.  (Tr. 1004-1007); Sand, Modern Federal Jury Instructions—Criminal, Instructions ("Sand Criminal Instructions") 64.02.  The Court instructed the jury that it must unanimously decide whether the Government has proven beyond a reasonable doubt each element with respect to Jonnica's travel: (1) from Wisconsin to New York, and, (2)from New York to Connecticut.[4]  (Tr. 1006.)

**B.    Section 2422(a) Does Not Require a Victim to Travel Without Any Assistance From the Defendant**

Mr. Forney argues that he cannot be convicted under Count Three, Mann Act Interstate Prostitution of Jonnica C. in violation of 18 U.S.C. § 2422(a), because he was convicted of Count Two, Mann Act Transportation of Jonnica C. in violation of § 2421(a)

---

[4] The verdict form included a special verdict from the jury with respect to each of the two trips.

regarding the same two trips, one from Wisconsin to New York, and one from New York to Connecticut. (Def. Mot. at 4-7.) Mr. Forney asserts that Section 2421(a) applies to circumstances where the defendant personally or through an agent performed the act of transporting, but Section 2422(a), requires that the victim travel "under her own steam" without any transportation assistance from the defendant. (*Id.*) In support of his assertion, Mr. Forney cites and quotes *Purcell*. (Def. Mot. at 5 (quoting *Purcell*, 967 F.3d at 190) ("A defendant will be deemed to have 'transport[ed] an individual under Section 2421 where the evidence shows that the defendant personally or through an agent performed the proscribed act of transporting, as opposed to situations where the victim travels under her own steam, without need of anyone to 'transport' her.")). Mr. Forney argues that because the evidence established that Mr. Forney transported Jonnica C. to New York and Connecticut in violation of Section 2421(a) as charged in Count Two, the evidence does not establish that Jonnica C. traveled "under her own steam" to support a guilty verdict under § 2422(a) as charged in Count Three. (*Id.*)

Mr. Forney is incorrect. Mr. Forney's conviction under § 2421(a) does not preclude his conviction under § 2422(a) because Section 2421(a) and Section 2422(a) are separate and distinct offenses and penalize different conduct. Section 2421(a) states

8

in relevant part:

> Whoever knowingly *transports* any individual in interstate or foreign commerce, . . . with intent that such individual engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined . . . or imprisoned . . . or both. (emphasis added).

A conviction under §2422 does not require that the victim travel on his or her own as Mr. Forney contends. Instead, Section 2422(a) states in relevant part:

> Whoever knowingly *persuades, induces, entices, or coerces* any individual to travel in interstate or foreign commerce, . . . to engage in prostitution, or in any sexual activity for which any person can be charged with a criminal offense, or attempts to do so, shall be fined . . . or imprisoned . . . or both. (emphasis added).

As this Court has previously explained, transportation of a person interstate and inducing a person to travel interstate are two separate actions and crimes that can be attributed to the same person. *See United States v. Forney*, No. 24-cr-146 (KAM), 2025 WL 2208298, at *5 (E.D.N.Y. Aug. 4, 2025). "One person may be guilty of both offenses although they may arise out of the same transaction" because "it would not require the same evidence to establish that one knowingly transported a woman, or caused her to be transported, and to prove that he induced the same woman to go in such commerce." *United States v. Saledonis*, 93 F.2d 302, 303-04 (2d Cir. 1937) (analyzing and interpreting the two predecessor statutes to § 2421(a) and § 2422(a)); *see also United States v.*

*Taitano*, 442 F.2d 467, 469 (9th Cir.), *cert. denied*, 404 U.S. 852 (1971) (finding § 2421 and § 2422 are "separate and distinct"); *Batsell v. United States*, 403 F.2d 395, 400 (8th Cir. 1968), *cert. denied*, 393 U.S. 1094 (1969) (same); *Nunnally v. United States*, 291 F.2d 205, 206 (5th Cir. 1961) ("The offense of causing transportation of a woman under § 2421 and the offense of inducing a woman to go in interstate commerce for immoral purposes under § 2422 constitute separate crimes.").

Accordingly, a conviction under Section 2422(a) does not require the government to have presented evidence that Jonnica C. traveled "under her own steam" to New York or Connecticut. Section 2422(a) does not state "whoever knowingly persuades . . . any individual to travel" *alone or by their own steam* "shall be fined . . . or imprisoned." To read such a requirement into the statute violates the well-established principle that courts do not read in a requirement that Congress omitted. *See e.g.*, *Olivieri v. Stifel, Nicolaus & Co., Inc.*, 112 F.4th 74, 89 (2d Cir. 2024) (quoting *Jama v. Immigr. & Customs Enf't*, 543 U.S. 335, 341 (2005) ("[W]e 'do not lightly assume that Congress has omitted from its adopted text requirements that it nonetheless intends to apply.'")). Because "persuasion is distinct from the actual transportation," "convincing someone to transport himself or herself across state lines for the purpose of prostitution completes the crime under

§ 2422(a)," no matter if a defendant travels with the person or not. *United States v. Williams*, 291 F.3d 1180, 1187 (9th Cir. 2002), *overruled on other grounds by United States v. Gonzales*, 506 F.3d 940 (9th Cir. 2007).

Courts also agree that § 2422(a) does not require a victim to travel alone or on her "own steam" without any assistance from a defendant. Courts have upheld § 2422(a) jury convictions even when the underlying 2422(a) conduct included actual transportation by the defendant. *See United States v. Kelly*, 609 F. Supp. 3d 85, 136 (E.D.N.Y. 2022), *aff'd*, 128 F.4th 387 (2d Cir. 2025) (upholding a 2422(a) jury conviction when Defendant paid for the victim's plane ticket); *United States v. Townsend*, 521 F. App'x 904, 907 (11th Cir. 2013) (upholding a § 2422(a) conviction where defendant traveled with the victim to another state in denying Rule 29 motion based on insufficiency of evidence).

