EMR:ANR/LAB/LB
F. #2020R00753

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA

    - against -                                   24-CR-146 (KAM)

JOEL DAVID FORNEY,
        also known as "Sirbar,"

                     Defendant

- - - - - - - - - - - - - - - - - - - - - - - - - - - X

## THE GOVERNMENT'S MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANT'S MOTION TO COMPEL DISCOVERY

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201

A.  TYSEN DUVA
Assistant Attorney General
Department of Justice
950 Pennsylvania Avenue NW
Washington, DC 20530

Antoinette N. Rangel
Lauren A. Bowman
Assistant U.S. Attorneys
Leah Branch
Trial Attorney
      (Of Counsel)

TABLE OF CONTENTS

PRELIMINARY STATEMENT ................................................................................... 1

BACKGROUND ....................................................................................................... 2

    I.     Procedural Background................................................................................ 2

    II.    Relevant Trial Testimony ......................................................................... 2

    III.   Deliberations and Verdict ......................................................................... 3

    IV.   Relevant Post-Trial Litigation.................................................................. 3

ARGUMENT.......................................................................................................... 7

    I.     Applicable Law & Discussion .................................................................. 7

         A.     The Government Complied with All Disclosure Obligations...................7

         B.     The Government did Not Violate the Defendant's Due Process
             Rights .......................................................................................................9

CONCLUSION....................................................................................................... 10

TABLE OF AUTHORITIES

Cases

Brady v. Maryland, 373 U.S. 83 (1963) .......................................................................... 1, 6, 7, 8, 9

Giglio v. United States, 405 U.S. 150 (1972) ................................................................. 1, 6, 7, 8, 9

Leka v. Portuondo, 257 F.3d 89 (2nd Cir. 2001) ........................................................................... 8

Napue v. Illinois, 360 U.S. 264 (1959) ..................................................................................... 6, 9

RW Prof'l Leasing Servs. Corp., 317 F. Supp. 2d 167 (E.D.N.Y. 2004) ....................................... 9

United States ex rel. Lucas v. Regan, 503 F.2d 1 (2d Cir. 1974) .................................................. 8

United States v. Bridges, 61 Fed. App'x 736 (2d Cir. 2003)......................................................... 8

United States v. Coppa, 267 F.3d 132 (2nd Cir. 2001)................................................................. 8

United States v. Mohamed, 148 F. Supp. 3d 232 (E.D.N.Y. 2015)................................................ 9

United States v. Nixon, 418 U.S. 683 (1974) ................................................................................ 9

United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, (E.D.N.Y. Dec. 16, 2016) ....................................................................................................................................... 8

United States v. Yu, No. 97-CR-102 (SJ), 1998 WL 57079 (E.D.N.Y. Feb. 5, 1998)................... 9

Statutes

18 U.S.C. § 3500.................................................................................................................. 1, 7, 8

Rules

Federal Rule of Criminal Procedure 16 ................................................................................ *passim*

Federal Rule of Criminal Procedure 33 ......................................................................................... 5

PRELIMINARY STATEMENT

The government respectfully submits this memorandum of law in response to the defendant Joel Forney's *pro se* motion to compel discovery pursuant to <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), <u>Giglio v. United States</u>, 405 U.S. 150 (1972), 18 U.S.C. § 3500, and Federal Rule of Criminal Procedure 16, filed on April 21, 2026.  <u>See</u> ECF No. 193 ("Def. Mem.").  For the reasons set forth below, the defendant's motion should be denied in its entirety.

