United States District Court
Eastern District of New York

-----------------------------------X

UNITED STATES OF AMERICA,

- against -

JOEL DAVID FORNEY,
also known as "Sirbar,"

Defendant.

-----------------------------------X

**Memorandum & Order**

No. 24-cr-146(KAM)

**Kiyo A. Matsumoto, United States District Judge:**

On August 15, 2025, after a five-day trial, a jury found Joel David Forney ("Defendant" or "Forney") guilty of five counts of a superseding indictment charging him with two counts of sex trafficking in violation of 18 U.S.C. § 1591(a) (Counts One and Four), one count of Mann Act Transportation (Count Two), one count of Mann Act Interstate Prostitution (Count Three), and one count of Mann Act Coercion and Enticement (Count Five). On December 18, 2025, the Court denied Mr. Forney's post-trial motions filed by trial counsel. (ECF No. 159.)

Presently before the Court is Mr. Forney's pro se second motion for a new trial pursuant to Fed. R. Civ. P. ("Rule") 33 based on ineffective assistance of counsel for failure to call Nicole Simpson ("Simpson") as a defense witness or sur-rebuttal

witness; failure to call Mr. Forney as a sur-rebuttal witness; and failure to cross examine Jessica F. (ECF No. 172-1, the "Second Motion" or "Second Mot."); multiple motions filed by Mr. Forney after briefing had closed on Mr. Forney's second round of post-trial motions including a supplemental motion for a new trial based on *Brady/Giglio* violations, (ECF No. 204, the "Brady Motion"), a motion to suppress evidence (ECF No. 202, "Motion to Suppress"), and a motion to obtain full warrants (ECF No. 203, the "Warrant Motion"); and Mr. Forney's motion to compel Rule 16 discovery, Brady/Giglio materials and Rule 3500 Material, (ECF No. 193, the "Mot. to Compel" or "Motion to Compel," together with the Second Motion, Brady motion, Motion to Suppress, and Warrant Motion, the "Motions.")[1] For the reasons stated below, Mr. Forney's Motions are respectfully DENIED.

**BACKGROUND**

The Court incorporates here and assumes familiarity with the facts and procedural history of this case as more fully set forth in *United States v. Forney*, 813 F. Supp. 3d 357 (E.D.N.Y. 2025)

---

[1] As an initial matter, Mr. Forney's Motion to Compel states that "[s]entencing has been postponed pending appeal," (Mot. to Compel at 1), but there is no appeal pending in the Second Circuit. On January 21, 2026, the Court granted Mr. Forney leave to file a second, successive post-trial motion before the district court because Mr. Forney raised ineffective assistance of counsel claims before sentencing. *See United States v. Brown*, 623 F.3d 104, 113 (2d Cir. 2010).

(denying Mr. Forney's first Rule 29 and Rule 33 Motions). The Court briefly summarizes relevant facts and procedural history below.

On June 6, 2025, the Court appointed Murray Singer, Esq. ("Singer") as the eighth counsel for Mr. Forney, and Nicholas Hine, Esq. ("Hine", together with Singer, "Trial Counsel"), as mentee counsel.

At trial, as part of the Government's case in chief, the Government called several witnesses, including alleged victims Jonnica C. and Shyya H., who testified as to Mr. Forney's use of force, threats of force, and coercion to cause them to engage in commercial sex acts, an FBI investigator, and an FBI Special Agent, and admitted over 350 exhibits into evidence. (*See generally* ECF Nos. 138-142, the "Transcript" or "Tr.".) In the defense's case in chief, Mr. Forney testified that he had never hit a prostitute or anyone other than the mother of his child. (Tr. 572, 642, 649, 684.) The Government then called Jessica F. to rebut the defense claims. Jessica F. testified that Mr. Forney assaulted and robbed her on the "Penn Track" where prostitutes often worked in Brooklyn, while she was working in prostitution. (*See* Tr. 774-81.) Jessica F. also testified that she witnessed Mr. Forney assault other women including Ms. Simpson while Ms. Simpson was engaging in prostitution. (Tr. 763-64, 772.) Jessica F. did not name Ms. Simpson, who Jessica F. identified in a photograph, but only

referred to Ms. Simpson as a "big white girl." (Tr. 763-65, 771-72, Government Exhibit 112.) Neither Mr. Forney nor Ms. Simpson were called in sur-rebuttal to Jessica F.'s testimony.

On August 15, 2025, after a five-day trial, a jury found Mr. Forney guilty on all counts. The Court set a briefing schedule for post-trial motions. (8/18/25 Dkt. Order.) On September 16, 2025, Mr. Forney's trial counsel filed his first round of post-trial motions. (ECF Nos. 147, 148, the "First Motion.")

On October 3, 2025, the Court received a letter from Mr. Forney dated September 5, 2025. (ECF No. 151.) The Court ordered defense counsel to advise Mr. Forney that the Court would not consider pro se letters or motions from Defendants who are represented by counsel because "a defendant has a right either to counsel or to proceed pro se, but has no right to 'hybrid' representation." (10/3/25 Dkt. Order (citing *United States v. Rivernider*, 828 F.3d 91, 108 (2d Cir. 2016); *Faretta v. California*, 422 U.S. 806, 834 (1975); *Clark v. Perez*, 510 F.3d 382, 395 (2d Cir. 2008).) On October 7, 2025, the Government opposed Mr. Forney's First Motion. (ECF No. 152.)

On November 3, 2025, the Court received an unsolicited November 3, 2025, post-trial, non-party declaration titled "Declaration of Nicole Marie Simpson" emailed to the Court from an email handle with the name "Kay." (ECF No. 190, the "Declaration";

*see also* 11/6/2025 Dkt. Order.)[2] The Declaration states that Mr. Forney was not the man who assaulted Ms. Simpson on or about August 11, 2020, and that Simpson received a call "on or about August 22, 2023" from "an individual who identified herself as an FBI agent from New York" during which Simpson "assured [the agent] that [Simpson's assailant] was not Mr. Forney." (Declaration ¶¶ 2-4.)

On December 16, 2025, Mr. Singer filed a December 9, 2025 letter from Mr. Forney requesting "an order relieving counsel-of-record, appointing new counsel, and setting aside the jury verdict and entering an order for a new trial, pursuant to Rule 33(a) of the Federal Rules of Criminal Procedure," on the basis of ineffective assistance of counsel and asserting Mr. Forney's right to represent himself. (ECF No. 156-1 at 1-3.)

On December 18, 2025, this Court denied Mr. Forney's First Motion for a new trial and motion for a judgment of acquittal. *United States v. Forney*, 813 F. Supp. 3d 357 (E.D.N.Y. 2025).[3]

On December 22, 2025, the Court granted Mr. Forney's request to relieve Mr. Singer and Mr. Hine as Mr. Forney's counsel and,

---

[2] The Court has no way of ascertaining if the Declaration is from Nicole Marie Simpson. For the purposes of the motions before this Court, the Court assumes, *arguendo*, that the Declaration is from Ms. Simpson.

[3] The Court's December 18, 2025 decision was entered at ECF No. 159.

following a *Faretta* hearing, the Court granted Mr. Forney's request to proceed pro se with Laura Di Chiara, Esq. appointed as stand-by counsel[4] and ordered Mr. Forney to advise the Court by January 23, 2026 of any additional post-trial motions he intended to file prior to sentencing.[5] (12/22/25 Minute Entry.)

On January 16, 2026, Mr. Forney informed the Court that "he will move the Court, pursuant to Rules 29(c) and 33(a) of the Federal Rules of Criminal Procedure, for an order setting aside the jury verdict and entering a judgment o[f] acquittal, and/or an order for a new trial" based "[i]n large part" of "claims of ineffective assistance of trial counsel." (ECF No. 165-1 at 1.) By docket order on January 21, 2026, the Court set a briefing schedule based on the Second Circuit's guidance in *United States v. Brown* that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider

---

[4] On March 9, 2026, the Court relieved Ms. Di Chiara upon Mr. Forney's request and appointed Ezra Spilke, Esq. The Court advised Mr. Forney that "because of the number of appointed counsel or stand-by counsel Mr. Forney has received, Mr. Spilke is Mr. Forney's tenth (10th) appointed counsel or stand-by counsel, Mr. Forney will be unlikely to be appointed another attorney after Mr. Spilke." (3/9/26 Minute Entry.)

[5] Mr. Forney was also served with this Court's December 17, 2025 Memorandum and Order denying Mr. Forney's first round of post-trial motions by mail from Mr. Singer and, in person, at the December 22, 2025 hearing. (*See* ECF No. 167 at 4; 8/12/26 Dkt. Order.)

the claim at that point in the proceeding." 623 F.3d at 113; (*see also* 1/21/26 Dkt. Order.) The Court stated that "the Court's setting of a briefing schedule is not a ruling or determination on the timeliness or procedural propriety of Mr. Forney's successive Rule 29 and/or Rule 33 motion." (1/21/26 Dkt. Order.)