Mr. Forney relies heavily on *United States v. Purcell*, 967 F.3d 159 (2d Cir. 2020) and *United States v. Holland*, 381 F.3d 80 (2d Cir. 2004). (Def. Mot. at 5-7.) But both cases fail to support his argument that a violation of § 2422(a) requires evidence that Jonnica C. traveled anywhere under her own steam. The Second Circuit in *Purcell* reversed the conviction on the § 2422(a) Count due to insufficient evidence of venue. *Purcell*, 967 F.3d at 185-91. The Second Circuit in *Purcell* only drew a

11

distinction between a "proscribed act of transporting" and "where the victim travels under her own steam" in explaining when a "defendant will be deemed to have 'transport[ed]' an individual under Section 2421." *Id.* at 190 (quoting *United States v. Holland*, 381 F.3d 80, 86 (2d Cir. 2004)). Likewise, the Second Circuit in *Holland*, drew the same distinction in its § 2421(a) analysis but also did not comment on the required elements of § 2422(a). *See Holland*, 381 F.3d at 86. Neither case held that § 2422(a) requires, and is only limited to, when a victim travels without any transportation assistance from a defendant.

*United States v. Jones* also provides no basis to grant a judgment of acquittal on Count Three. *See* 909 F.2d 533 (D.C. Cir. 1990); (Def. Mot. at 5.) In *Jones*, the D.C. Circuit held that an escort service's advertisements and support services could not fulfill the "transport" element under § 2121(a) when the escorts made their own travel arrangements and transported themselves interstate. 909 F.2d at 540. Although the D.C. Circuit, in dictum, then drew a distinction between "§ 2421 cases where a defendant performs the proscribed act of transporting" and § 2422 "cases in which the defendant provides the motivation, ranging from persuasion to coercion, but the person then 'travels' under her own steam," the D.C. Circuit did not state that § 2422 violations are *only* limited to cases where a defendant provides

12

the motivation but the person then travels under her own steam. *See id.* Moreover, contrary to Mr. Forney's assertion (Def. Mot. at 5-6), the Second Circuit in *Purcell* did not "adopt[]" any *Jones* interpretation of § 2422(a). *See* 967 F.3d at 191-192. The Second Circuit in *Purcell* and *Holland* only cited to the relevant *Jones*' language in its § 2421(a) analysis. *See* 967 F.3d at 191-192; 381 F.3d at 86. Neither adopted any *Jones* interpretation of § 2422(a). *See id.*[5]

Mr. Forney's reliance on *Jones* is misplaced. Although drawing a distinction between cases where a victim is actually transported by a defendant versus cases where a victim travels under her own steam may "together comprise a set that captures all instances in which a person crosses a state line," *Jones*, 909 F.2d at 540, it does not capture all instances of defendant misconduct related to a victim's crossing of state lines under § 2421(a) and § 2422(a). The plain language of § 2421(a) and § 2422(a) does not preclude the possibility that a defendant violates both § 2421(a) and § 2422(a). If a defendant knowingly drives or purchases a transportation ticket for a victim to fulfill the "transport" element of 2421(a) but does not "persuade, induce, entice and

---

[5] The Second Circuit in *Purcell* explicitly rejected Jones' reasoning and holding on the scope of § 2421(a) because another Second Circuit case, *United States v. Mi Sun Cho*, held otherwise. *See* 967 F.3d at 190-192, 191 n. 17 (explaining the Second Circuit's contrary holding on § 2421(a) in *United States v. Mi Sun Cho*, 713 F.3d 716, 720 (2d Cir. 2013)).

coerce an individual," that is a violation of § 2421(a) but not 2422(a). If a defendant does "persuade, induce, entice and coerce an individual" but fails to directly drive or purchase a ticket that transports an individual, such conduct does not violate 2421(a) but does violate 2422(a). But if a defendant both drives or purchases a transportation ticket for a victim *and* also "persuade[s], induce[s], entice[s] and coerce[s] an individual," such conduct is a violation of both § 2421(a) and § 2422(a) because "[t]he offense of causing transportation of a woman under § 2421" and the offense of inducing a woman to [travel] in interstate commerce . . . under § 2422" are two separate acts both of which "constitute separate crimes." *Nunnally v. United States*, 291 F.2d 205, 206 (5th Cir. 1961). A violation of § 2422(a) thus does not require that a victim travel "under her own steam" to find a defendant guilty of providing the motivation for someone to engage in interstate prostitution.

### C. Sufficiency of the Evidence

The Court finds abundant evidence supporting the jury's conviction of Mr. Forney as to Count Three, which charges him with Mann Act Interstate Prostitution of Jonnica C. in violation of 18 U.S.C. § 2422(a) in or about and between April 2016 and July 2016.

First, the evidence showed that Mr. Forney persuaded, induced, and enticed Jonnica C. to travel from Wisconsin to New York and New York to Connecticut. Jonnica C. testified that Mr.