BACKGROUND[1]

I.      Procedural Background

On April 11, 2024, a grand jury sitting in this district returned an Indictment, charging the defendant with Sex Trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1)-(a)(2), Mann Act Transportation, in violation of Title 18, United States Code, Section 2421(a), and Coercion and Enticement of a Minor, in violation of Title 18, United States Code, Section 2422(b).  On July 15, 2025, a grand jury returned a Superseding Indictment charging the defendant with Sex Trafficking, in violation of Title 18, United States Code, Sections 1591(a)(1)-(a)(2), Mann Act Transportation, in violation of Title 18, United States Code, Section 2421(a), Mann Act Interstate Prostitution, in violation of Title 18, United States Code, Section 2422(a), and Coercion and Enticement of a Minor, in violation of Title 18, United States Code, Section 2422(b). ECF No. 77.  The case proceeded to trial on August 11, 2026.  ECF No. 116.

II.     Relevant Trial Testimony

At trial, two of the victims, Jonnica C. and Shyya H., testified that the defendant used physical abuse to compel them to engage in acts of prostitution for his financial benefit.  Tr. 77-78, 107, 311-12, 315-17.  The defendant testified in his own defense and admitted to being Jonnica C. and Shyya H.'s "pimp."  Tr. 565-66, 573.  However, the defendant categorically denied that he had ever hit a prostitute, explaining that doing so would "bring a decline" to business because women "wouldn't be able to work" if he "le[ft] any bruises."  Tr. 572, 642, 649.  Indeed, the defendant testified he has never hit a woman, except for an incident where he struck the mother of his child.  Tr. 684-85.

---

[1] Because the Court is familiar with the record and evidence, the government details only those facts relevant to the adjudication of the defendant's *pro se* motion.

In response, the government called Jessica F. to rebut the defendant's claim that he had never hit a prostitute. Jessica F. testified that she worked in prostitution from the age of fifteen to twenty-three and knew the defendant to be a "pimp" in New York City. Tr. 762. While Jessica F. never worked for the defendant, he tried to recruit her by telling her he was "a real pimp." Tr. 101-02, 290, 771. Additionally, Jessica F. described an incident where the defendant assaulted her while she was working in prostitution, causing scrapes on her legs, chest, and elbow captured in photographs that were admitted into evidence. Tr. 774-81; GX-804.

Jessica F. also testified that she witnessed the defendant hit Nicole Simpson ("Simpson"), whom she identified through a photograph and described as a "big white girl." Tr. 763-64, 771-72, GX 112. Specifically, Jessica F. testified that she saw the defendant punch Simpson three times while Simpson was engaging in prostitution. Tr. 772.

III.    Deliberations and Verdict

The jury began deliberations on August 5, 2025. Tr. 1018. Approximately two hours later, the jury returned a verdict of guilty on all counts of the Superseding Indictment. ECF No. 135.

IV.    Relevant Post-Trial Litigation

On November 3, 2025, the Court e-mailed the parties indicating that Simpson had sent an affidavit (the "Simpson Affidavit") to chambers, in which she stated that the defendant had never hit her. On November 5, 2025, defense counsel filed a letter indicating they had not seen the Simpson Affidavit but requested that the Court direct the government to provide any notes or reports pertaining to their conversations with Simpson. ECF No. 153. On November 6, 2025, the government filed a letter stating that Simpson declined to be interviewed about the investigation and that no notes or reports were created regarding the government's communication with her. ECF No. 154. Additionally, the government explained that the Simpson Affidavit was not properly

3

before the Court, as it was not filed in connection with any pending motion.  Id.  On November 13, 2026, the government filed a supplemental letter regarding the Simpson Affidavit, clarifying that there was testimony at trial that the defendant assaulted Simpson.  ECF No. 155.  However, while the government admitted a photograph of Simpson into evidence, there was no testimony explicitly linking "the big white girl" or the photograph to Simpson's true name.  Id.  On November 17, 2025, the Court issued an order that the Simpson Affidavit was not properly before the Court and declined to take further action.  Docket Entry, Nov. 17, 2025.