**I. The Second Motion**

On February 13, 2026, Mr. Forney filed his Second Motion for a new trial pursuant to Rule 33 asserting ineffective assistance of counsel. (ECF No. 172-1.) The Second Motion "incorporate[d], by reference, the [ineffective assistance of counsel and jury instruction] arguments" Mr. Forney raised in "his pro se motions dated September 5, 2025 and December 9, 2025." (Second Mot. at 1.) On February 28, 2026, the Government requested a court order for the production of documents from Trial Counsel related to interviews with Ms. Simpson because Mr. Forney had waived attorney-client and work-product privilege through his ineffective assistance of counsel claims in his Second Motion. (ECF No. 176 at 1.) On March 2, 2026, the Court found that Mr. Forney had waived attorney-client and work-product privileges related to communications with Ms. Simpson, granted the Government's request, and ordered Mr. Singer and Mr. Hine to respond to Mr. Forney's ineffective assistance of counsel allegations. (3/2/26 Dkt. Order.) On March 16, 2026, the Government filed its opposition to Mr. Forney's Second Motion and included affidavits from Mr. Singer

and Mr. Hine. (ECF No. 186, the "Opp.".)

Following a series of requests by Mr. Forney for extensions to file, Mr. Forney filed his reply. (ECF No. 200-1, the "Reply" or "Rep.".) Mr. Forney's reply raised new arguments for a new trial based on *Brady/Giglio* violations. After briefing closed, Mr. Forney then submitted an additional supplemental motion for a new trial based on *Brady/Giglio* violations. (ECF No. 204, the "Brady Motion.") On August 17, 2026, the Government submitted its opposition to the Brady Motion. (ECF No. 216.)

On August 9, 2026, the Court ordered the Government to file by August 10, 2026, Mr. Singer's "handwritten notes, emails and text messages with Nicole Simpson made, sent or received prior to trial" that Mr. Singer stated were attached to his affidavit submitted with the Government's March 16, 2026 opposition, (ECF No. 186-1, the "Singer Aff." ¶ 3), but were not attached. (8/9/26 Dkt. Order.) The Court also granted Mr. Forney leave to supplement his Rule 33(a) ineffective assistance of counsel arguments only with regards to these missing attachments by August 17, 2026.

On August 10, 2026 the Government filed Mr. Singer's notes, emails and text messages with Ms. Simpson in two attachments under seal at ECF Nos. 211-1 and 211-2, and unsealed versions at ECF Nos. 212-1 and 212-2,[6] because "[t]he attachments include medical

[6] The unsealed versions included redactions for victim last names,

and other sensitive information about the defendant's victims," (ECF No. 212 at n.1.) On August 11, 2026, the Court granted the Government's request to file the two attachments, ECF Nos. 211-1, and 211-2, under seal from the public docket because the two attachments contain sensitive medical and victim-related information, and the privacy interest that an individual and any victims have with respect to their medical and health information "outweigh[s] any public interest in disclosure whether derived from the First Amendment or the common-law right of access[.]" *United States v. Wey*, 256 F. Supp. 3d 355, 411 (S.D.N.Y. 2017); *see also Offor v. Mercy Medical Center*, 167 F. Supp. 3d 414, 445 (E.D.N.Y. 2016) (collecting cases where courts in this district have routinely sealed documents reflecting sensitive medical and health information); 18 U.S.C. § 3771(a)(8) (affording every victim "[t]he right to be treated with fairness and with respect for the victim's dignity and privacy"). That same day, on August 11, 2026, the Government served Mr. Forney with both the sealed (ECF Nos. 211-1, 211-2) and unsealed with redactions, (ECF Nos. 212-1, 212-2) versions of the two attachments. (*See* ECF No. 214.)

On August 19, 2026, the Court extended Mr. Forney's deadline

---

phone numbers, emails, and other personal identifying information like Mr. Singer's email. (*See generally* ECF No. 212-1, 212-2.)

to August 26, 2026 to file his limited supplement addressing Mr. Singer's notes. Accordingly, on August 26, 2026, Mr. Forney filed a supplement to his Rule 33(a) ineffective assistance of counsel motion. (ECF No. 223, the "Second Mot. Suppl.".)

**II. Mr. Forney's Other Non-Rule 33(a) Motions**

On April 21, 2026, Mr. Forney filed a motion to compel Rule 16 discovery, Brady/Giglio materials and Rule 3500 Material and asserted a Napue violation. (ECF No. 193, the "Motion to Compel" or "Mot. to Compel".) On April 29, 2026, the Government filed its Opposition to Mr. Forney's Motion to Compel. (ECF No. 196, the "Opp. to Mot. to Compel".)

On July 27, 2026, Mr. Forney filed a motion to suppress, alleging that his phone "was seized without a warrant and without any applicable exception" to the warrant requirement. (ECF No. 202, the "Motion to Suppress.") On August 17, 2026, the Government opposed the Motion to Suppress. (ECF No. 216 at 15-23.) That same day, Mr. Forney also filed a motion to "obtain full warrants" and to remove the "Highly Sensitive Documents" designation because "Warrant 21MAG6662 may contain material misstatements" or defects. (ECF No. 203, the "Warrant Motion.") On August 17, 2026, the Government opposed the Warrant Motion as moot, untimely, and without merit. (ECF No. 216 at 23-29.)

## DISCUSSION

### I. The Procedural Propriety and Timeliness of Mr. Forney's Rule 29(c) and Rule 33(a) Motions

#### A. Rule 29(c)

Mr. Forney submits his Second Motion "pursuant to Rules 29(c) and 33(a)." (Second Mot. at 1). However, Mr. Forney's Rule 29(c) motion and arguments are untimely and procedurally improper. Any Rule 29 motion and arguments are untimely because they were filed more than 14 days after the jury's verdict, and Mr. Forney provides no basis for why such untimeliness is due to excusable neglect. *See* Rule 29(c)(1); Rule 45(b)(1)(B). Rule 29(c) is, moreover, not the proper procedural vehicle for Mr. Forney's ineffective assistance of counsel claims or arguments regarding jury instructions because insufficiency of the evidence is the only basis for a motion for acquittal under Rule 29(c). *See United States v. Brown*, 623 F.3d 104, 113 n.5 (2d Cir. 2010) ("[W]e hold that the proper procedural avenue for defendants who wish to raise ineffective assistance claims after conviction but prior to sentencing is a motion for a new trial pursuant to Federal Rule of Criminal Procedure 33."); *United States v. Watson*, No. 23-CR-00082 (EK), 2025 WL 510814, at *4 (E.D.N.Y. Feb. 16, 2025) (collecting cases) ("The only permissible basis for a Rule 29 motion is insufficiency of the evidence . . . [s]o, Rule 29 is an inappropriate vehicle for challenging jury instructions").

Even if the Court were to consider Mr. Forney's arguments in

his Reply regarding his "rebuttal to" Jonnica C., Shyya H., and Jessica F.'s testimony, (Rep. at 7-10),[7] which this Court broadly construes as Rule 29(c) arguments because Mr. Forney is pro se, there would be no basis to grant Rule 29 relief. As outlined previously in this Court's December 18, 2025 Memorandum and Order denying Mr. Forney's initial Rule 29 motion, a court should "avoid usurping the role of the jury," and cannot "substitute its own determination of the weight of the evidence and the reasonable inferences to be drawn for that of the jury." *United States v. Guadagna*, 183 F.3d 122, 129 (2d Cir. 1999) (alterations adopted) (quoting *United States v. Mariani*, 725 F.2d 862, 865 (2d Cir. 1984)). A court must consider the totality of the evidence "in the light most favorable to the government, crediting every inference that could have been drawn in the government's favor, and deferring to the jury's assessment of witness credibility and its assessment of the weight of the evidence." *United States v. White*, 7 F.4th 90, 98 (2d Cir. 2021) (quoting *United States v. Aquart*, 912 F.3d 1, 17 (2d Cir. 2018)); *see United States v. Archer*, 977 F.3d 181, 188-89 (2d Cir. 2020) (A court must "defer to the jury's resolution of conflicting evidence[.]"(quoting

[7] The Court "'ordinarily will not consider issues raised for the first time in a reply brief.'" *Parrilla v. United States*, No. 13-CR-360 (AJN), 2021 WL 4066021, at *23 (S.D.N.Y. Sept. 7, 2021) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)).

*United States v. McCourty*, 562 F.3d 458, 475-76 (2d Cir. 2009))).

Ultimately, a court may enter a judgment of acquittal "only if the evidence that the defendant committed the crime alleged is 'nonexistent or so meager that no reasonable jury could find guilt beyond a reasonable doubt.'" *Guadagna*, 183 F.3d at 130 (quoting *United States v. White*, 673 F.2d 299, 301 (10th Cir. 1982)). Thus, a defendant challenging his conviction on sufficiency grounds "faces a heavy burden, as the standard of review is exceedingly deferential to the jury's apparent determinations." *United States v. Davis*, No. 21-1486, 2023 WL 4582002, at *1 (2d Cir. July 18, 2023) (summary order) (alteration adopted) (quoting *United States v. Flores*, 945 F.3d 687, 710 (2d Cir. 2019)).