14

Forney told her that as an escort, she could make a "substantial amount of money" and that she could keep the money she earned and live a "very luxurious" and "fancy" life working in New York. (Tr. 41, 119.) Based on her conversations with Mr. Forney, Jonnica C. thought she would live in a "really nice house or nice apartment" (*Id.* 237), "sit down on a yacht somewhere drinking martinis" (*Id.* 237), and make enough money to "pay for a lawyer" to "get her daughter back" and "support [her] kid, (*Id.* 42-43.)   Jonnica C. also testified that Mr. Forney wanted her to travel from New York to Connecticut because the casino there was "big for" prostitution and it was where "people have money." (*Id.* 130.)   Mr. Forney himself testified that he would travel with Jonnica C. to different states to enhance his prostitution business. (*Id.* 594.)   These kind of "financial rewards" or "incentives" are sufficient evidence that a defendant knowingly persuaded, induced, or enticed a victim under Section 2422. *See United States v. Waqar*, 997 F.3d 481, 487-88 (2d Cir. 2021); *see also United States v. Kelly*, 128 F.4th 387, 414 (2d Cir. 2025) (defendant's promises of free travel and trips with defendant were sufficient evidence of inducement under § 2422(a)).

The evidence also showed that Mr. Forney coerced and induced Jonnica C. to travel from New York to Connecticut to engage in prostitution.   Jonnica C. testified that she was subject to Mr.

Forney's coercive scheme from the day Jonnica C. arrived in New York City.  (Tr. 54-56.)   The day she arrived in New York, Mr. Forney picked her up, took her to a hotel, made her feel like she could not reject his sexual advances, had sex with her, and took sexually explicit photos of her. (*See id.* 54-65; Government Exhibit ("GX") 205-1S) Jonnica C. testified that Mr. Forney then instructed her to have sex with two men for his financial benefit, taking all of Jonnica C's earnings after each man left. (*Id.* 67-70.)  On her second day with Mr. Forney, Jonnica C. testified that she woke up to Mr. Forney staring at her and warning her that "there's going to be consequences for you falling asleep" after she fell asleep after engaging in prostitution at Mr. Forney's direction.  (*Id.* 70-71, 74, 76-78).  Mr. Forney required Jonnica C. to make close to $2,000 a day in prostitution, even if she was sick or was on her period. (*Id.* 93-95.)  Jonnica C. testified that Mr. Forney was "intimidating," that "she felt trapped" those first few weeks in New York, that Mr. Forney verbally threatened her with physical violence, and that Mr. Forney showed her a picture of a dismembered body while saying "this is what happens if you don't obey your pimp." (*Id.* 87-88, 97-98.)

Second, the evidence showed that Jonnica C. traveled in interstate commerce to New York and Connecticut. Jonnica C. testified that she traveled from Wisconsin to New York to meet Mr.

16

Forney where he directed her to engage in prostitution upon her arrival. (*Id.* 44.)  Mr. Forney also purchased Jonnica C. a train ticket to travel from Wisconsin to New York. (GX 904; Tr. 507-09, 683.)  Jonnica C. also testified that Mr. Forney drove her from New York to Connecticut where she engaged in prostitution and that she stayed in a Ramada Inn in Connecticut. (Tr. 124-126, 133-134.) Mr. Forney admitted that he took Jonnica C. from New York to Connecticut where Jonnica C. engaged in prostitution with men for Mr. Forney's financial benefit. (*Id.* 624.)

Third, the Defendant acted with the intent that Jonnica C. would engage in commercial prostitution.  Backpage records showed that Mr. Forney posted prostitution advertisements featuring Jonnica C. in New York and Connecticut.  (GX 400-499.)  Mr. Forney admitted at trial that he spoke with Jonnica C. before she arrived in New York to ensure that Jonnica C. understood that "[s]he was coming to New York to become a prostitute."  (Tr. 575.)  Jonnica C. also testified that Mr. Forney set the prices charged for Jonnica C.'s prostitution services. (*Id.* 93-94.)  Mr. Forney also admitted that he transported Jonnica C. to Connecticut where Jonnica C. had sex with men for Mr. Forney's financial benefit. (*Id.* 624.)

The jury was permitted to credit all the aforementioned evidence in finding that Mr. Forney was guilty of Mann Act

17

Interstate Prostitution of Jonnica C. *See United States v. Elias*, 619 F. Supp. 3d 296, 304 (E.D.N.Y. 2022) (citing *United States v. Rea*, 958 F.2d 1206, 1222 (E.D.N.Y. 1992)) (noting the "jury was entitled to credit each piece of [the aforementioned] evidence in reaching its verdict . . . [and t]his court will not now second-guess the jury's assessments.")  Thus, this Court will not disturb the jury's verdict that Mr. Forney is guilty of Mann Act Interstate Prostitution of Jonnica C. in violation of § 2422(a), as charged in Count Three.

## II.  Rule 29: Count Four – Sex Trafficking of Shyya H.

Mr. Forney argues that this Court should overturn the jury's verdict as to Count Four, Sex Trafficking of Shyya H., in violation of 18 U.S.C. § 1591(a), because "the evidence failed to establish that any force used against Shyya H. was for the purpose of causing her to engage in or continue to engage in commercial sex work." (Def. Mot. at 9.)  For the reasons set forth below, the Court finds abundant evidence supporting the jury's conviction of Mr. Forney as to Count Four.

### A.  Legal Standard

Count Four charges Mr. Forney with Sex Trafficking of Shyya H. in or about and between May 2017 and September 2017 in violation of 18 U.S.C. § 1591(a).  (Indictment ¶ 4.)  The Court instructed the jury to apply the Court's instructions in Count One regarding the elements of sex trafficking, the definitions of force, threats

18

of force, fraud and coercion, the meaning of interstate commerce, and what it means to act knowingly and intentionally to Count Four. (Tr. 1008.) Accordingly, the Court charged the jury that, to find Mr. Forney guilty of sex trafficking of Shyya H. in violation of § 1591(a), the government must prove beyond a reasonable doubt the elements of sex trafficking: (1) that (a) the defendant knowingly recruited, enticed, harbored, transported, provided, obtained, or maintained a person by any means; OR (b) the defendant knowingly benefitted, financially or by receiving something of value, from participating in a venture that recruited, enticed, transported, provided, obtained, or maintained a person; (2) that the defendant knew, or acted in reckless disregard of the fact, that force, threats of force, fraud or coercion would be used with respect to such person; (3) that the defendant knew or acted in reckless disregard of the fact that means of force, threats of force, fraud or coercion, or any combination, would be used to cause such person to engage in a commercial sex act; and (4) that the defendant's conduct was in or affecting interstate commerce. (Tr. 990-98, 1008); Sand Criminal Instructions 47A-17, 47A-18.