On December 16, 2025, defense counsel filed a letter from the defendant indicating he wanted to proceed *pro se*.  ECF No. 156.  The defendant argued defense counsel had a conflict of interest because he failed to call Simpson as a witness to rebut evidence that the defendant assaulted her.  ECF No. 156-1.  At a hearing and status conference on December 22, 2025, the Court conducted a Faretta inquiry, granted the defendant's motion to proceed *pro se*, relieved defense counsel, and appointed stand-by counsel.  Minute Entry dated December 22, 2025.

On January 6, 2026, the defendant filed a letter requesting an order: (1) "directing the Government, and its agents, and partners in law enforcement, to cease all contacts with [Simpson]" and (2) "directing the Government to show cause why the prosecutor[]s assigned to this case should not be disqualified."  ECF No. 160-1 at 1-2.  In the same letter, the defendant asserted that Simpson had informed law enforcement during the pendency of the investigation that the defendant had never assaulted her, and that the government contacted Simpson on January 6, 2026 to intimidate and dissuade her from providing information to the Court.  Id.  On January 9, 2026, the government reiterated that it did not possess any notes or reports of communications with Simpson and described the extent to which the government had contact with Simpson.  ECF No. 161.  The government also indicated that Simpson declined to participate in the investigation.

4

Id.  Additionally, the government affirmed that no member of the prosecution team had contacted Simpson on January 6, 2026.  Id.  On January 14, 2026, the Court issued an order denying the defendant's motion.  ECF No. 163.

On February 13, 2026, the defendant filed a motion for a new trial pursuant to Fed. R. Crim. Pro. 33 arguing, *inter alia*, that defense counsel provided ineffective assistance and labored under a conflict of interest by failing to call Simpson or recall the defendant to rebut Jessica F.'s testimony.  ECF. No. 172.  To properly respond to the defendant's claims, the government requested a court order directing defense counsel to produce all notes, statements, or other documents created or maintained in connection with their interviews of Simpson.  ECF No. 176. The Court granted the government's request on March 2, 2026, finding the defendant "waived his attorney client privilege by filing his *pro se* letter alleging ineffective assistance of defense counsel, including ineffective assistance for failing to call Ms. Simpson as a defense witness."  Minute Entry dated March 2, 2026.  On March 8, 2026, defense counsel provided their affidavits and notes to the government via e-mail.  The government filed its response to the defendant's motion, attaching defense counsels' affidavits, on March 16, 2026.  ECF No. 186.  As of the date of this filing, the defendant's February 13, 2026 motion is pending.

On April 21, 2026, the defendant filed the instant *pro se* Motion to Compel Discovery.  ECF No. 193.  In this motion, the defendant alleges that "[p]rior to the trial, Defendant provided both the government and his former defense counsel with exculpatory evidence [] that the alleged victim[2] told the FBI pre-arrest and told defense counsel pre-trial that Joel Forney never attacked the alleged victim."  D. Mem. at 1.  According to the defendant, "[t]he government has

---

[2] The defendant does not name Simpson as "the alleged victim" at issue in the instant *pro se* filing.  However, given the context of the motion and the past *pro se* pleadings, the government construes references to "the alleged victim" to be a reference to Simpson.

failed to produce critical discovery to which the defendant is entitled under Rule 16, <u>Brady</u>, <u>Giglio</u>, and the Jencks Act" regarding the victim's alleged pre-trial statements. D. Mem. at 1. Therefore, the defendant seeks production of: (1) "all FBI records, notes, reports, and communications regarding the alleged victim's pre-arrest statements to the FBI, including but not limited to any statements that Joel Forney never attacked the alleged victim"; (2) "<u>Brady</u> material regarding the alleged victim's credibility, including any prior inconsistent statements or motives to lie"; (3) "3500/Jencks material before trial/sentencing, despite Defendant's request for early production to avoid delay"; and (4) "[a]ll records of any promises, inducements, or threats made the alleged victim." D. Mem. at 1-2. The defendant also argues that the government violated his Fourteenth Amendment Due Process rights by presenting testimony that the defendant attacked the victim, even though "the government . . . knew . . . that the alleged victim denied any attack." D. Mem. at 2 (citing <u>Napue v. Illinois</u>, 360 U.S. 264, 260 (1959)).[3]