Even if the Court were to consider Mr. Forney's Rule 29 arguments in his reply, Mr. Forney's Rule 29 arguments would fail because there was ample evidence before the jury to convict him. *See United States v. Forney*, 813 F. Supp. 3d 357, 369 (E.D.N.Y. 2025) (holding that there was sufficient evidence on the record with regards to Mr. Forney's jury conviction); (Opp. at 8-13.) Accordingly, the Court respectfully denies Mr. Forney's request for relief under Rule 29(c).

**B. Rule 33(a) Timeliness**

A Rule 33 motion for a new trial must be filed within fourteen days after a guilty verdict. Rule 33(b)(2). The time limit may be extended only "if the party failed to act because of excusable

neglect." Rule 45(b)(1)(B). The Second Circuit has advised that "when a claim of ineffective assistance of counsel is first raised in the district court prior to the judgment of conviction, the district court may, and at times should, consider the claim at that point in the proceeding." *United States v. Brown*, 623 F.3d 104, 113 (2d Cir. 2010).

In his Second Motion, Mr. Forney does not provide a basis for why the Rule 33(a) arguments in his Second Motion should be considered timely. In Mr. Forney's December 16, 2025 pro se filing in which he was still represented by Trial Counsel, Mr. Forney argued that his ineffective assistance of counsel Rule 33(a) motion was timely because there was "excusable neglect" when his second Rule 33(a) motion "is based on counsel's ineffectiveness[;] . . . Defendant remained represented by the same ineffective counsel during Rule 33's 14-day filing period[;]" Trial Counsel "could not be expected to raise his own ineffectiveness during the trial in a motion under Rule 33(a)[;] and Defendant discovered the basis for the ineffective assistance of counsel claim after counsel had already filed" the First Motion. (ECF No. 156-1 at 2.)

Because Trial Counsel was relieved as defense counsel on December 22, 2025, and Mr. Forney elected to proceed pro se and informed the Court on January 11, 2026 of his intent to file a second successive Rule 33 motion based on ineffective assistance of counsel, the Court considers Mr. Forney's Rule 33(a) ineffective

assistance of counsel claims in the first instance before sentencing. *See Brown*, 623 F.3d at 113.

Because Mr. Forney has failed to present any facts or raise any argument as to why any of his other Rule 33(c) post-trial arguments regarding jury instructions, (*see* ECF No. 151), *Brady/Giglio* violations (*see generally* Rep. at 3; Brady Motion), and alleged Government misconduct regarding the filings at ECF Nos. 211-1, and 211-2 (*see* Second Mot. Supp. at 2,4,5) are timely due to "excusable neglect," the Court finds that they are untimely and respectfully denies such motions. Even if the Court were to find that such motions were timely due to "excusable neglect" and consider such arguments on the merits, as discussed below in Sections II.B, II.C.1, and II.C.2 respectively, the Court finds no basis to grant a motion for new trial on any of Mr. Forney's non-ineffective assistance of counsel claims.

**II. Mr. Forney's Rule 33(a) Motions for New Trial**

Rule 33(a) states that "[u]pon the defendant's motion, the court may vacate any judgment and grant a new trial if the interest of justice so requires." "The defendant bears the burden of proving that he is entitled to a new trial under Rule 33, and before ordering a new trial pursuant to Rule 33, a district court must find that there is 'a real concern that an innocent person may have been convicted.'" *United States v. McCourty*, 562 F.3d 458, 475 (2d Cir. 2009) (quoting *United States v. Ferguson*, 246 F.3d

129, 134 (2d Cir. 2001)).

"In determining whether to grant a Rule 33 motion, the ultimate test is whether letting a guilty verdict stand would be a manifest injustice." *United States v. Walker*, 974 F.3d 193, 208 (2d Cir. 2020) (alteration adopted) (quoting *United States v. Canova*, 412 F.3d 331, 349 (2d Cir. 2005)); *see also United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 159 (2d Cir. 2008) ("Generally, a motion for a new trial 'should not be granted unless the trial court is convinced that the jury has reached a seriously erroneous result or that the verdict is a miscarriage of justice.'" (quoting *Smith v. Carpenter*, 316 F.3d 178, 183 (2d Cir. 2003))). "[C]ourts must . . . exercise Rule 33 authority 'sparingly' and in 'the most extraordinary circumstances.'" *United States v. Coté*, 544 F.3d 88, 101 (2d Cir. 2008) (quoting *United States v. Sanchez*, 969 F.2d 1409, 1414 (2d Cir. 1992)). The Court respectfully denies Mr. Forney's motions for a new trial for the reasons set forth below.

### A. Ineffective Assistance of Counsel

To establish ineffective assistance of counsel, Mr. Forney must show that Trial Counsel's (i) "representation fell below an objective standard of reasonableness" and (ii) that such errors prejudiced the defendant such that "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*

*v. Washington*, 466 U.S. 668, 688, 694 (1984); *see also United States v. O'Neil*, 118 F.3d 65, 72 (2d Cir. 1997) ("We will vacate [defendant]'s conviction on Sixth Amendment grounds only if he can show ineffective assistance of counsel within the meaning of *Strickland*.")

Mr. Forney moves for a new trial based on arguments that he was provided ineffective assistance of counsel because Trial Counsel (i) failed to call Ms. Simpson as a defense or rebuttal witness; (ii) failed to call Mr. Forney as a rebuttal witness; and (iii) failed to cross-examine Jessica F. on her false testimony. (Second Mot. at 3.) Mr. Forney also asserts a new basis for ineffective assistance of counsel in his Second Motion Supp. regarding Trial Counsel's failure to cross-examine Jonnica C. on her testimony that Mr. Forney showed her a photo of a dismembered body. (Second Mot. Supp. at 5.) Mr. Forney lastly argues that he was provided with ineffective assistance based on Mr. Singer's actual conflict of interest. (Second Mot. at 4.)

**1. Objective Reasonableness**

Under *Strickland*'s "objective reasonableness" performance prong, "'counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment.'" *United States v. Belfiore*, 473 F. Supp. 3d 72, 89 (E.D.N.Y. 2020), *aff'd*, No. 22-20, 2024 WL 2075128 (2d Cir. May 9, 2024) (quoting *Greiner v. Wells*, 417 F.3d

305, 319 (2d Cir. 2005); *Strickland*, 466 U.S. at 690). Courts apply a "heavy measure of deference to counsel's judgments" and "will not normally fault counsel for foregoing a potentially fruitful course of conduct if that choice also entails a significant potential downside." *Griener*, 417 F.3d at 319 (citation modified).

"Longstanding precedent holds that a decision not to call a particular witness or witnesses does not constitute ineffective assistance of counsel." *Rosero v. Lynch*, 605 F. App'x 61, 62 (2d Cir. 2015) (summary order) (citing *United States v. Schmidt*, 105 F.3d 82, 90 (2d Cir.1997) ("whether to call specific witnesses – even ones that might offer exculpatory evidence – is ordinarily not viewed as a lapse in professional representation")). Generally, trial counsel's "decisions regarding the calling of witnesses and the extent to which witnesses are to be cross-examined should not be second-guessed and do not, as a general rule, provide a basis for an ineffective assistance claim." *Walters v. United States*, No. 15-CR-644 (AJN), 2022 WL 890906, at *3 (S.D.N.Y. Mar. 25, 2022) (quoting *Ogundipe v. United States*, No. CV-97-2828, 1997 WL 470371, at *1 (E.D.N.Y. July 2, 1997)).

**a. Failure to Call Ms. Simpson**

As an initial matter, Mr. Singer engaged in a thorough investigation of whether Ms. Simpson had useful information, including speaking with Ms. Simpson over the phone, traveling to

Miami Florida on July 14, 2025 to meet with, and receive a cellphone and tablet from Ms. Simpson that she described as relevant to Mr. Forney's defense, and communicating with Ms. Simpson by electronic means. (Singer Aff. ¶¶ 4,5.) Because Trial Counsel made the "strategic choices" to not call Ms. Simpson as a defense witness or sur-rebuttal witness after a "thorough investigation," these choices "are virtually unchallengeable." *Strickland*, 466 U.S. at 690-91.