As to the first element, the Court instructed the jury that "recruit" means to "employ or find a person to join." (Tr. 992.) To "entice" means to "attract, tempt, or persuade a person by offering something." (*Id.*) To "harbor a person" means "to provide

19

shelter for that person." (*Id.*)  To "transport a person" means "to move a person from one place to another." (*Id.*)  To "provide a person"  means "to make someone available for use." (*Id.*)  To "obtain a person" refers "to acquiring, controlling, or possessing that person even if only for a short period of time." (*Id.*)  To "maintain a person" means "to upkeep someone or to put care or work into them.  (*Id.*)

As to the second element, the Court instructed the jury that a person acts "knowingly" when he "acts intentionally and voluntarily, and not because of ignorance, mistake, accident, or carelessness." (Tr. 980.)  A person acts "intentionally" when he "acts deliberately and purposefully." (*Id.* 981.)  That is, a defendant's acts "must have been the product of his conscious, objective decision rather than the product of a mistake or an accident." (*Id.*)  To act "knowingly" or "intentionally," the person need not "be aware of the specific law or rule that his conduct may violate, but he must act with the specific intent to do whatever it is the law forbids." (*Id.*)

The Court also instructed the jury that "force" means "any form of power, violence or physical pressure directed against another person." (*Id.* 994.)  The jury was further instructed that "fraud," means "the defendant knowingly made a misstatement, misrepresentation or omission of a material fact to entice the

20

victim." (*Id.*)  A "material fact" is "one that a reasonable person would expect to rely on when making a decision." (*Id.* 994-95.) "Coercion" means either "a threat of serious harm or physical restraint against a person," or "any scheme, plan or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against a person," or the "abuse or threatened abuse of law or legal process."  (Tr. 995-996); § 1591(e)(2).  A "threat" is defined as "a serious statement expressing an intention to inflict harm at once or in the future . . . A statement is a threat if it was made under such circumstances that a reasonable person hearing the statement would understand it as a serious expression of intent to cause harm."  (Tr. 995.)  The term "serious harm" includes "physical and nonphysical types of harm, including psychological, financial or reputational harm that is sufficient under all surrounding circumstances to compel a reasonable person in the same circumstances to perform or to continue performing commercial sexual activity in order to avoid such harm."  (Tr. 995); § 1591(e)(5).  In considering whether Mr. Forney made a threat of serious harm, the Court charged the jury to consider "the victim's station in life, physical and mental condition, age, educational level, experiences, and intelligence."  (Tr. 995.)

As to the third element, the Court instructed the jury that

a "commercial sex act" is "any sex act on account of which anything of value is given to or received by a person." (Tr. 997.) The element does "not require[] that the victim actually performed a commercial sex act as long as the government has proved that the defendant recruited, enticed, harbored, transported, provided, obtained, or maintained the victim for purposes of engaging in commercial sex acts." (*Id.*)

As to the fourth element that the defendant's conduct was in or affecting interstate commerce, the Court instructed the jury that "interstate commerce" means the "movement of money, goods, services, and individuals between any two or more states." (*Id.* 998.)

**B.    Sufficiency of the Evidence**

Mr. Forney's sole argument challenging his conviction on Count Four is that there was insufficient evidence that Mr. Forney knew or acted in reckless disregard of the fact that force, threats of force, coercion or any combination thereof would be used to cause Shyya H. to engage in a commercial sex act. (Def. Mot. at 8-10.) But there was ample evidence before the jury that Mr. Forney himself knowingly or recklessly used force, threats of force, a coercive scheme, or any combination thereof, to cause Shyya H. to engage in commercial sex acts for his benefit.

First, even though Mr. Forney failed to address the evidence establishing his use of coercion in his Rule 29 motion on Count

22

Four, the evidence showed that Mr. Forney engaged in a coercive scheme and made "threats of serious harm." *See* § 1591(e)(2)(A), (B) (defining "coercion"); (Def. Mot. at 8-10.)

Shyya H. testified to how Mr. Forney exercised a pattern of coercive control in connection with her prostitution activities. Mr. Forney required Shyya H. to abide by certain rules. (Tr. 292-93, 304-06.) Shyya H. was not allowed to walk on the sidewalk while looking for dates but was required to walk on the street. (*Id.* 292.) She was also required to keep her head down if she was approached by a pimp. (*Id.*) Shyya H. was required to make at least $600 a night and give Mr. Forney every dollar she earned from commercial sex work. (*Id.* 293, 304.) Shyya H. could not leave the street or stop prostituting for the night until she had met her quota. (Tr. 304.) Shyya H. never withheld money from Mr. Forney because she "was scared to" and didn't have anywhere to hide the money. (*Id.* 305-06.) Shyya H. worked the Penn Track seven days a week from 9:00 P.M. to 7:00 or 8:00 A.M in the morning. (*Id.* 302.) Mr. Forney dictated how long Shyya H. worked and forced Shyya H. to work even if she was tired, sick, or on her period. (*Id.* 305-06.) Mr. Forney made clear it "wasn't an option" to not work as a prostitute and follow his rules. (*Id.*)

Shyya H. did not have any of her own money but relied on Mr. Forney to provide necessities. (*Id.* 308-309.) Mr. Forney provided

23

only $20 a day for food and no money for clothes. (*Id.* 308.) To the extent Mr. Forney provided any clothes, they exposed her body. (*Id.* 308-09.) Shyya H. also testified that Mr. Forney took away her smartphone, replaced it with a flip phone and told her that he didn't want her to speak with her family members because Mr. Forney "was now [her] only family." (*Id.* 310-11.)