---

[3] The defendant also represented that he conferred with the government in accordance with Local Rule of Criminal Procedure 16.1, which provides that "[n]o . . . discovery matter may be heard unless counsel for the moving party files in, or simultaneously with, the moving papers an affidavit certifying that counsel has conferred with counsel for the opposing party in an effort in good faith to resolve by agreement the issues raised by the motion without the intervention of the court and has been unable to reach agreement." Local R. Crim. Pro. 16.1; <u>see</u> D. Mem. at 3. Specifically, the defendant "certif[ied] under penalty of perjury that on April 12th 2016, [he] conferred with Assistant United States Attorney Antoinette Rangel regarding the discovery requests" in the motion." D. Mem. at 3. Additionally, the defendant stated that "AUSA Antoinette Rangel agreed and failed to produce" FBI records and Brandy and Jencks material pertaining to the "alleged victim" referenced in the defendant's motion. D. Mem. at 3.

The government did not confer with the defendant on April 12th or otherwise regarding the issues raised in his motion. The only substantive discussion between the government and the defense relating to these issues occurred on April 13, 2026 when standby counsel emailed the government requesting that the defendant be provided with copies of the Simpson Affidavit, <u>Brady</u> and Jencks material, trial exhibits, and jury notes. In response, the government mailed a copy of all Jencks material, trial exhibits, and the jury notes to the defendant on April 22, 2026.

6

For the reasons outlined below, the defendant's motion should be denied in its entirety.

ARGUMENT

I.    Applicable Law & Discussion

A.    The Government Complied with All Disclosure Obligations

The government complied with all discovery obligations under Brady v. Maryland, 373 U.S. 83 (1963), Giglio v. United States, 405 U.S. 150 (1972), 18 U.S.C. § 3500, and Federal Rule of Evidence 16 during the pendency of this case.  As the government has stated in multiple filings, it is not in possession of any reports, notes, information, or materials pertaining to conversations between the government and Simpson.  ECF Nos. 154, 155, & 161.  Pursuant to conferrals with law enforcement, Simpson informed a member of the New York Police Department (NYPD) that she did not wish to participate in the investigation during a phone call in 2023.  ECF No. 161.  No notes, reports, or other materials were generated pursuant to that phone call.  Id.  This is the only known communication between the government and Simpson regarding the case.  Therefore, the government is not in possession of any materials or information discoverable under Brady, Giglio, Jencks, or Rule 16.

The only materials that reference Simpson that are in the government's possession are the reports and corresponding notes summarizing conversations with Jessica F.  The government disclosed all reports, notes, and materials pertaining to Jessica F. on July 28, August 13, and August 14, 2026—all before Jessica F. testified on August 14, 2026.[4]  These materials were not discoverable under Rule 16; rather, they constituted Jencks material because they

---

[4] The materials provided on August 13 and 14, 2026 were notes pertaining to trial preparation meetings on those days, which the government provided immediately after they were generated.

7

summarized the statement of a potential witness.  Fed. R. Crim. Pro. 16(a)(2) (noting Rule 16(a) does not "authorize the discovery or inspection of statements made by prospective government witnesses except as provided in 18 U.S.C. § 3500").  By providing these materials before trial and before Jessica F.'s testimony, the government not only complied with its disclosure obligations, but did so before required to do so.  18 U.S.C. § 3500(b); see also United States v. Coppa, 267 F.3d 132, 145 (2nd Cir. 2001) (noting the Jencks Act requires the government to disclose witness statements only after that witness has testified and district courts are not authorized to order the pre-trial disclosure of witness materials); United States v. Bridges, 61 Fed. App'x 736, 739 (2d Cir. 2003) (summary order noting "the defendant's right to Jencks Act material does not arise until after the witness's testimony") (citing 18 U.S.C. § 3500(b) and Federal Rule of Criminal Procedure 26.2(a)); United States v. Shkreli, No. 15-CR-637 (KAM), 2016 WL 8711065, at *4, (E.D.N.Y. Dec. 16, 2016) (noting that "[u]nder the Jencks Act, no witness statement or report in the possession of the Government shall be the subject of subpoena, discovery, or inspection" until the witness has testified on direct examination at trial).