Trial Counsel's strategic decision not to call Ms. Simpson as a defense witness was also objectively reasonable because the Government had not identified Ms. Simpson as a victim, nor did the Government's case charge Mr. Forney with any criminal conduct towards Ms. Simpson. (Singer Aff. ¶ 9; *see also* ECF No. 104, the "Indictment.") The Government's case in chief did not include a single reference to Ms. Simpson. Ms. Simpson was mentioned by Jessica F., who was called as a rebuttal witness by the Government, and was not identified by name, but was described by Jessica F. as "the big white girl" and identified as such in a photograph during Jessica F.'s rebuttal testimony after Mr. Forney testified that he never hit a woman, other than the mother of his child. (Tr. 684; 763-65, 771-72.) Jessica F. testified on rebuttal that she witnessed Mr. Forney hit "the big white girl" when they were working as prostitutes on the Penn Track. (Tr. 763-65, 771-72.) Thus, although Mr. Forney claims that Ms. Simpson would have

testified that Mr. Forney never struck her, Trial Counsel made a strategic decision not to call Ms. Simpson as a defense witness because the government's case did not include any allegation that Mr. Forney had been violent towards Ms. Simpson, and Ms. Simpson was not identified in the Government's case as a victim, so Trial Counsel reasonably did not consider Ms. Simpson a source of relevant or useful testimony. (*See* Singer Aff. ¶ 9; Hine Aff. ¶ 6.) Although Mr. Forney submitted the Simpson Declaration which purportedly offers support for Mr. Forney's argument that Ms. Simpson would have testified *in rebuttal* to Jessica F. that Ms. Simpson was not assaulted by Mr. Forney, Mr. Forney fails to carry his burden to explain what relevant testimony Ms. Simpson would have provided in the defense's case in chief.[8]

Trial Counsel also reasonably chose not to call Ms. Simpson as a sur-rebuttal witness because Trial Counsel's view was that any testimony from Ms. Simpson would shift the focus away from what Trial Counsel believed was the winning strategy—discrediting

---

[8] In his Second Motion Supp., Mr. Forney argues that "because of emails provided by Nicole Simpson . . . Mr. Singer . . . was privy to conversations with dates and times with Jonnica C.," so "[i]f Mr. Singer would have investigated the dates and times of the emails provided by Ms. Simpson against the government theories [Mr. Singer] would have c[o]me to the conclusion that its impossible to be at two places at the same time" for "[a]n effective defense." (Second Motion Supp. at 3.) But Mr. Forney's argument is conclusory and fails to identify any testimony Ms. Simpson could have provided that did not rely on inadmissible hearsay.

the testimony of the victim witnesses who testified at trial to a losing one—drawing attention to and potentially eliciting harmful information regarding Mr. Forney's arrest for the assault on Jessica F. (*See* Singer Aff. ¶¶ 8, 10, 11; Hine Aff. ¶ 6.) Trial Counsel reasonably felt that they had undermined and discredited the testimony of Jonnica C. and Shyya H. during cross-examination, elected to rely on Mr. Forney's testimony on direct, which they viewed as solid, and did not want to shift the focus onto claims of assault from any testimony from Ms. Simpson. (*See id.*) "[I]n light of its 'significant potential downside,' — that it would have opened the door to a prosecution line of inquiry harmful to the defense," it was not unreasonable for trial counsel to choose not to call Ms. Simpson. *Griener*, 417 F.3d at 324 (quoting *Sacco*, 214 F.3d at 275). Because calling Ms. Simpson as a sur-rebuttal witness had "significant potential downside," the Court will not fault Trial Counsel's strategic trial decisions and find Trial Counsel's decision to forego calling Ms. Simpson in sur-rebuttal to be objectively reasonable. *See Griener*, 417 F.3d at 324 (citation modified).

**b. Failure to Call Mr. Forney as Sur-Rebuttal Witness**

Trial Counsel's strategic decision not to re-call Mr. Forney as a sur-rebuttal witness was also an objectively reasonable and strategic decision. Recalling Mr. Forney to rebut Jessica F.'s

testimony that she had been hit by Mr. Forney and that she had seen Mr. Forney hit Ms. Simpson (*see* Tr. 763-64), would also shift focus back to Mr. Forney's assault on individuals that were not the three victims Mr. Forney was charged with harming in the Indictment. (Singer Aff. ¶ 11.) Trial Counsel viewed Mr. Forney's direct testimony as strong and did not want the focus of the trial to end on a back and forth on whether Mr. Forney had assaulted people other than the victims listed in the Government's Indictment. (Singer Aff. ¶ 11.) Because Trial Counsel also knew that Mr. Forney had been arrested and prosecuted regarding Jessica F.'s claims and that Mr. Forney had entered a guilty plea to petit larceny, Trial Counsel did not want this information to be revealed to the jury. (*See id.*) Had Mr. Forney retaken the stand in sur-rebuttal to Jessica F. to testify that he did not assault Ms. Simpson, there was a risk that his arrest arising from Jessica F.'s accusations would come out. Because calling Mr. Forney as a sur-rebuttal witness also had "significant potential downside," the Court will not fault trial counsel's strategic trial decisions and find Trial Counsel's decision to not call Mr. Forney as a sur-rebuttal witness to be objectively reasonable. *See Griener*, 417 F.3d at 324 (citation modified).

**c. Failure to Cross Examine Jessica F.**

Mr. Forney also argues that Trial Counsel's failure to cross-examine Jessica F. regarding her testimony that Mr. Forney

assaulted her and that she witnessed Mr. Forney hit Ms. Simpson was ineffective assistance of counsel. Jessica F. testified that she had seen Mr. Forney hit "Foxy," and that she had seen Foxy with injuries, including "busted lips" and "black eyes." (Tr. 763, 774.) Jessica F. also testified that she worked as a prostitute on the Penn Track and that Mr. Forney punched and kicked her. (Tr. 763, 774-77.) Jessica F. additionally testified that she saw Mr. Forney hit "[a] big white girl" whose name Jessica F. did not know. (Tr. 764.) Trial Counsel's decision not to cross-examine Jessica F. because Trial Counsel made the strategic decision not to re-focus on claims of assault on persons not listed in the Government's indictment is within the range of reasonableness. (*See* Singer Aff. ¶ 8; Hine Aff. ¶ 6); *see also* *Lee v. United States*, No. 07-CR-0003 (LAP), 2022 WL 814736, at *6 (S.D.N.Y. Mar. 17, 2022) (holding no ineffective assistance of counsel when trial counsel's decision not to cross-examine a detective and pursue a lead "f[e]ll within the wide range of reasonableness" (citation modified)). Trial Counsel has proffered "reasonable justification[s]" for Trial Counsel's "decision not to pursue a defense," to the assault on Ms. Simpson that Mr. Forney was not even charged with in the instant case. *DeLuca v. Lord*, 77 F.3d 578, 588 n. 3 (2d Cir. 1996). Accordingly, Trial Counsel's decision not to cross-examine Jessica F. was objectively reasonable.

**d. Cross-Examination of Jonnica C.**

Broadly construing Mr. Forney's Second Motion Supp., Mr. Forney also appears to assert ineffective assistance of counsel claims regarding Mr. Singer's failure to cross examine Jonnica C. on her testimony that Mr. Forney showed her a picture of dismembered body while stating "this is what happens if you don't obey your pimp." (Tr. 99; *see also* Second Motion Supp. at 5.) Mr. Forney argues that "Ms. Simpson had informed Mr. Singer" of a *New York Post* "press release regarding Somorie Moses's conviction for the murder and dismemberment of Leondra Foster," and this "could have been used to impeach the government's witnesses and support the Defendant's testimony that the photograph he showed was of his friend, not a threat." (*See* Second Mot. Supp. at 5; ECF No. 212-2 at 26.) But "[c]ounsel's decisions as to . . . the scope of cross-examination, are inherently 'strategic in nature and generally will not support an ineffective assistance of counsel claim.'" *Davis v. United States*, No. 06 CR. 911 (AKH), 2024 WL 2944158, at *3 (S.D.N.Y. June 10, 2024), *appeal dismissed*, No. 24-1795, 2025 WL 1873876 (2d Cir. June 11, 2025) (citation modified) (quoting *Dunham v. Travis*, 313 F.3d 724, 732 (2d Cir. 2002)).

Mr. Singer also spent extensive time cross-examining Jonnica C., including eliciting from Jonnica C. that she had multiple calls with family members, and even had a code distress word with her brother, which she did not use while working with Mr. Forney. (*See*

*e.g.*, Tr. 197-98, 207-08.) Because "courts generally should not second-guess how a cross-examination was conducted 'unless counsel failed even to put on a defense, or to perform other basic elements of trial advocacy,'" the Court finds Trial Counsel's strategic decision not to specifically use a hearsay *New York Post* article to cross-examine Jonnica C. to be objectively reasonable. *Golding v. United States*, No. 05CR538-JSR, 2014 WL 2959296, at *8 (S.D.N.Y. July 2, 2014), *report and recommendation adopted*, No. 05-CR-538 JSR, 2014 WL 4977481 (S.D.N.Y. Sept. 29, 2014) (quoting *Garcia v. Kuhlmann*, 897 F. Supp. 728, 730 (S.D.N.Y.1995)).

Lastly, Trial Counsel's performance at trial was objectively reasonable because Trial Counsel forcefully cross-examined Government witnesses in the Government's case in chief and provided zealous representation to Mr. Forney at trial and in his first post-trial motions. *See United States v. Luciano*, 158 F.3d 655, 660 (2d Cir. 1998) (affirming district court holding of effective assistance of counsel because "[defendant]'s counsel had provided zealous representation at trial and had challenged other government witnesses with great rigor").