There was also abundant evidence that Mr. Forney used threats of force and serious harm so Shyya H. would continue engaging in commercial sex acts for his benefit. Shyya H. testified that she never asked to leave because she did not want to "ask anything that could cause [her] to get smacked." (*Id.* at 306.) She felt it was "crazy" to ask to leave because it would "[p]robably get [her] smacked." (*Id.* 319.) She followed the rules because she thought Mr. Forney would "beat [her] ass" if she did not. (*Id.* 293.) Shyya H. also testified that she did not contact the authorities while she worked for Mr. Forney because it was "dangerous" and "would put [her] life in jeopardy." (*Id.* 329). Shyya H. also witnessed Mr. Forney beating another prostitute who worked for Mr. Forney, Foxy, and testified that after she was "terrified" and thought that if she did "something wrong" she would "get [her] ass beat like that." (*Id.* 312-14.) The jury was entitled to infer that "the logical objective of [defendant]'s intimidating pattern of behavior was to cause [the victim] to

24

believe that she could not refuse to work as a prostitute for him without incurring harm." *Purcell*, 967 F.3d at 193.

The jury was also entitled to credit evidence of Shyya H.'s "particular vulnerabilities" to assess if "reasonable people of the same background and in the same circumstances" would feel coerced. *Id.* at 192-93 (citation modified). Shyya H.'s testimony that she had experienced homelessness, struggled with drug addiction, was a teen mom, and spent her "whole life" in the foster care system where she suffered abused showed that it was reasonable for her to feel coerced through Mr. Forney's conduct. (Tr. 277-78); *see also United States v. Shine*, No. 20-314, 2022 WL 761520, at *2 (2d Cir. Mar. 14, 2022) (summary order) (holding that evidence that defendant exploited victim's fear of homelessness and violence supported the conclusion that the defendant coerced his victims).

A rational trier of fact could have found beyond a reasonable doubt that Mr. Forney coerced Shyya H. to engage in commercial sex acts for his benefit. There is sufficient evidence of coercion where, as here, a victim "testified repeatedly that a defendant's behavior inspired fear" that she was subject to "a pattern of behavior designed to intimidate and exert control[,]" which caused her to continue to engage in commercial sex for the defendant's benefit, *See Purcell*, 967 F.3d at 193-94. In *Purcell*, this was

25

sufficient evidence of coercion even without any evidence of the defendant's use of force or threats of force. *Id.* at 193.

But here, there is also additional evidence that Mr. Forney used force for the purposes of compelling Shyya H. to perform commercial sex acts for Mr. Forney's benefit. Shyya H. testified that Mr. Forney used force against her "three different times." (Tr. 311). Shyya H. testified that the first time Mr. Forney "smacked" her "[a]cross her face[,]" she was "scared." (*Id.* 311-12.) Shyya H. testified that the second time that Mr. Forney exerted force in connection with causing Shyya H. to engage in commercial sex acts was when she wanted to overnight with a man for "700" but Mr. Forney did not want Shyya H. to "stay there all night" and "came and beat [her] ass." (*Id.* 315.) Shyya H. testified that Mr. Forney took off all his clothes before beating her on her head while she was "balled up protecting [her] face." (*Id.* 315-16.) She felt "scared," "just wanted it to be over" and had "a headache for . . . two weeks straight after that." (*Id.* 316.) Shyya H. testified that the third time Mr. Forney used physical force against her was when he "smacked [her] on the track" on her mouth. (*Id.* 317.)

It was reasonable for the jury to find that Mr. Forney's actions were not "merely incidental" but were directly meant to compel Shyya H. to engage in commercial sex acts for Mr. Forney's

benefit, especially viewed in light of Mr. Forney's coercive scheme of control. (*Contra* Def. Mot. at 9-10 (citing *United States v. Chen*, No. 22-CR-158 (ENV) (MMH), 2025 WL 2271484, at *4 (E.D.N.Y. July 7, 2025)).[6] *Chen* held that evidence that defendant beat his organization's prostitutes to keep them from working for rival organizations but "not to force them to keep working for the organization" was insufficient to show that such force was meant to compel the prostitutes to engage in commercial sex acts because the prostitutes were free to leave. 2025 WL 2271484, at *4. But here, there is no evidence that Mr. Forney was beating Shyya H. to keep her from working freelance or for rival organizations. *See id.* Although Mr. Forney asserts that the first instance of force is insufficient because Shyya H. did not provide more details on the first time Mr. Forney hit her,(Def. Mot. at 10), the jury could have reasonably inferred from the evidence of Mr. Forney's larger coercive scheme that Mr. Forney's first use of violence against Shyya H. was intended to cause Shyya H. to continue to engage in commercial sex acts for his benefit.

Mr. Forney asserts that the second and third instances of force did not "cause Shyya to engage in commercial sex work" because she decided to leave Mr. Forney and continued to engage in sex work, however, § 1591(a) does not require that Shyya H. cease

---

[6] Case is on appeal. *See United States v. Chen*, No. 25-1916 (2d Cir. 2025).

engaging in commercial sex work.  The relevant element requires only that the Mr. Forney knew or acted in reckless disregard that his use of force was meant to cause Shyya H. to engage in a commercial sex act because "[t]he result itself is not an element of the offense." *United States v. Alvarez*, 601 F. App'x 16, 18 (2d Cir. Feb. 5, 2015)(summary order).  Section 1591(a) does not impose a requirement of a "necessary result" but only "criminalizes certain means when they are 'used to cause' an act, and thus is concerned with the means and not with the result." *Id.*; *see also United States v. McIntyre*, 612 F. App'x 77, 80 (3d Cir. 2015) ("Section 1591(a) does not require the direct cause-and-effect connection [defendant] posits").