Nor can the defendant claim any Brady or Giglio violation in connection with the Jessica F. materials. In many of those materials, Jessica F. described observing the defendant assault multiple women, including Simpson—just like she did at trial.  While one report includes a notation that Jessica F. did not observe the defendant hit Simpson, the report was disclosed on July 28, 2026—several weeks before trial.  See Leka v. Portuondo, 257 F.3d 89, 100 (2nd Cir. 2001) (noting disclosure of Brady material before trial "is not mandated") (citing United States ex rel. Lucas v. Regan, 503 F.2d 1, 3 n.1 (2d Cir. 1974) ("Neither Brady nor any other case we know of requires that disclosures under Brady must be made before trial.")).  Therefore, by making a pretrial disclosure, the government provided the materials well in advance of any disclosure

8

obligations, including those governing impeachment. See United States v. Nixon, 418 U.S. 683, 701 (1974) ("Generally, the need for evidence to impeach witnesses is insufficient to require its production in advance of trial."); United States v. Mohamed, 148 F. Supp. 3d 232, 246 (E.D.N.Y. 2015) ("There is no pre-trial right to Giglio material, which specifically concerns impeachment.") (citations omitted); see also RW Prof'l Leasing Servs. Corp., 317 F. Supp. 2d 167, 179 (E.D.N.Y. 2004) (citing Nixon, 418 U.S. at 701 (holding there is no pre-trial discovery right to Giglio materials)); United States v. Yu, No. 97-CR-102 (SJ), 1998 WL 57079, at *5 (E.D.N.Y. Feb. 5, 1998) ("Brady material of an impeachment nature, commonly referred to as Giglio material, is not required to be produced before trial.").

In sum, the government complied with its discovery obligations and is not in possession of any additional reports, notes, or materials pertaining to Simpson. Therefore, the defendant's discovery motion should be denied.

B.     The Government did Not Violate the Defendant's Due Process Rights

The defendant also argues that the government violated his Fourteenth Amendment Due Process rights by presenting testimony that the defendant attacked Simpson, even though "the government . . . knew . . . that the alleged victim denied any attack." D. Mem. at 2 (citing Napue v. Illinois, 360 U.S. 264, 270 (1959)) (holding that the government's failure to correct the testimony of an incarcerated witness that he had received no promise of consideration in return for his testimony when the government had, in fact, promised him consideration violated a defendant's due process rights). This is incorrect. As noted above and in prior filings, Simpson informed member of the New York Police Department (NYPD) that she did not want to participate in the investigation during a phone call in 2023. ECF No. 161. Prior to trial, therefore, the government was not aware of any factual representations made by Simpson regarding the defendant. Id. As a result, Napue simply does not apply here. The Court should reject the defendant's argument.

9

CONCLUSION

For the foregoing reasons, the government respectfully submits that the defendant's motions should be denied entirely.


Dated:  Brooklyn, New York
        April 29, 2026

JOSEPH NOCELLA, JR.
United States Attorney
Eastern District of New York
271 Cadman Plaza East
Brooklyn, New York 11201


By:   /s/_____
      Antoinette N. Rangel
      Lauren A. Bowman
      Assistant United States Attorneys

      A. TYSEN DUVA
      Assistant Attorney General
      950 Pennsylvania Avenue NW
      Washington, DC 20530


By:   /s/_____
      Leah Branch
      Trial Attorney

10