### 2. Prejudice

Even assuming, *arguendo*, that Trial Counsel's performance was somehow deficient under *Strickland*'s first prong, which it was not, Mr. Forney has not demonstrated how he was prejudiced by Trial Counsel's strategic decisions. Under *Strickland*'s prejudice

prong, "[i]t is not enough for the defendant to show that the errors had some conceivable effect on the outcome of the proceeding" because "[v]irtually every act or omission of counsel would meet that test . . . and not every error that conceivably could have influenced the outcome undermines the reliability of the result of the proceeding." *Strickland*, 466 U.S. at 693.

Mr. Forney's failure to "explain what testimony [Ms. Simpson] would have offered at trial" in the defense case in chief, and "why that testimony would have led to a different outcome" fails to establish how Mr. Forney was prejudiced by Trial Counsel's failure to call Ms. Simpson as a defense witness. *Jackson v. United States*, No. 02 CR. 756 (DLC), 2016 WL 6938527, at *7 (S.D.N.Y. Nov. 28, 2016) (citation modified) (quoting *Carr v. Senkowski*, 2007 WL 3124624, at *21 (W.D.N.Y. Oct. 23, 2007) ("[A] petitioner does not show that he was prejudiced by trial counsel's alleged deficient performance merely by asserting that certain witnesses *might* have supplied relevant testimony; rather, he must state exactly what testimony they would have supplied and how such testimony would have changed the result.") (emphasis in original) (collecting cases)); *see also Hodges v. Bezio*, No. 09-CV-3402, 2012 WL 607659, at *10 (E.D.N.Y. Feb. 24, 2012) ("[C]omplaints of uncalled witnesses are not favored in [ineffective assistance of counsel claims] because the presentation of testimonial evidence is a matter of trial strategy and because allegations of what a

witness would have testified [to] are largely speculative.").

Furthermore, Mr. Forney has not shown that he was prejudiced by Trial Counsel's decision not to call Ms. Simpson or Mr. Forney in sur-rebuttal, cross-examine Jessica F., or cross-examine Jonnica C. on a hearsay *New York Post* article. Mr. Forney argues that he was prejudiced by Trial Counsel's decisions because Ms. "Simpson's testimony would have directly rebutted Jessica F., the government's only rebuttal witness" and "the entire government narrative of a 'pattern of violence' would have been seriously undermined" such that there was a "reasonable probability that the outcome would have been different." (Rep. at 6.)

Mr. Forney ignores that outside Jessica F.'s short testimony that she saw Mr. Forney hit Ms. Simpson, there was extensive testimony regarding multiple instances in which Mr. Forney was violent with Jessica F. and others. Jessica F.'s rebuttal testimony to Mr. Forney's testimony that he had not hit any woman, other than the mother of his child, involved testimony regarding assaults on two other women other than Ms. Simpson. Jessica F. testified extensively about an incident where Mr. Forney assaulted her and "Foxy." (Tr. 774-81.) Even assuming Ms. Simpson's or Mr. Forney's sur-rebuttal testimony would have affected Jessica F.'s credibility, Shyya H. corroborated Jessica F.'s testimony and testified that she saw Mr. Forney beat up "Foxy." (Tr. 312-14.) Moreover, Shyya H. also testified that Mr. Forney used force

against her “three different times” including “smack[ing]” her “[a]cross [her] face[,]” and beating her two other times. (Tr. 311-12, 315-17.)

Significantly, the sex trafficking and Mann Act Counts with which Mr. Forney was charged do not require that Mr. Forney use physical force against his victims. *See United States v. Forney*, 813 F. Supp. 3d 357, 363, 367 (E.D.N.Y. 2025) (discussing elements of 18 U.S.C. 1591(a) including that “threats of force . . . and coercion” suffice and discussing elements of 18 U.S.C. § 2422(a) including that knowing persuasion, inducement, enticement or coercion suffice). Thus, even assuming Ms. Simpson or Mr. Forney’s sur-rebuttal or Mr. Singer’s cross-examination of Jessica F. would have affected Jessica F.’s credibility regarding Mr. Forney’s physical violence, the Government presented ample other evidence of Mr. Forney’s coercive conduct to support the jury’s conviction such that even assuming Trial Counsel’s decisions were objectively unreasonable, Mr. Forney has not demonstrated that he was prejudiced by Trial Counsel’s strategic decisions.

“[T]he stronger the prosecution's case, the less likely it is that the defendant was prejudiced by his attorney's conduct,” such that “even serious errors by counsel do not warrant granting post-conviction relief where, as here, the conviction is supported by overwhelming evidence of guilt.” *United States v. Robinson*, No. 16-CR-545 (SJF)(AYS), 2021 WL 62076, at *24 (E.D.N.Y. Jan. 6,

2021); *see also Garner v. Lee*, 908 F.3d 845, 862 (2d Cir. 2018) ("A verdict or conclusion with ample record support is less likely to have been affected by the errors of counsel than a verdict or conclusion only weakly supported by the record." (citation modified)). As already extensively outlined in this Court's December 18, 2025 memorandum and order on Mr. Forney's first round of post-trial motions, which the Court incorporates here, there was "abundant" and "ample" evidence supporting Mr. Forney's jury conviction. *Forney*, 813 F. Supp. 3d at 366 (outlining the extensive evidence from Jonnica C. and Shyya H.'s testimony and Government exhibits presented in the Government's case in chief.) Because the "evidence of [Mr. Forney's] guilt was overwhelming," and Jessica F.'s testimony did not touch on or undermine such evidence,[9] there is no "reasonable probability" that the trial outcome would have been different had Trial Counsel called Ms. Simpson or Mr. Forney in sur-rebuttal, cross-examined Jessica F., or cross-examined Jonnica C. regarding a hearsay *New York Post* article. *See Rodriguez v. New York*, No. 16-CV-5615 (JFB), 2017 WL 1655217, at *11 (E.D.N.Y. May 2, 2017) (collecting cases) ("The

[9] Jessica F.'s testimony was limited to rebutting Mr. Forney's testimony and did not discredit or affect the overwhelming evidence before the jury from the testimonies of Jonnica C., Shyya H., an FBI investigator, and FBI Special Agent, and the over 350 exhibits admitted into evidence. (*See* Opp. at 2-8.)

Second Circuit has held that a [defendant] is not prejudiced by an attorney's deficient performance where the evidence of the petitioner's guilt is overwhelming.”).

Accordingly, even assuming Trial Counsel’s performance was not objectively reasonable, Mr. Forney was not prejudiced by the deficiencies he alleges. The Court thus respectfully denies Mr. Forney’s motion for a new trial based on ineffective assistance of counsel.[10]

### 3. There Was No Attorney Conflict Giving Rise to Ineffective Assistance of Counsel

Mr. Forney also argues that Trial Counsel labored under an “actual conflict” because “[c]alling Ms. Simpson as a defense witness would have revealed a basis to disqualify counsel based on the witness-advocate rule” which “would have deprived trial counsel of substantial and meaningful income.” (Second Mot. at 4.)

#### a. “Actual Conflict” Ineffective Assistance of Counsel Legal Standard

“[W]hen the claim of ineffective assistance of counsel is based on an asserted conflict of interest, a less exacting standard applies” where “prejudice may be presumed.” *United States v.*

[10] For the same reasons as those on the ineffective assistance of counsel prejudice prong, even assuming that Mr. Forney received ineffective assistance of counsel, no manifest injustice would result from allowing the guilty verdict to stand. *See United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (citation modified).

*Moree*, 220 F.3d 65, 69 (2d Cir. 2000). To be "entitled to a presumption of prejudice," a defendant must show (1) the existence of an actual conflict of interest; (2) an "actual lapse in representation"; and (3) that the actual lapse in representation was caused by the actual conflict. *Id.* at 69 (citation modified).

For an "actual conflict" to exist, counsel's interests must diverge with the defendant's interests such that "the incentives for lawyer and client were '*inherently* in conflict,' or misaligned, due to an 'attorney's other loyalties.'" *United States v. Hild*, 644 F. Supp. 3d 7, 35 (S.D.N.Y. 2022) *aff'd*, 147 F.4th 103 (2d Cir. 2025) (emphasis in original) (quoting *United States v. Schwarz*, 283 F.3d 76, 90–91 (2d Cir. 2002)). "The quintessential example of an actual conflict" is when "an attorney engaged in the same criminal conduct as the defendant he is representing." *Id.* (collecting cases). "The Second Circuit has clarified," however, that "typical ineffective assistance of counsel claims by a client do not rise to the level of an actual conflict." *Id.* (collecting cases).

Because *Strickland* prejudice may be presumed, "courts have noted the incentive for defendants to characterize ordinary ineffective assistance of counsel claims as conflict of interest claims." *Moree*, 220 F.3d at 69–70; *see also Hild*, 644 F. Supp. 3d at 38 (observing that "expansive application of this [less exacting] standard would swallow the *Strickland* rule altogether").