Shyya H's "participation in prostitution either before or after the time period in the indictment" moreover, "has no relevance to whether [the defendant] beat her, threatened her, and took the money she made from prostitution in order to cause her to engage in commercial sex." *United States v. Roy*, 781 F.3d 416, 420 (8th Cir. 2015); *see also United States v. Palms*, 21 F.4th 689, 703 (10th Cir. 2021) (collecting cases).  Mr. Forney's position is untenable.  It essentially excuses a person's use of force, threats of force, fraud and coercion to compel a victim to engage in commercial sex acts for the person's economic and personal benefit if the victim continues to engage in commercial

28

sex work in the future.

The jury was permitted to credit all the aforementioned evidence in finding that Mr. Forney forced, threatened, and coerced Shyya H. into working for Mr. Forney as his prostitute for his financial benefit. *See United States v. Elias*, 619 F. Supp. 3d 296, 304 (E.D.N.Y. 2022) (citing *United States v. Rea*, 958 F.2d 1206, 1222 (2d Cir. 1992)) (noting the "jury was entitled to credit each piece of [the aforementioned] evidence in reaching its verdict . . . [and] this court will not now second-guess the jury's assessments").  The evidence of sex trafficking presented to the jury was "not incredible on its face," *United States v. Diaz*, 176 F.3d 52, 92 (2d Cir. 1999) (citation modified).  It was thus reasonable for the jury to infer that the victim was coerced into engaging in commercial sex acts.  *See United States v. McDermott*, 245 F.3d 133, 137 (2d Cir. 2001) ("[T]he task of choosing among competing, permissible inferences is for the [jury], not for the reviewing court.").

Thus, this Court will not disturb the jury's finding that Mr. Forney is guilty of committing sex trafficking of Shyya H. in violation of § 1591(a), as charged in Count Four.

### III. Rule 33: Count One – Sex Trafficking of Jonnica C.

In the alternative to his Rule 29 motion, Mr. Forney moves to vacate his conviction on Count One and remand for a new trial pursuant to Rule 33.  (Def. Mot. 16.)  In deciding a Rule 33

motion, a court must determine if manifest injustice would result from allowing the guilty verdict to stand. *See United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (citation modified); *United States v. Stewart*, 433 F.3d 273, 296 (2d Cir. 2006) (motions for new trial "should be granted only with great caution and in the most extraordinary circumstances").

Mr. Forney asserts that a new trial on Count One is warranted based upon the Court's decision to exclude emails[7] between Mr. Forney and Jonnica C. because the evidence was offered to impeach Jonnica's credibility. (Def. Mot. at 11-15.) As an initial matter, Mr. Forney fails to cite to where in the trial record defense counsel attempted to admit into evidence three defense exhibits, designated in his Rule 33 motion as DX-B, DX-C, or DX-D, and where in the trial record the Court ruled that such exhibits were inadmissible. Upon review of the transcript, the Court has been unable to identify when defense counsel attempted to admit into the record and where the Court ruled on the admissibility of

---

[7] Before trial, Mr. Forney represented that the defense had no proposed exhibits for trial in response to the Court's Pre-Trial Scheduling Order, (ECF No. 63, 85.)

the defense exhibits DX-B[8], DX-C[9] or DX-D[10], so identified for the first time in this Rule 33 motion.   In a sidebar during Mr. Forney's direct regarding DX-A, defense counsel mentioned that he had "four separate emails" that he sought to admit through Mr. Forney but other than defense exhibit DX-A, failed to label or identify what those emails were or formally move to admit them into evidence.  (Tr. 579.)  The Court thus does not consider any Rule 33 arguments regarding DX-B, DX-C, or DX-D.

Defense counsel only attempted to admit DX-A, into the record. (Tr. 578-79.)  DX-A is a May 11, 2016 email chain between Jonnica C. and Mr. Forney where Jonnica C. writes "[a]ll I ask is for you to keep these private and confidential. Thank you[,]" and six

---

[8] DX-B is an email dated November 3, 2016 with an attached letter to Jonnica C's parents. During Jonnica C.'s cross examination, Defense counsel asked Jonnica C. if she recalled a letter to her parents who had guardianship over Jonnica C.'s child.  Jonnica C. testified that she did not recall whether she contacted Mr. Forney and asked him for a copy of the letter but did recall that Mr. Forney "composed a letter" (Tr. 231.) Defense counsel did not mark, identify, designate, or formally attempt to move DX-B into evidence at trial. (*See* Tr. 230-34 (The Court: "Are you trying to put this into evidence." Defense counsel: "Not right now."))

[9] DX-C is an email dated January 20, 2019 with the body text "Hello sir, how are you?" During Jonnica C.'s cross examination, defense counsel asked Jonnica C. if she recalled sending an email to Mr. Forney in January 2019 that simply said "Hello, sir. How are you?" (Tr. 234-35).  Jonnica C. responded that she "d[id]n't recall either doing it or not." (Tr. 235.)  Defense counsel did not mark, identify, designate, or formally attempt to move DX-C into evidence at trial.