**b. Analysis**

First, the witness-advocate rule does not apply here. The witness-advocate rule subjects an attorney to potential disqualification if the attorney can act as an "unsworn witness." *United States v. Locascio*, 6 F.3d 924, 933 (2d Cir. 1993). Courts apply the witness advocate rule when attorneys have "first-hand knowledge of the events presented at trial," *id.*, because such attorneys "have become enmeshed in their clients' alleged criminal acts." *United States v. Finkelstein*, No. 21 CR. 217 (PGG), 2021 WL 2555832, at *4 (S.D.N.Y. June 22, 2021) (collecting cases). For example, in *Locascio*, the Second Circuit upheld the disqualification of a defendant's attorney because the attorney "had allegedly entangled himself to an extraordinary degree in the activities of the Gambino Crime Family," "wa[s] recorded on government tapes when discussions of allegedly illegal activity took place," and "[wa]s allegedly involved in the tax fraud count against Gotti". *See* 6 F.3d at 934. No such circumstances exist here. Mr. Singer was not a fact witness to any of the allegations brought by the Government against Mr. Forney or even to Ms. Simpson's assault.

Second, even if Ms. Simpson were called to testify, it would not "have revealed a basis to disqualify [Mr. Singer] based on the witness-advocate rule." (*See* Second Mot. at 4.) If she were called, Ms. Simpson would be the best fact witness regarding

whether she was assaulted by Mr. Forney and, based on Mr. Forney's allegations and Ms. Simpson's purported statements, Ms. Simpson would testify that Mr. Forney did not assault her. (*See id.* at 3.) There would be no basis to call Mr. Singer. Not only was Mr. Singer not a fact witness to Ms. Simpson's assault, so there would be no reason to call him to testify, but Mr. Singer would also be unable to testify to his communications with Ms. Simpson because such communications are inadmissible hearsay statements. Fed. R. Evid. 801(c).[11]

Lastly, defense counsel routinely engage in pretrial witness interviews to assess if a witness should be called at trial. This does not create an "actual conflict" between defense counsel and defendants when defense counsel are engaging in such

---

[11] The Government is correct that the only way Mr. Singer's testimony regarding his communications with Ms. Simpson would be admissible non-hearsay would be if Ms. Simpson was called and testified that Mr. Forney *did* assault her. (*See* Opp. at 26 n.9.) If Ms. Simpson testified that Mr. Forney *did* assault her, Mr. Singer's statements that Ms. Simpson told him previously that Mr. Forney did not assault her may be admissible as extrinsic evidence of Ms. Simpson's prior inconsistent statement under Fed. R. Evid. 613(b). But the basis for Mr. Forney's Second Motion is that Ms. Simpson would testify that Mr. Forney did not assault her and Mr. Singer's failure to call Ms. Simpson as a witness. There is no indication that Mr. Singer believed that if he called Ms. Simpson, Ms. Simpson would testify contrary to what Mr. Forney asserts she would have said, and contrary to what Ms. Simpson previously told Mr. Singer. (*See* Singer Aff. ¶ 5.) Thus, there is no "actual conflict" when there is no basis to believe Mr. Singer would or could be called to testify at Mr. Forney's trial if Mr. Singer called Ms. Simpson to the stand.

communications for the purposes of representing their clients. In other words, Trial Counsel's and Mr. Forney's interests were aligned, not mis-aligned. *See Hild*, 644 F. Supp. 3d at 35. Mr. Forney's position is also impermissibly expansive. Under Mr. Forney's interpretation, every defense attorney who conducts pre-trial witness interviews and communicates with potential witnesses to determine trial strategy, including who to call as trial witnesses, would be in "actual conflict" with the defendant represented by defense counsel. Accordingly, Mr. Forney was not provided ineffective assistance of counsel on the basis of an actual conflict.

### B. The Court's Jury Instructions Are Not a Basis for a New Trial

In the Second Motion, Mr. Forney also "incorporates, by reference, the arguments" he raised in "his pro se motions dated September 5, 2025 and December 9, 2025." (Second Mot. at 1.) Both letters were filed when Mr. Forney was still represented, and as the Court had advised Mr. Forney multiple times, based on Second Circuit law, the Court would not accept Mr. Forney's filings and arguments while Mr. Forney was still represented. (*See e.g.*, 10/3/25 Dkt. Order.) Although both letters were filed when Mr. Forney was still represented, the Court assumes, *arguendo*, that the arguments are now properly before the Court and addresses them below.

As an initial matter, the arguments set forth in Mr. Forney's December 9, 2025 letter repeat Mr. Forney's ineffective assistance of counsel claims based on trial counsel's failure to call Ms. Simpson as set forth in his Second Motion and are denied for the same reasons as above. (*See* ECF No. 156-1, Section II.A.)

In his September 5, 2025 letter, Mr. Forney argues that a new trial is warranted based on two erroneous jury instructions: (i) the Court's jury instructions on Count One and Count Four, which charged Mr. Forney with sex trafficking in violation of 18 U.S.C. § 1591(a)(1) and (a)(2), and erroneously "conflated the two offenses into one as if they were separate means of committing a single offense"; and (ii) the Court's jury instructions on the interstate commerce element. (ECF No. 151 at 2-4).[12]

"A jury instruction is erroneous if it misleads the jury as to the correct legal standard or does not adequately inform the jury on the law." *United States v. Phillips*, 155 F.4th 102, 115 (2d Cir. 2025) (quoting *United States v. Zheng*, 113 F.4th 280, 298

---

[12] Mr. Forney's letter dated September 5, 2025 was faxed to chambers on October 1, 2025 and docketed as sealed for his counsel's review because Mr. Forney was still represented at the time. (*See* ECF No. 151.) Because Mr. Forney incorporates his September 5, 2025 arguments in the present Second Motion, the Court unseals Mr. Forney's September 5, 2025 letter for the public record. *See Bernstein v. Bernstein Litowitz Berger & Grossmann LLP*, 814 F.3d 132, 142 (2d Cir. 2016) ("The courts have long recognized the general right to inspect and copy public records and documents, including judicial records and documents.") (citation modified).

(2d Cir. 2024)), *cert. denied*, No. 25-1237, 2026 WL 1780066 (U.S. June 22, 2026). "[A] jury instruction need only adequately—not perfectly—instruct the jury on the applicable legal standard." *United States v. Triumph Cap. Grp., Inc.*, 544 F.3d 149, 171 (2d Cir. 2008) (citing *United States v. Naiman*, 211 F.3d 40, 51 (2d Cir. 2000)). "The fact that a jury could conceivably misinterpret an instruction as to the requisite state of mind does not render the instruction erroneous." *Id.* (citation modified). "[T]he proper inquiry is not whether the instruction could have been applied in an unconstitutional manner, but whether there is a reasonable likelihood that the jury *did* so apply it." *Victor v. Nebraska*, 511 U.S. 1, 6 (1994) (citation modified).

As a preliminary matter, "'[f]ailure to object to a jury instruction . . . prior to the jury retiring results in a waiver of that objection.'" *Rattray v. Cadavid*, No. 25-700, 2026 WL 2253421, at *2 (2d Cir. Aug. 5, 2026) (quoting *Lavoie v. Pac. Press & Shear Co.*, 975 F.2d 48, 55 (2d Cir. 1992); *see also* Rule 30(d) ("A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate."). Here, Mr. Forney's jury instruction arguments have thus been waived because Mr. Forney failed to object to the relevant jury instructions on these grounds before the jury retired. (*See* ECF No. 95 at 13-15 (listing defense

objections on Counts One and Four), 19 (listing defense objections on "interstate commerce" element)[13]; Tr. 799-800 (discussing jury instructions on Count One and Four).)

Although the Court may "'disregard the failure to object where there is plain error affecting substantial rights.'" *Rattray*, 2026 WL 2253421, at *2 (quoting *Warren v. Pataki*, 823 F.3d 125, 138-39 (2d Cir. 2016)), Mr. Forney has failed to demonstrate any plain error affecting substantial rights. First, as Mr. Forney concedes, Section 1591(a)(1) and (2) provide two forms of knowing conduct that constitute the crime of sex trafficking under § 1591(a). (*See* ECF No. 151 at 2.) The Court's final jury instructions correctly instructed the jury that there were two alternate ways the Government could prove the first knowledge element of sex trafficking (*See* ECF No. 124, the "Jury Instructions" at 37-38 ("The statute sets forth two different ways that the government can prove this [knowledge] element. The first way is by proving that the defendant himself engaged in at least one of the listed prohibited trafficking activities . . . and the second is by proving that the defendant took part in a venture

---

[13] Mr. Forney previously only objected to a different portion of the proposed "interstate commerce" instruction than he does now. (*See* ECF No. 95 at 19.) Mr. Forney objected to the following proposed instruction "if the defendant used a cellphone in furtherance of sex trafficking . . . that would satisfy this element."

that engaged in at least one of those trafficking activities, and that the defendant benefitted financially. . . .") Either avenue suffices to establish the knowledge element under § 1591(a).