[10] DX-D is an email dated June 7, 2019 with the body text "Do you have any of my older photos? I really liked some of them and would hate to make some new ones." During Jonnica C.'s cross examination, defense counsel asked "Do you recall sending an e-mail to Mr. Forney in June of 2019 in which you asked him whether he had any of your older photos?" to which Jonnica C. testified that she could not recall.  (Tr. 235.)  Defense counsel did not mark, identify, designate, or formally attempt to move DX-D into evidence at trial.

attached photographic images including four nude images of a woman from the shoulders down and two photos of Jonnica C's face. (Def. Mot. at 12.)  At trial, the Government objected to DX-A on hearsay grounds. (Tr. 578-88.)  Mr. Forney argued that DX-A was admissible because it was not offered for the truth of the matter asserted but to impeach Jonnica C.'s purported testimony denying that she sent the email and photos to Mr. Forney. (*Id.* 580.)  The Court noted that Jonnica C. had not denied that she sent the email or the photographs but testified that she could not remember. (*Id.* 580-82.)  The Court subsequently ruled that DX-A was hearsay, not proper impeachment as an inconsistent statement, and inadmissible given that, on cross, Jonnica C. did not recall whether she sent the email or attached photos, her recollection had not been refreshed when she was shown DX-A, and she could not identify the four photos of a nude body. (*Id.* 579-88.)

Mr. Forney now argues that DX-A should have been admitted because DX-A was not offered for the truth of the matter asserted but to (i) show the fact that the email had been sent; (ii) show the images attached to the emails which as images were non-statements, and (iii) impeach Jonnica C.'s claims on direct examination that she was unaware that she was coming to New York for the purpose of engaging in prostitution. (Def. Mot. at 14.) During Mr. Forney's direct, defense counsel argued that DX-A was

to impeach Jonnica C. and undercut Jonnica C.'s credibility. (*See* Tr. 586-87) (Defense counsel: "the fact[] that [the email and attached photos] were sent . . . undercuts her claim that she didn't or she doesn't remember."). Although Mr. Forney fails to carry his burden on a Rule 33 motion and cite to any evidentiary rule governing his claims, Mr. Forney essentially argues that DX-A should have been admitted as extrinsic impeachment evidence.

But hearsay is also not automatically admissible just because it is offered for impeachment purposes. There are two avenues to admit out of court statements for impeachment purposes: Fed. R. Evid. ("FRE") 613(b) and FRE 801(d)(1)(A). "Prior inconsistent statements are generally admissible for impeachment purposes only, *see* [FRE] 613, and are inadmissible hearsay for substantive purposes unless they were made at 'a trial, hearing, or other proceeding, or in a deposition.'" *Santos v. Murdock*, 243 F.3d 681, 684 (2d Cir. 2001) (quoting FRE 801(d)(1)(A)). Here, DX-A is inadmissible under FRE 801(d)(1)(A) because the email statement was not made under penalty of perjury in a deposition or at a trial, hearing, or other proceeding.

The Court properly excluded DX-A because DX-A is also inadmissible under FRE 613(b). The general rule is that "extrinsic evidence is not admissible to prove specific instances of a witness's conduct in order to attack or support the witness's

33

character for truthfulness." FRE 608. DX-A is thus inadmissible as extrinsic evidence to attack Jonnica C.'s credibility and her lack of memory and to prove that Jonnica C. did send the email. The exception under FRE 613(b) allows "extrinsic evidence of a witness's prior statement" to be "offered to impeach that witness's credibility only if, *inter alia*, the statement is inconsistent with [the witness's] trial testimony." *United States v. Arena*, 180 F.3d 380, 400 (2d Cir. 1999), *abrogated on other grounds by Scheidler v. Nat'l Org. for Women, Inc.*, 537 U.S. 393 (2003); *see also United States v. Hale*, 422 U.S. 171, 176 (1975) (Although "prior inconsistent statements may be used to impeach the credibility of a witness . . . the court must be persuaded that the statements are indeed inconsistent.") "The extrinsic evidence of the prior inconsistent statement must" also "be competent and otherwise admissible." *United States v. Ghailani*, 761 F. Supp. 2d 114, 118 (S.D.N.Y. 2011).

As discussed at trial, the Court was not persuaded that DX-A was inconsistent with Jonnica C.'s testimony that she could not recall sending DX-A and that her recollection was not refreshed by DX-A. (Tr. 578-88.) The Court sees no reason to revisit that decision. Contrary to Mr. Forney's assertions at trial (*Id.* 579-80, 586-87), Jonnica C. did not testify that she did not send DX-A, nor did she deny ever taking or sending the attached

photographs.  Jonnica C. instead testified that she did not recall sending the email or the attached photographs, and could not identify the nude, headless photos as herself.  (*Id.* 175, 182-83, 190-91.)  Jonnica C. confirmed that the two attached photos with a face were of her face.  (Tr. 190.)  Mr. Forney now advances a new basis for inconsistency in asserting that DX-A was offered to impeach Jonnica C. on her purported claim that "she was unaware that she was coming to New York for the purpose of engaging in prostitution."  (Def. Mot. at 14.)  At trial, Jonnica C. did not testify that she was unaware that she was traveling to New York to engage in prostitution.  Instead, Jonnica C. testified that she was aware there was a possibility she would be engaging in prostitution.  (Tr. 41-42, 236-37.)  The email statement in DX-A, "[a]ll I ask is for you to keep these private and confidential[,]" thus does not conflict with Jonnica C.'s testimony and is not proper extrinsic impeachment evidence admissible under FRE 613(b).

Finally, even if DX-A was erroneously excluded, the exclusion of DX-A does not amount to a manifest injustice.  *See United States v. Ragano*, 759 F. Supp. 3d 363, 369 (E.D.N.Y. 2024) ("A Rule 33 motion is generally an improper vehicle by which a defendant may challenge evidentiary rulings, absent 'manifest injustice.'") (citation modified).