Second, although Mr. Forney argues that the Court erred in instructing the jury that it did not "have to find that the defendant's conduct actually affected interstate commerce," the Court correctly instructed the jury on the interstate commerce element in Counts One and Four. (*See e.g.* Jury Instructions at 43-44.[14]) "'[I]t is well established that the burden of proving a nexus to interstate commerce is minimal,'" and "'[e]ven a *potential* or subtle effect on commerce will suffice.'" *United States v. Graham*, 707 F. App'x 23, 26 (2d Cir. 2017) (summary order) (emphasis added) (quoting *United States v. Elias*, 285 F.3d 183, 188 (2d Cir. 2002)). Commercial conduct involving the use of "internet advertisements, condoms, hotels, and rental cars . . . is sufficient to establish that the violation as to each count

[14] The Court's jury instructions on interstate commerce stated: "To satisfy this element, the government must prove that the defendant's conduct affected interstate commerce in any way. You do not have to find that the defendant's conduct actually affected interstate commerce if you find that the defendant's conduct would have affected interstate commerce if the defendant had successfully and fully completed his actions. I instruct you that as a matter of law, if the defendant used a cellphone or the internet in furtherance of sex trafficking as defined above, that would satisfy this element. The government does not have to show that the defendant actually knew his actions affected or would affect interstate commerce." (*Id.*)

occurred in and affect[ed] interstate commerce." *Id.*

Even if Mr. Forney did preserve both objections on the record, neither jury instruction was erroneous because they did not "mislead[] the jury as to the correct legal standard," nor did they fail to "adequately inform the jury on the law." *United States v. Phillips*, 155 F.4th 102, 115 (2d Cir. 2025). Accordingly, Mr. Forney's motion for a new trial on the basis of erroneous jury instructions is respectfully denied.

### C. Mr. Forney's New Reply Arguments And Additional Rule 33(a) Motions

Mr. Forney raised multiple new arguments in his reply in support of his Second Motion, and then proceeded to file multiple additional motions after briefing closed. The Court "'ordinarily will not consider issues raised for the first time in a reply brief.'" *Parrilla v. United States*, No. 13-CR-360 (AJN), 2021 WL 4066021, at *23 (S.D.N.Y. Sept. 7, 2021) (quoting *McBride v. BIC Consumer Prods. Mfg. Co.*, 583 F.3d 92, 96 (2d Cir. 2009)). Even if the Court were to consider the arguments Mr. Forney raises for the first time in reply, or in his motions after briefing closed, as discussed below, none provides any basis to grant a new trial under Rule 33(a).

#### 1. Mr. Forney Has Not Established Any *Brady/Giglio* Violation Warranting a New Trial

Mr. Forney argues that he is entitled to relief under Rule 33 due to *Brady* and *Giglio* violations because the Government did not

provide defense counsel Jonnica C.'s Cellebrite phone extraction until after the first day of trial. (*See* Rep. at 3; ECF No. 204, the "Brady Motion.")

"*Brady v. Maryland*, 373 U.S. 83 (1963), and *Giglio v. United States*, 405 U.S. 150, require the Government to 'disclose [exculpatory or impeachment] evidence favorable to the accused that is material to guilt.'" *United States v. Pippins*, 733 F. Supp. 3d 136, 156 (E.D.N.Y. 2024) (quoting *United States v. Rittweger*, 524 F.3d 171, 180 (2d Cir. 2008)). "This disclosure obligation extends only as far as information 'that, if suppressed, would deprive the defendant of a fair trial.'" *Id.* (quoting *Rittweger*, 524 F.3d at 180 (citation modified). "To establish a *Brady/Giglio* violation, then, 'a defendant must show that: (1) the government, either willfully or inadvertently, suppressed evidence; (2) the evidence at issue is favorable to the defendant; and (3) the failure to disclose this evidence resulted in prejudice.'" *Id.* (quoting *United States v. Kirk Tang Yuk*, 885 F.3d 57, 86 (2d Cir. 2018) (citation modified).

First, the Government did not suppress any evidence in relation to Jonnica C.'s phone. On June 21, 2024, the Government produced the "responsive cut of [] Jonnica C[]'s cell phone." (ECF No. 216-5; *see also* ECF No. 216-4.) On January 18, 2025, the Government advised Mr. Forney's counsel that the Government could "make available . . . the full extraction." (ECF No. 216-5.) By

August 8, 2025, upon Trial Counsel's request, the Government provided the full extraction for "the date range" that Trial Counsel requested. (*See* Tr. 47; ECF No. 216 at 32.) On August 11, 2025, Trial Counsel requested and the Government provided the full extraction of Jonnica C.'s phone. (*See* Tr. 47; ECF No. 216 at 31.) This was before Jonnica C.'s direct ended and Trial Counsel cross-examined Jonnica C. (*See id.*)

Second, Mr. Forney's failure to identify what specific favorable evidence the Government did not produce in the initial June 24, 2024 or August 8, 2025 productions that was then produced in the full extraction on August 11, 2026 is also fatal to his claim. (*See* ECF No. 216 at 32.) Mr. Forney only states broadly that there were communications that "contradict Jonnica C's trial testimony" on "the nature of her relationship with [Mr. Forney], her claims of coercion and control, and the circumstances of her travel and work," and "cellphone records" that "demonstrate that she maintained contact with family and friends, had access to her own money, and exercised agency over [her] movements." (Brady Motion at 4.) But these broad assertions do not identify what specific favorable evidence was missing from the Government's initial June 24, 2024 or August 8, 2025 productions.

Third, Mr. Forney fails to show that he was prejudiced by any failure to disclose. Mr. Forney contends that because of the Government's failure to disclose the full extraction until the

trial started, Trial Counsel was unable to "cross-examine Jonnica C. on the contents of her own phone" and "use the communications to impeach her credibility." (*Id.*) The trial transcripts demonstrate, however, that Trial Counsel had access to the impeachment and exculpatory evidence on Jonnica C.'s phone that Mr. Forney broadly describes and utilized such evidence in cross-examining Jonnica C. and in closing. (*See* ECF No. 216 at 28-30.) For example, in cross-examining Jonnica C., Trial Counsel elicited that Jonnica C. was in contact with her brother, that Jonnica C. and her brother had a code word "bananas" to indicate if she was in trouble, and that Jonnica C. did not use the code word while working for Mr. Forney. (Tr. 197-98, 203-05, 213-15.)[15]

Accordingly, the Court respectfully denies Mr. Forney's motion for a new trial based on his alleged *Brady* and *Giglio* violations, and Mr. Forney's motion for an evidentiary hearing because Mr. Forney presents no plausible *Brady* or *Giglio* claim.

[15] Mr. Forney also contends that the Government suppressed "[t]ext messages from NYPD Detective Muckenthaler to Ms. Simpson," which showed that "law enforcement actively cultivate[d] [her] as a witness." (Rep. at 3.) Even assuming *arguendo*, that such records exist, there is no prejudice. No prejudice exists here for the same reasons that Mr. Forney was not prejudiced by trial counsel's failure to call Ms. Simpson as a defense or sur-rebuttal witness. (*See* Section II.A.1.a.)

**2. The Government Did Not Prevent Mr. Forney from Accessing ECF Nos. 211-1, and 211-2**

Mr. Forney also appears to argue that a new trial is warranted under Rule 33 because "[t]he government's decision to file a sealed affidavit[16] containing unsubstantiated and prejudicial information, with the intent to prevent the Defendant from accessing the communications, constitutes a miscarriage of justice." (Second Motion Supp. at 6.) Although Mr. Forney fails to identify the documents he is referring to, it appears he is referring to ECF Nos. 211-1 and 211-2, the two sealed versions of the attachments to Mr. Singer's affidavit that attach Mr. Singer's handwritten notes, emails and text messages with Nicole Simpson made, sent or received prior to trial, which Mr. Forney asserts he has not received. (*See* Second Motion Supp. at 2.)

Mr. Forney however has the unsealed versions of those documents through ECF Nos. 212-1 and 212-2. (*See* ECF No. 214.) The Court granted leave for the Government to seal Exhibits A and B for the *public record* because they contained discussions of a victim's medical information and other sensitive victim-related information, (8/11/26 Dkt. Order), so the Government filed the attachments as sealed for the public record at ECF Nos. 211-1,

---

[16] As a preliminary matter, the Government did not file any sealed affidavit. Mr. Singer's affidavit was filed on the public docket and attached as ECF No. 186-1 as Exhibit A of the Government's Opposition to Mr. Forney's Second Motion.

211-2, and filed unsealed copies of the exact same two attachments at ECF Nos. 212-1, and 212-2.[17] The Government was ordered to and did provide to Mr. Forney *both* the sealed (ECF Nos. 211-1, 211-2) and unsealed redacted versions of those attachments (ECF Nos. 212-1, and 212-2). (ECF No. 214 (The Government's certification that it had served both versions on Mr. Forney.).)