Citing only *United States v. Mergen*, 764 F.3d 199 (2d Cir.

2014), Mr. Forney argues that the Court's exclusion of DX-A's amounts to a manifest injustice because the Second Circuit has held that erroneously excluded impeachment evidence warrants a new trial if the case hinges on whether the jury believes the defendant or another witness. (Def. Mot. at 15-16.) But *United States v. Mergen* is inapposite. In *Mergen*, the district court incorrectly excluded, based on hearsay and lack of authentication, a recorded conversation on the night of an alleged arson between the defendant and an FBI agent where the FBI agent stated that defendant had not done "anything wrong." 764 F.3d at 206. The FBI agent then testified that on the night of the arson, he had already taken the view that the defendant "should be criminally prosecuted." The Second Circuit ruled that the recording should have been admitted because it contained prior inconsistent statements of the agent and was offered for impeachment. *Id.* at 206-07. A new trial was granted because the exclusion of the recording meant the jury did not have any evidence of defendant's version of the facts. *See id.* at 207. But that is not the case here. First, the FBI agent's testimony in Mergen was inconsistent with the agent's prior statement. *See id.* Here, Jonnica C.'s trial testimony that she could not recall the email or identify the nude photos was not inconsistent with her email. Her recollection was not refreshed

by DX-A. (Tr. 175, 182-83, 191.)[11] Second, the Court allowed Mr. Forney to testify that he received an email from Jonnica C. in May 2016 with photo attachments, that he now knew that the photographs of a woman's face were of Jonnica C., and that he believed the attached nude photos were of Jonnica C. (Tr. 590.) Defense counsel included such testimony in defense counsel's summation. (Id. 902-04.) The images were also admitted into evidence in DX-E, a Cellebrite extraction from a phone that was admitted into evidence. (Id. 551-53, 581.)

Accordingly, Mr. Forney's argument that any erroneous exclusion impeded on Mr. Forney's right to present a defense and his due process rights also provides no basis for a new trial. A defendant's due process right to present a defense, "is not absolute" because a defendant "must comply with established rules of procedure and evidence designed to assure both fairness and reliability." *Washington v. Schriver*, 255 F.3d 45, 56 (2d Cir.2001) (citation modified). Here, Mr. Forney was given the opportunity to cross examine Jonnica C. and to present his version of events on the relevant emails through his testimony and admitted exhibits.

---

[11] The Court advises that although defense counsel only sought to refresh Jonnica C's recollection with DX-A during Jonnica C.'s cross, and did not formally seek to admit it into evidence, had defense counsel moved to admit DX-A into evidence DX-A would have been inadmissible through Jonnica C. because she did not recall sending the email. (*See* Tr. 180-83, 190-91.)

There is, moreover, "satisfactory and sufficient evidence in the record" to "support[] the jury's finding that the defendant is guilty beyond a reasonable doubt," so "a new trial is not warranted" even if "a trial court errs in its evidentiary rulings." *Ragano*, 759 F. Supp. 3d at 369 (quoting *United States v. Parnas*, No. 19-cr-725, 2022 WL 669869, at *6 (S.D.N.Y. Mar. 7, 2022), *aff'd sub nom. United States v. Kukushkin*, 61 F.4th 327 (2d Cir. 2023)). Jonnica C. testified that Mr. Forney recruited and enticed her to come to New York and go to Connecticut to perform commercial sex acts with men. (Tr. 40-41, 119.) She also testified that Mr. Forney benefited financially in doing so by taking all her earnings. (*Id.* 28, 94-95; *see also id.* 624-25 (Mr. Forney's own testimony.)) She further testified that Mr. Forney used force, threats of force and coercion to compel her to engage in commercial sex acts. (*Id.* 94-100.)

The Government introduced into evidence Amtrak records showing that Mr. Forney purchased a train ticket for Jonnica C.'s travel from Wisconsin to New York (GX 904); Backpage records showing Mr. Forney posted prostitution advertisements for Jonnica C. (GX 400-499); hotel records with dates corresponding to when Mr. Forney posted Backpage advertisements of Jonnica C. to solicit clients in locations consistent with the hotel records (GX 402, 907); text messages with and photographs of Jonnica C. relating to

prostitution, and online searches of prostitution related websites (GX 200-216).  The Government elicited testimony from a detective who arrested and observed Jonnica C. in Connecticut during an undercover operation, (Tr. 259-70).  Mr. Forney himself also testified that he recruited Jonnica C. to work as a prostitute, bought her train ticket to New York, and transported her between states to engage in commercial sex acts.  (*Id.* 572-73, 572-75, 593-94, 682-83.)

Based on the trial record, and for the same reason that Mr. Mr. Forney's Rule 29 motion fails, the Court finds Mr. Forney has not demonstrated extraordinary circumstances or that a manifest injustice would result from allowing the guilty verdict to stand. Accordingly, Mr. Forney is not entitled to vacatur on Count One or a new trial pursuant to Rule 33 and his Rule 33 motion is respectfully denied.  *See United States v. Curry*, 542 F. Supp. 3d 197, 206-07 (W.D.N.Y. 2021) (denying defendant's Rule 33 motion for the same reasons that warranted denial of defendant's Rule 29 motion), *aff'd*, No. 22-50, 2023 WL 8073057 (2d Cir. Nov. 21, 2023).

## CONCLUSION

For the foregoing reasons, the Court respectfully **DENIES** Mr. Forney's Rule 29 motion for a judgment of acquittal on all counts, and in the alternative, his Rule 33 motion for a new trial. All parties shall appear for Mr. Forney's sentencing on April 3, 2026

at 10:30 a.m. in Courtroom 6B South.

**So ordered.**

Dated:     December 18, 2025
              Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York