Mr. Forney's argument that the Government acted in "bad faith" by filing the attachments as sealed in ECF Nos. 211-1 and 212-2 is unpersuasive. The Government did not act with malintent toward Mr. Forney because sealing only affects what appears on the public docket—not what Mr. Forney has access to. Mr. Forney, as a party to this case, has access to and was served with the unsealed filings. (*See* ECF No. 214.) Moreover, Mr. Forney's arguments regarding ECF Nos. 211-1, and 211-2 have no bearing on what occurred at Mr. Forney's trial, are not a basis Rule 33(a) motion for a new trial, and fail to demonstrate that any manifest injustice resulted. *See United States v. James*, 712 F.3d 79, 107 (2d Cir. 2013) (citation modified). Accordingly, Mr. Forney's motion for a new trial on this erroneous basis that the Government filed sealed documents is respectfully denied.

[17] The unsealed versions, ECF Nos. 212-1, and 212-2, only redact victim phone numbers, victim last names, and personal identifying information like Mr. Singer's email.

## III. Mr. Forney's Other Non-Rule 33(a) Motions

### A. Mr. Forney's Motion to Suppress is Untimely and Without Merit

"[A] motion to suppress evidence must be made before trial." *United States v. Nayyar*, 221 F. Supp. 3d 454, 461 (S.D.N.Y. 2016) (citing Rule 12(b)(3)(C) (listing a motion for "suppression of evidence" as a motion that "must be made before trial")), *aff'd sub nom. United States v. Mulholland*, 702 F. App'x 7 (2d. Cir. 2017). "Absent a showing of good cause" the motion is "deemed waived." *United States v. Kelly*, 609 F. Supp. 3d 85, 140 (E.D.N.Y. 2022), *aff'd*, 128 F.4th 387 (2d Cir. 2025) (citation modified). "A district court may grant relief from an untimely motion 'upon a showing of: (1) cause for the defendant's non-compliance, and (2) actual prejudice arising from the waiver.'" *United States v. Moore*, 541 F. App'x 37, 39 (2d Cir. 2013) (summary order) (citing *United States v. Howard*, 998 F.2d 42, 52 (2d Cir. 1993)).

Mr. Forney moves to suppress "all evidence derived" from "two unlawful, warrantless seizures of his cellular telephones, one occurring in a prior, unrelated case and one occurring in the instant case." (ECF No. 202, "Motion to Suppress" at 1.) As an initial matter, there is no basis to move to suppress evidence from a phone seized in a prior unrelated case. Moreover, Mr. Forney's motion is untimely because he filed this motion almost a year after his trial. Mr. Forney also offers no cause for his

non-compliance, and there is none because Mr. Forney was provided with the relevant federal search warrants before trial. (*See generally* Motion to Suppress; ECF No. 216 at 17.) Even if the Court were to reach the merits, Mr. Forney's Motion to Suppress would fail because the police had reasonable suspicion to engage in an investigatory *Terry* stop and probable cause to lawfully search the vehicle in which Mr. Forney's cellphone was found. (*See* ECF. No. 216 at 17-22.) Accordingly, the Court respectfully denies Mr. Forney's Motion to Suppress.

**B. Mr. Forney's Motion to Obtain Warrants**

Mr. Forney moves for "[a]n order directing the Government to produce the full, unredacted search warrant(s) and supporting affidavits related to this case, including but not limited to Warrant 21MAG6662," and "[a]n order directing the Government to remove the 'Highly Sensitive Documents' designation from the warrants. (ECF No. 203, the "Warrant Motion.")[18]

Mr. Forney's Warrant Motion is moot because the Government provided the search warrant affidavits without redactions and accompanying documents on July 8, 2025 to Mr. Forney's counsel before trial, and again, after trial, to standby counsel in March

[18] Construing Mr. Forney's pro se motion broadly, Mr. Forney requests an order removing the "Sensitive Discovery Material" designation because none of search warrants are designated as "Highly Sensitive Documents." (*See* ECF No. 216 at 19 n.7.)

2026. (*See* ECF Nos. 72, 216 at 20.) The Government has, again, for a third time, provided Warrant 21MAG6662 on August 19, 2026, to Mr. Forney as Exhibit C to ECF No. 217 via defense stand-by counsel, Mr. Spilke. (*See* ECF No. 219 (certifying that "the government also provided a copy of . . .unsealed copies of exhibit [C] . . . to standby counsel Ezra Spilke on August 18, 2026" and stating that because such exhibits "contain sensitive discovery material, the defendant may review these exhibits only in the presence of standby counsel or defense staff").) Pursuant to the operative Protective Order, Mr. Forney may review "'Sensitive Discovery Material' [such as Warrant 21MAG662] only in the presence of Defense Counsel or Defense Staff." (ECF No. 184.)[19] Because Mr. Forney has had access to such documents since before trial and the "Sensitive Discovery Material" designation does not preclude Mr. Forney from reviewing such documents now, the Court respectfully denies Mr. Forney Warrant Motion as moot.[20]

**C. Motion to Compel Discovery**

Mr. Forney requests that the Court compel the Government to produce three types of post-conviction discovery. First, Mr.

[19] On March 10, 2026, the Court also granted Mr. Forney's request to appoint a paralegal to facilitate supervision of Mr. Forney's review of protected discovery. (ECF No. 182.)

[20] As the Court found in Section III.A. any motion to suppress based on the search warrants is untimely and without merit.

Forney requests Rule 16 discovery for: (i) "All document, reports, and records the government intends to use at any sentencing hearing or evidentiary hearing"; (ii) "All FBI reports, notes and communications regarding the alleged victim, including all statements made by the alleged victim to the FBI before Joel Forney's arrest"; and (iii) "All records of [] any examinations, tests, or investigations related to the alleged incident." (Mot. to Compel at 2.) Mr. Forney also requests *Brady/Giglio* material "regarding the alleged incident" including "all prior inconsistent statements made by any government witness, including the [] alleged victim." (*Id.* at 3.) Mr. Forney also requests discovery pursuant to 18 U.S.C. § 3500/*Jencks* for "all statements of any witness who may testify" and "all grand jury testimony of any testifying witness." (*Id.*) Lastly, Mr. Forney requests that the Court "[f]ind that the government's failure to disclose the alleged victim's pre-arrest exculpatory statement" violates *Napue*. (*Id.*)

First, Mr. Forney "provides no legal basis for his claim" to "post-conviction" discovery. *United States v. Raniere*, No. 24-1285, 2025 WL 3001634, at *3-4 (2d Cir. Oct. 27, 2025). Mr. Forney cites no Government disclosure obligation under Rule 16(a) that applies because none applies. *See* Rule 16(a) (setting forth the Government's disclosure obligations). Moreover, the Government's disclosure obligations under Section 3500 are limited to the "Government witness[es]" or "prospective Government witness[es]."

§ 3500(a). Ms. Simpson informed a member of the New York Police Department that she did not wish to participate in the investigation during a 2023 phone call, so Ms. Simpson was not a prospective Government witness or Government witness at trial. (*See* ECF No. 161.) "To the extent that [Mr. Forney] contends that *Brady* compels such a result," *Brady* "provides 'the wrong framework' for analysis because [Mr. Forney] 'has already been found guilty at a fair trial.'" *Raniere*, 2025 WL 3001634, at *3 (quoting *Dist. Attorney's Off. for Third Jud. Dist. v. Osborne*, 557 U.S. 52, 68–69 (2009) (holding the ruling in *Brady v. Maryland* does not extend to the postconviction context)).

Second, the Government already turned over all *Brady/Giglio/Jencks* materials as to Jessica F., the Government's witness who did testify at trial. (Opp. at 12–14.)

Lastly, a motion to compel is not the proper procedural vehicle to assert a claim pursuant to *Napue v. Ilinois*, 360 U.S. 264 (1959). Even if it was, Mr. Forney's *Napue* claim would likely fail. Assuming Jessica F. committed perjury, and that the Government knew that Jessicca F. committed perjury, Mr. Forney cannot show that any alleged perjury "was material." *United States v. Cromitie*, 727 F.3d 194, 222 (2d Cir. 2013). Mr. Forney's *Napue* claim turns on Jessica F.'s brief testimony regarding witnessing Mr. Forney punching Ms. Simpson. But there was abundant evidence from two of the victims, Jonnica C. and Shyya H., that Mr. Forney

used both force and non-physical threats to coerce them to engage in prostitution. (*See* Tr. 77-78, 107, 311-12, 315-17); *see also United States v. Forney*, 813 F. Supp. 3d 357, 366 (E.D.N.Y. 2025) (finding that there was sufficient evidence on Counts One, Three, and Four without any reference to Jessica F.'s testimony).

Accordingly, Mr. Forney's Motion to Compel is respectfully denied.

**CONCLUSION**

For the reasons set forth above, Mr. Forney's Motions are respectfully **DENIED**. By September 14, 2026, Mr. Spilke is respectfully directed to serve this Memorandum & Order on Mr. Forney and note service on the docket.

**So ordered.**

Dated: September 11, 2026
Brooklyn, New York

**Kiyo A. Matsumoto**
United States District Judge
Eastern District of New York